UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILMER CUTLER PICKERING HALE AND DORR LLP, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, )<br>)<br>Defendant. ) | Civil Case No. 25-cv-917 (RJL) |

## MEMORANDUM ORDER

March 28th, 2025 [Dkt. #3]

This matter comes before the Court on plaintiff's Motion for a Temporary Restraining Order [Dkt. #3]. For the reasons set forth below, I will **GRANT IN PART** and **DENY IN PART** plaintiff's motion and issue a temporary restraining order ("TRO") as to Sections 3 and 5 of the Executive Order issued on March 27, 2025, entitled "Addressing Risks from WilmerHale."

Plaintiff has shown "'(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the [TRO] were not granted, (3) that [the TRO] would not substantially injure other interested parties, and (4) that the public interest would be furthered' by the TRO." *Am. Foreign Serv. Ass'n v. Trump*, --- F. Supp. 3d ---, 2025 WL 435415, at *1 (D.D.C. Feb. 7, 2025) (Nichols, J.) (quoting *Chaplaincy of Full Gospel*

1

*Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).  Here, because plaintiff seeks to enjoin the Government, the third and fourth factors merge.  *Id.*

As to the first factor, plaintiff has shown a likelihood of success on the merits of its First Amendment claims as to Sections 3 and 5 of the Executive Order.  Undisputably, "the First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech."  *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)).  This prohibition includes retaliatory actions based on perceived viewpoint.  The retaliatory nature of the Executive Order at issue here is clear from its face—not only from Section 1, but also from the Fact Sheet published the same day.  Indeed, the Executive Order requires government contracting agencies to disclose, review, and terminate all contracts with plaintiff—that is Section 3—and restricts WilmerHale employees from access to federal officials, buildings, and employment—that is Section 5.  There is no doubt this retaliatory action chills speech and legal advocacy, or that it qualifies as a constitutional harm.

Regarding Section 2, however, plaintiff has not met its burden in showing a likelihood of success on the merits.  Our Circuit has held that security clearance decisions are within the purview of the Executive Branch, *see Lee v. Garland*, 120 F.4th 880 (D.C. Cir. 2024), and plaintiff has not pointed to persuasive authority that would support extraordinary injunctive relief at this early stage.

As to the second factor, the Court finds that plaintiff would suffer irreparable injury should the Court deny a TRO as to Sections 3 and 5 of the Executive Order.  As an initial matter, violations of plaintiff's constitutional rights constitute irreparable harm, even if the

2

violations occur only for short periods of time. Moreover, implementation of Sections 3 and 5 would cause specific, irreparable, and non-remediable economic and reputational harm to plaintiff. While economic loss does not always warrant a TRO, this is not a typical situation because plaintiff faces more than economic harm—it faces crippling losses and its very survival is at stake.

Indeed, enforcing Section 3—the government contracts provision—would threaten almost one-third of plaintiff's revenues. The declaration of Bruce Berman states that "[a]t least 21 of the firm's 25 largest clients in 2024 have contracts with federal agencies. These 21 clients accounted for more than 30% of the Firm's revenue in 2024—nearly $500 million." Berman Decl. ¶ 30 [Dkt. #3-2]. Plaintiff is also "currently handling over 100 open government contracting matters involving various federal agencies." *Id.* ¶ 31. Losing these clients as a result of Section 3 would be a devastating blow to plaintiff—threatening plaintiff's very existence. This says nothing of the potential clients who may not even consider hiring plaintiff because of their concerns about losing government contracts.

Regarding Section 5—the personnel provision—it is clear that plaintiff's business is inextricably intertwined with interactions with the federal government. The Berman Declaration states that WilmerHale attorneys are working on approximately 1,110 matters before or involving federal agencies. *Id.* ¶ 28. WilmerHale attorneys are scheduled to attend meetings on behalf of clients at the Department of Justice ("DOJ") on March 31, 2025 and the Securities and Exchange Commission ("SEC") on April 1, 2025. *Id.* ¶ 80. According to the Berman Declaration, plaintiff does not know either if its attorneys will be denied access to DOJ or the SEC, or if the federal employees will refuse to meet with them.

*Id.* Plaintiff's counsel stated during the TRO hearing that since the Executive Order issued, the federal government has already cancelled two meetings with plaintiff's attorneys, at the last minute and without explanation. Should Section 5 be enforced, plaintiff would be thoroughly hamstrung from representing clients because its attorneys could not enter federal courthouses or other buildings, or meet with federal employees regarding cases. The impact on plaintiff's business and reputation cannot be overstated. Thus, I find that the second factor, irreparable injury, favors granting a TRO regarding Sections 3 and 5.

Finally, the third factor, the balance of the equities and public interest, also favor issuing a TRO preventing enforcement of Sections 3 and 5. The injuries to plaintiff here would be severe and would spill over to its clients and the justice system at large. The public interest demands protecting against harms of this magnitude.

Therefore, it is hereby

**ORDERED** that plaintiff's Motion for a Temporary Restraining Order [Dkt. #3] is **GRANTED** as to Sections 3 and 5 of the Executive Order entitled "Addressing Risks from WilmerHale," issued by the President and published on March 27, 2025, and **DENIED** as to the remaining Sections of the Executive Order; it is further

**ORDERED** that defendants are **ENJOINED** from implementing or enforcing Sections 3 and 5 of the Executive Order; it is further

**ORDERED** that defendants must suspend and rescind any implementation or enforcement of Sections 3 and 5 of the Executive Order; and it is further

**ORDERED** that the parties shall file, by 4:00 PM on March 31, 2025, a joint status report proposing an expedited schedule to govern further proceedings in this case.

**SO ORDERED.**

_____
RICHARD J. LEON
United States District Judge