APPEAL,CLOSED,TYPE−D

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:25−cv−00917−RJL
## *Internal Use Only*

WILMER CUTLER PICKERING HALE AND DORR LLP v. EXECUTIVE OFFICE OF THE PRESIDENT et al
Assigned to: Judge Richard J. Leon
Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 03/28/2025
Date Terminated: 05/27/2025
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**WILMER CUTLER PICKERING HALE AND DORR LLP** represented by

**Erin Elizabeth Murphy**
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
202−742−8900
Email: erin.murphy@clementmurphy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph John DeMott**
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
202−742−8893
Email: joseph.demott@clementmurphy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Rowen**
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
202−742−8900
Email: matthew.rowen@clementmurphy.com
*ATTORNEY TO BE NOTICED*

**Paul Clement**
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 20004
202−742−8900
Email: paul.clement@clementmurphy.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **EXECUTIVE OFFICE OF THE PRESIDENT** | represented by | **Richard Lawson**<br>DOJ−USAO<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530−0001<br>202−445−8042<br>Email: richard.lawson3@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **U.S. DEPARTMENT OF JUSTICE** | represented by | **Richard Lawson**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **U.S. DEPARTMENT OF DEFENSE** | represented by | **Richard Lawson**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES** | represented by | **Richard Lawson**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **U.S. DEPARTMENT OF EDUCATION** | represented by | **Richard Lawson**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **U.S. DEPARTMENT OF VETERANS AFFAIRS** | represented by | **Richard Lawson**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **OFFICE OF MANAGEMENT AND BUDGET** | represented by | **Richard Lawson**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE** | represented by | **Richard Lawson**<br>(See above for address)<br>*LEAD ATTORNEY* |

*ATTORNEY TO BE NOTICED*

**Defendant**

**CENTRAL INTELLIGENCE AGENCY**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ENVIRONMENTAL PROTECTION AGENCY**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF HOMELAND SECURITY**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF STATE**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF ENERGY**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF THE TREASURY**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF LABOR**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF AGRICULTURE**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF COMMERCE** represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT** represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SMALL BUSINESS ADMINISTRATION** represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE** represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF THE INTERIOR** represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF TRANSPORTATION** represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SECURITIES AND EXCHANGE COMMISSION** represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**FEDERAL TRADE COMMISSION** represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Defendant**

**UNITED STATES PATENT AND TRADEMARK OFFICE**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**UNITED STATES OF AMERICA**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**PAMELA J. BONDI**
*in her official capacity as Attorney General of the United States*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**PETER B. HEGSETH**
*in his official capacity as the Secretary of Defense*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROBERT F. KENNEDY, JR.**

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**LINDA MCMAHON**
*in her official capacity as Secretary of Education*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DOUG COLLINS**
*in his official capacity as Secretary of Veterans Affairs*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Defendant**

**RUSSELL VOUGHT**
*in his official capacity as Director of The U.S. Office of Management and Budget*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**TULSI GABBARD**
*in her official capacity as U.S. Director of National Intelligence*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN L. RATCLIFFE**
*in his official capacity as Director of the Central Intelligence Agency*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**LEE M. ZELDIN**
*Administrator of the Environmental Protection Agency*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**KRISTI NOEM**
*in her official capacity as Secretary of Homeland Security*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARCO RUBIO**
*in his official capacity as Secretary of State*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHRIS WRIGHT**
*in his official capacity as Secretary of Energy*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SCOTT BESSENT**
*in his official capacity as Secretary of the Treasury*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Defendant**

**LORI CHAVEZ−DEREMER**
*in her official capacity as Secretary of Labor*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**BROOKE L. ROLLINS**
*in her official capacity as Secretary of Agriculture*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**HOWARD W. LUTNICK**
*in his official capacity as Secretary of Commerce*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SCOTT TURNER**
*in his official capacity as Secretary of Housing and Urban Development*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**KELLY LOEFFLER**
*in her official capacity as Administrator of the U.S. Small Business Administration*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JAMIESON GREER**
*in his official capacity as United States Trade Representative*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DOUGLAS J. BURGUM**
*in his official capacity as Secretary of the Interior*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SEAN DUFFY**
*in his official capacity as Secretary of Transportation*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Defendant**

**MARK T. UYEDA**
*in his official capacity as Acting Chairman of the Securities and Exchange Commission*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ANDREW N. FERGUSON**
*in his official capacity as Chairman of the Federal Trade Commission*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**COKE MORGAN STEWART**
*in her official capacity as Acting Under Secretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ANDREA R. LUCAS**
*in her official capacity as Acting Chair of the Equal Employment Opportunity Commission*

represented by **Richard Lawson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**KENNETH C. PICKERING**

represented by **KENNETH C. PICKERING**
Pickering Legal LLC
100 Grove Street
Worcester, MA 01605
PRO SE

**Amicus**

**FORMER SENIOR GOVERNMENT OFFICIALS**

represented by **Justin A. Nelson**
SUSMAN GODFREY LLP
1000 Louisiana Street
Suite 5100
Houston, TX 77002
713−653−7895
Fax: 713−654−6666
Email: jnelson@susmangodfrey.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

represented by

**FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY**

**Jim Davy**
JIM DAVY
P.O. Box 15216
Philadelphia, PA 19125
215−792−3579
Email: jimdavy@allriselaw.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Seungchul Chang**
FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY
UC Irvine School of Law
401 E. Peltason Dr.
Ste 1000
Irvine, CA 92697
206−390−5676
Email: rchang@law.uci.edu
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremiah Chin**
UNIVERSITY OF WASHINGTON
School of Law
9622 S 221st Pl
Kent, WA 98031
480−334−7703
Email: jerchin@uw.edu
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Levin**
RONALD A. PETERSON LAW CLINIC
Civil Rights Clinic
Seattle University School of Law
901 12th Ave, Sullivan Hall
Ste Sllh 315
Seattle, WA 98115
206−398−4167
Fax: 206−398−4261
Email: levinje@seattleu.edu
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melissa Lee**
RONALD A. PETERSON LAW CLINIC
Center for Civil Rights and Critical Justice
1112 E. Columbia St.
Seattle, WA 98122
206−398−4394
Email: leeme@seattleu.edu

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Susan A. McMahon**
FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY
UC Irvine School of Law
401 E. Peltason Dr.
Ste 1000
Irvine, CA 92697
949−824−0066
Email: smcmahon@law.uci.edu
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**GENERAL COUNSEL AMICI** represented by

**Andrew George Pappas**
OSBORN MALEDON, P.A.
2929 N. Central Avenue
Suite 2000
Phoenix, AZ 85012
602−640−9398
Fax: 602−640−9050
Email: apappas@omlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Austin Tyler Marshall**
HERRERA ARELLANO LLP
1001 N Central Ave
Suite 404
Phoenix, AZ 85004
928−446−4410
Email: austin@ha−firm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David B. Rosenbaum**
OSBORN MALEDON, P.A.
2929 N. Central Avenue
Suite 2000
Phoenix, AZ 85012
602−640−9345
Fax: 602−640−9050
Email: drosenbaum@omlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric M. Fraser**
OSBORN MALEDON P.A.

2929 North Central Avenue
Suite 2000
Phoenix, AZ 85012
602−640−9321
Fax: 602−640−9050
Email: efraser@omlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph N. Roth**
OSBORN MALEDON, P.A
2929 N. Central Avenue
Suite 2100
Phoenix, AZ 85012
602−640−9320
Fax: 602−640−9050
Email: jroth@omlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua James Messer**
OSBORN MALEDON, P.A.
2929 N. Central Avenue
Ste 2100
Phoenix, AZ 85012
602−640−9326
Fax: 602−640−9050
Email: jmesser@omlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mary Ruth O'Grady**
OSBORN MALEDON PA
2929 N Central Ave
Suite 2000
Phoenix, AZ 85012
602−640−9000
Fax: 602−640−9050
Email: mogrady@omlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**PAST PRESIDENTS OF THE DC BAR** represented by **Andrea C. Ferster**
ANDREA C. FERSTER
68 Beebe Pond Rd
Canaan, NY 12029
202−669−6311
Email: andreaferster@gmail.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**676 LAW PROFESSORS** represented by **Phillip Robert Malone**
559 Nathan Abbott Way
Stanford, CA 94305−8610
650−725−6369
Email: pmalone@law.stanford.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**24 NONGOVERNMENTAL ORGANIZATIONS** represented by **William E. Zapf**
KAISER PLLC
1099 14th Street, NW
Ste 8th Floor West
Washington, DC 20005
202−869−1300
Email: wzapf@kaiserlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**808 LAW FIRMS** represented by **Donald Beaton Verrilli , Jr**
MUNGER, TOLLES & OLSON LLP
1155 F Street, NW
7th Floor
Washington, DC 20004
213−683−9507
Email: donald.verrilli@mto.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathan P. Eimer**
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660−7600
Fax: (312) 692−1718
Email: neimer@eimerstahl.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW AND LOCAL AFFILIATES** represented by **Edward G. Caspar**
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW

Suite 900
Washington, DC 20005
202−662−8390
Email: ecaspar@lawyerscommittee.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adria Jasmine Bonillas**
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW
Suite 900
Washington, DC 20005
202−662−8317
Email: abonillas@lawyerscommittee.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**INTERNATIONAL ACADEMY OF TRIAL LAWYERS** represented by **Patrick Michael Regan**
REGAN ZAMBRI & LONG, PLLC
1919 M Street, NW
Suite 350
Washington, DC 20036
(202) 463−3030
Fax: (202) 463−0667
Email: pregan@reganfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**MEDIA ORGANIZATIONS AND PRESS FREEDOM ADVOCATES** represented by **Mason Andrew Kortz**
HARVARD LAW SCHOOL
Cyberlaw Clinic
Lewis Hall, 4th Floor
1557 Massachusetts Avenue
Cambridge, MA 02138
617−495−2845
Email: mkortz@law.harvard.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.** represented by **Samuel Spital**
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
40 Rector Street
5th Floor
New York, NY 10006
(212) 965−2200
Email: sspital@naacpldf.org

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF NEW JERSEY** represented by **Sundeep Iyer**
OFFICE OF THE ATTORNEY GENERAL
State of New Jersey
25 Market Street
Trenton, NJ 08611
609−273−2823
Email: sundeep.iyer@hoganlovells.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**AMICI CURIAE LITIGATION FIRMS** represented by **Kathryn A. Reilly**
WHEELER TRIGG O'DONNELL LLP
370 17th Street
Suite 4500
Denver, CO 80202−5647
303−244−1800
Email: reilly@wtotrial.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**AMERICAN CIVIL LIBERTIES UNION** represented by **Cecillia D. Wang**
ACLU
Center for Democracy
425 California St
Suite 700
San Francisco, CA 94104
415−343−0775
Email: cwang@aclu.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**AMERICAN CIVIL LIBERTIES UNION OF THE DISTRICT OF COLUMBIA** represented by **Cecillia D. Wang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CATO INSTITUTE** represented by **Cecillia D. Wang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **ELECTRONIC FRONTIER FOUNDATION** | represented by | **Cecillia D. Wang**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION** | represented by | **Cecillia D. Wang**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **INSTITUTE FOR JUSTICE** | represented by | **Cecillia D. Wang**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY** | represented by | **Cecillia D. Wang**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **NATIONAL COALITION AGAINST CENSORSHIP** | represented by | **Cecillia D. Wang**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **REPORTERS COMMITTEE FOR THE FREEDOM OF THE PRESS** | represented by | **Cecillia D. Wang**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **RUTHERFORD INSTITUTE** | represented by | **Cecillia D. Wang**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **SOCIETY FOR THE RULE OF LAW INSTITUTE** | represented by | **Cecillia D. Wang**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

**LEGAL ETHICS PROFESSORS** represented by **Kelsi B. Corkran**
INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
600 New Jersey Avenue NW
Washington, DC 20001
202−661−6728
Fax: 202−661−6730
Email: kbc74@georgetown.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**BAR ASSOCIATIONS** represented by **Eric John Galvez Paredes**
PROTECT DEMOCRACY PROJECT
82 Nassau Street
#601
New York, NY 10038
202−579−4582
Email: john.paredes@protectdemocracy.org
*ATTORNEY TO BE NOTICED*

**Hayden Johnson**
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW
Ste 163
Washington, DC 20006
202−870−3210
Email: hayden.johnson@protectdemocracy.org
*ATTORNEY TO BE NOTICED*

**Amicus**

**NEW YORK COUNCIL OF DEFENSE LAWYERS** represented by **Noam Biale**
SHER TREMONTE LLP
90 Broad Street
23rd Floor
New York, NY 10004
212−202−2600
Email: nbiale@shertremonte.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS** represented by **Kobie Flowers**
FLOWERS KELLER LLP
1601 Connecticut Avenue Northwest
20009
Washington, DC 20009
202−521−8742
Email: kflowers@flowerskeller.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**342 FORMER JUDGES** represented by **Donald Manwell Falk**
4416 Harbord Dr
Oakland, CA 94618
650−269−2020
Email: donald.falk@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sara E. Kropf**
KROPF MOSELEY SCHMITT PLLC
1100 H Street NW
Suite 1220
Washington, DC 20005
202−627−6900
Email: sara@kmlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**AARON H. CAPLAN** represented by **Stephen Craig Leckar**
KALBIAN HAGERTY LLP
888 17th Street, NW
Suite 1200
Washington, DC 20006
202−223−5600
Email: sleckar@kalbianhagerty.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| e Filed | # | Docket Text |
|---|---|---|
| 28/2025 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number ADCDC−11573634) filed by WILMER CUTL PICKERING HALE AND DORR LLP. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Civil Cover Sheet, # 4 Summo Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons, # 11 Summons, # 12 Summons, Summons, # 14 Summons, # 15 Summons, # 16 Summons, # 17 Summons, # 18 Summons, # 19 Summons, # 20 Summ Summons, # 22 Summons, # 23 Summons, # 24 Summons, # 25 Summons, # 26 Summons, # 27 Summons, # 28 Summ Summons, # 30 Summons, # 31 Summons, # 32 Summons, # 33 Summons, # 34 Summons, # 35 Summons, # 36 Summ Summons, # 38 Summons, # 39 Summons, # 40 Summons, # 41 Summons, # 42 Summons, # 43 Summons, # 44 Summ Summons, # 46 Summons, # 47 Summons, # 48 Summons, # 49 Summons, # 50 Summons, # 51 Summons, # 52 Summ Summons, # 54 Summons, # 55 Summons)(Clement, Paul) (Entered: 03/28/2025) |
| 28/2025 | 2 | NOTICE OF RELATED CASE by WILMER CUTLER PICKERING HALE AND DORR LLP. Case related to Case N 1:25−cv−716, 1:25−cv−916. (Clement, Paul) (Entered: 03/28/2025) |
| 28/2025 | 3 | MOTION for Preliminary Injunction , MOTION for Temporary Restraining Order by WILMER CUTLER PICKERIN AND DORR LLP. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Bruce M. Berman, # 3 Exhibit Local Certification, # 4 Text of Proposed Order)(Clement, Paul). Added MOTION for Hearing on 3/31/2025 (mg). (Entered: ( |

| | | |
|---|---|---|
| 28/2025 | 4 | NOTICE of Appearance by Erin Elizabeth Murphy on behalf of WILMER CUTLER PICKERING HALE AND DORR (Murphy, Erin) (Entered: 03/28/2025) |
| 28/2025 | 5 | NOTICE of Appearance by Joseph John DeMott on behalf of WILMER CUTLER PICKERING HALE AND DORR L (DeMott, Joseph) (Entered: 03/28/2025) |
| 28/2025 | | Case Assigned to Judge Beryl A. Howell. (zmtm) (Entered: 03/28/2025) |
| 28/2025 | | NOTICE OF NEW CASE ERROR regarding 1 Complaint,,,,. The following error(s) need correction: Noncompliance w 5.1(c). Please file a Notice of Errata stating the error and attach the corrected initiating pleading to include the name & f residence address of each party and file using the event Errata. **COMPLIANCE DEADLINE is by close of business to case will not proceed any further until all errors are satisfied.** (zmtm) (Entered: 03/28/2025) |
| 28/2025 | 6 | ERRATA by WILMER CUTLER PICKERING HALE AND DORR LLP re 1 Complaint,,,,. (Attachments: # 1 Exhibit Complaint)(Clement, Paul) (Entered: 03/28/2025) |
| 28/2025 | 7 | NOTICE of Appearance by Richard Lawson on behalf of All Defendants (Lawson, Richard) (Entered: 03/28/2025) |
| 28/2025 | | MINUTE ORDER (paperless), upon consideration of plaintiff's 1 Complaint in this case, which was directly, rather thar assigned to the undersigned Judge, this Court concludes that plaintiff's 2 Notice of Related Case ("Notice"), indicating t case is "related" to two other cases brought by different plaintiffs against similar federal government defendants, *Perkin v. U.S. Dep't of Justice et al.*, 25−cv−716 (BAH), and *Jenner & Block v. U.S. Dep't of Justice*, 25−cv−916, which case v filed today and also directed to be reassigned, *see* Min. Order, 25−cv−916 (Mar. 28, 2025), is erroneous, since these cas related in a manner contemplated by D.D.C. LCvR 40.5(a)(3) (defining related civil cases) and 40.5(c)(1) (allowing dire assignment of "new case to the judge to whom the oldest related case is assigned"). The legal issues involved in all thre appear to be substantially similar, making the instinct to keep and decide the cases together understandable and even ter preservation of judicial resources by allowing a single judge to become familiar with applicable legal principles in these Nonetheless, the cases involve different issues of fact and arise from different events, and thus strict adherence to the ru assignment through the normal random assignment procedures of this District. *See* D.D.C. LCvR 40.5(a)(3).<br><br>LCvR 40.5(a)(3) provides that cases may properly be deemed related when, as pertinent here, they "(ii) involve commo fact, or (iii) grow out of the same event or transaction..." This case and *Perkins Coie* do not involve common issues of f out of the same event or transaction. Executive Order ("E.O.") No. 14230, at issue in *Perkins Coie*, cites, as justification punitive measures applied to all employees of the targeted firm, the President's dislike of Perkins Coie's representation o political opponent (*i.e.*, "Hillary Clinton"), Exec. Order No. 14230 § 1, 90 Fed. Reg. 11781 (Mar. 11, 2025), and Perkin representation, sometimes *pro bono*, of clients seeking enforcement of voting rights (*i.e.*, "Perkins Coie has worked wit donors... to judicially overturn popular, necessary, and democratically enacted election laws"; referring to work for wha calls "anti−democratic election changes"), *id.* §§ 1, 3, and rights to continue service as transgender individuals in the U. (*i.e.*, "Perkins Coie LLP has filed lawsuits against the Trump Administration, including one designed to reduce military readiness"), *see* Fact Sheet: President Donald J. Trump Addresses Risks from Perkins Coie LLP (Mar. 6, 2025), https://www.whitehouse.gov/fact−sheets/2025/03/fact−sheet−president−donald−j−trump−adresses−risks−from−perkins<br><br>In contrast to the focus on Perkins Coie's provision of legal services to clients disliked by the President as the sole reaso No. 14230, the E.O. at issue in this newly assigned case, *see* Addressing Risks from WilmerHale ("WilmerHale E.O.") ( 2025), https://www.whitehouse.gov/presidential−actions/2025/03/addressing−risks−from−wilmerhale/ (not yet publishe Federal Register), cites as justification for the punitive measures on all employees of Wilmer Cutler Pickering Hale and ("WilmerHale"), both (1) the firm's representation of clients and issues disfavored by the President, including immigrati voting rights, *see id.* § 1, and (2) the professional tasks undertaken by current employees of WilmerHale−−including Aa and James Quarles−−during a time when they were not employed by the firm and worked on the Special Counsel invest by former Federal Bureau of Investigation Director Robert Mueller, *id.* Although both law firms are being targeted in si in these separate Executive Orders, the facts of each case differ: the punitive measures imposed on Perkins Coie arise so the firm's representation of clients disliked by the President, while the punitive measures imposed on WilmerHale in thi arise, in part, from the firm's representation of clients disliked by the President but also, in part, from professional work by current WilmerHale employees while employed by the U.S. Department of Justice and not affiliated with the firm. |

| | | |
|---|---|---|
| | | While, as noted, the reasons for relating the new case brought by WilmerHale with the case brought by Perkins Coie are understandable, since both challenge Executive Orders carrying similar punitive measures and thereby raise similar que law, strict adherence to the normal process of random case assignment is crucial to ensure "fair and equal distribution of all judges, avoid[] public perception or appearance of favoritism in assignments, and reduce[] opportunities for judge−s *Tripp v. Exec. Off. of President*, 196 F.R.D. 201, 202 (D.D.C. 2000), and the reasons given to justify these orders do not the same underlying events or facts in the way contemplated by LCvR 40.5(a)(3). Accordingly, the Clerk of the Court is reassign this case randomly, pursuant to D.D.C. LCvR 40.3, since the exception provided for "related case" assignment LCvR 40.5 does not apply.<br><br>Signed by Judge Beryl A. Howell on March 28, 2025. (lcbah2) (Entered: 03/28/2025) |
| 28/2025 | | Case Randomly Reassigned to Judge Richard J. Leon. Judge Beryl A. Howell is no longer assigned to the case. (zjd) (E 03/28/2025) |
| 28/2025 | 8 | SUMMONS (52) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachments: # and Consent)(zmtm) (Entered: 03/28/2025) |
| 28/2025 | | NOTICE of Hearing: Motion Hearing, re: 3 MOTION for Temporary Restraining Order set for 3/28/2025 at 4:30 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. (smc) (Entered: 03/28/2025) |
| 28/2025 | 9 | REQUEST FOR SUMMONS TO ISSUE *Re: U.S. Attorney & U.S. Attorney General* filed by WILMER CUTLER PIC HALE AND DORR LLP. (Attachments: # 1 Summons U.S. Attorney General)(Clement, Paul) (Entered: 03/28/2025) |
| 28/2025 | | Minute Entry for Motion Hearing held on 3/28/2025 before Judge Richard J. Leon: re 3 MOTION for Temporary Restr Order. Oral arguments heard and TAKEN UNDER ADVISEMENT. Proposed Briefing Schedule due by 3/31/2025. Co Reporter: William Zaremba. (smc) (Entered: 03/28/2025) |
| 28/2025 | 10 | MEMORANDUM ORDER granting in part and denying in part 3 Plaintiff's Motion for Temporary Restraining Order. S attached Memorandum Order for details. Consistent with the attached Memorandum Order, the parties must file a joint report proposing an expedited briefing schedule by 4:00 PM on March 31, 2025. Signed by Judge Richard J. Leon on 0 (lcrjl3) (Entered: 03/28/2025) |
| 28/2025 | 11 | TRANSCRIPT OF MOTION HEARING ON TRO PROCEEDINGS before Judge Richard J. Leon held on March 28, 2 Numbers: 1−49. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcrip ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchase court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (m condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the co any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made av the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifica covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/18/2025. Redacted Transcript Deadline set for 4/28/2025. Release of Transcript Restriction se 6/26/2025.(Zaremba, William) (Entered: 03/28/2025) |
| 31/2025 | 12 | SUMMONS (2) Reissued Electronically as to U.S. Attorney and U.S. Attorney General (mg) Modified event on 3/31/2 (Entered: 03/31/2025) |
| 31/2025 | 13 | Joint STATUS REPORT by ENVIRONMENTAL PROTECTION AGENCY, DEPARTMENT OF HOMELAND SEC DEPARTMENT OF STATE, DEPARTMENT OF ENERGY, DEPARTMENT OF THE TREASURY, DEPARTMEN LABOR, DEPARTMENT OF AGRICULTURE, DEPARTMENT OF COMMERCE, DEPARTMENT OF HOUSING |

  | | | |
|---|---|---|
| | | URBAN DEVELOPMENT, SMALL BUSINESS ADMINISTRATION, EXECUTIVE OFFICE OF THE PRESIDENT OF THE UNITED STATES TRADE REPRESENTATIVE, DEPARTMENT OF THE INTERIOR, DEPARTMENT O TRANSPORTATION, SECURITIES AND EXCHANGE COMMISSION, FEDERAL TRADE COMMISSION, UNIT STATES PATENT AND TRADEMARK OFFICE, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, UNIT STATES OF AMERICA, PAMELA J. BONDI, PETER B. HEGSETH, U.S. DEPARTMENT OF JUSTICE, ROBERT KENNEDY, JR, LINDA M. MCMAHON, DOUGLAS A. COLLINS, RUSSELL T. VOUGHT, TULSI GABBARD, J RATCLIFFE, LEE M. ZELDIN, KRISTI NOEM, MARCO A. RUBIO, CHRIS WRIGHT, U.S. DEPARTMENT OF D SCOTT BESSENT, LORI CHAVEZ−DEREMER, BROOKE L. ROLLINS, HOWARD W. LUTNICK, SCOTT TURN KELLY LOEFFLER, JAMIESON GREER, DOUGLAS J. BURGUM, SEAN DUFFY, MARK T. UYEDA, U.S. DEP OF HEALTH AND HUMAN SERVICES, ANDREW N. FERGUSON, COKE MORGAN STEWART, ANDREA R. L WILMER CUTLER PICKERING HALE AND DORR LLP, U.S. DEPARTMENT OF EDUCATION, U.S. DEPARTM VETERANS AFFAIRS, OFFICE OF MANAGEMENT AND BUDGET, OFFICE OF THE DIRECTOR OF NATION INTELLIGENCE, CENTRAL INTELLIGENCE AGENCY. (Clement, Paul) (Entered: 03/31/2025) |
| 01/2025 | | MINUTE ORDER. Upon consideration of the 13 Joint Status Report, it is hereby ORDERED that the Court sets the fol briefing schedule for dispositive motions: dispositive motions and opening briefs are due April 8, 2025; amicus briefs i either side are due April 11, 2025; and opposition briefs are due April 17, 2025. It is further ORDERED that the Court s oral argument on April 23, 2025 at 3:00 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. SO ORDERED Judge Richard J. Leon on 4/1/2025. (lcrjl1) (Entered: 04/01/2025) |
| 01/2025 | | MINUTE ORDER. On March 31, 2025, the parties filed a 13 Joint Status Report stating that "[a]ll parties have [] agree the injunctive relief issued by this Court on March 28, 2025, until final judgment." *See* Joint Status Report [Dkt. #13]. V parties' consent and having found good cause to do so, the Court hereby ORDERS that the temporary restraining order i March 28, 2025, Mem. Order [Dkt. #10], is EXTENDED until final judgment. This will allow time for the parties to bri for the Court to rule on−−the forthcoming dispositive motions. The 13 Joint Status Report also states that "[t]he parties that they do not anticipate needing discovery in this case and that no party will request discovery in connection with the dispositive motions." *See* Joint Status Report. Therefore, and at the parties' request, the Court ORDERS that discovery s STAYED pending further order of the Court. SO ORDERED. Signed by Judge Richard J. Leon on 4/1/2025. (lcrjl1) (E 04/01/2025) |
| 07/2025 | 17 | Unopposed MOTION for Leave to File Amicus Brief by KENNETH C. PICKERING. (Attachments: # 1 Amicus Brief, of Proposed Order)(mg) (Entered: 04/08/2025) |
| 08/2025 | 14 | NOTICE of Appearance by Matthew Rowen on behalf of WILMER CUTLER PICKERING HALE AND DORR LLP ( Matthew) (Entered: 04/08/2025) |
| 08/2025 | 15 | MOTION to Dismiss by SCOTT BESSENT, PAMELA J. BONDI, DOUGLAS J. BURGUM, CENTRAL INTELLIGE AGENCY, LORI CHAVEZ−DEREMER, DOUGLAS A. COLLINS, DEPARTMENT OF AGRICULTURE, DEPART COMMERCE, DEPARTMENT OF ENERGY, DEPARTMENT OF HOMELAND SECURITY, DEPARTMENT OF AND URBAN DEVELOPMENT, DEPARTMENT OF LABOR, DEPARTMENT OF STATE, DEPARTMENT OF T INTERIOR, DEPARTMENT OF THE TREASURY, DEPARTMENT OF TRANSPORTATION, SEAN DUFFY, ENVIRONMENTAL PROTECTION AGENCY, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, EXECU OFFICE OF THE PRESIDENT, FEDERAL TRADE COMMISSION, ANDREW N. FERGUSON, TULSI GABBARD JAMIESON GREER, PETER B. HEGSETH, ROBERT F. KENNEDY, JR, KELLY LOEFFLER, ANDREA R. LUCA HOWARD W. LUTNICK, LINDA M. MCMAHON, KRISTI NOEM, OFFICE OF MANAGEMENT AND BUDGET, OF THE DIRECTOR OF NATIONAL INTELLIGENCE, OFFICE OF THE UNITED STATES TRADE REPRESENT JOHN L. RATCLIFFE, BROOKE L. ROLLINS, MARCO A. RUBIO, SECURITIES AND EXCHANGE COMMISSI SMALL BUSINESS ADMINISTRATION, COKE MORGAN STEWART, SCOTT TURNER, U.S. DEPARTMENT DEFENSE, U.S. DEPARTMENT OF EDUCATION, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, DEPARTMENT OF JUSTICE, U.S. DEPARTMENT OF VETERANS AFFAIRS, UNITED STATES OF AMERICA, STATES PATENT AND TRADEMARK OFFICE, MARK T. UYEDA, RUSSELL T. VOUGHT, CHRIS WRIGHT, L ZELDIN. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Lawson, Richard) (Entered: 04/08/ |
| 08/2025 | 16 | |

| | | |
|---|---|---|
| | | MOTION for Summary Judgment by WILMER CUTLER PICKERING HALE AND DORR LLP. (Attachments: # 1 Memorandum in Support of Plaintiff's Motion for Summary Judgment, # 2 Statement of Facts, # 3 Declaration of Bruce Berman (supplemental), # 4 Declaration of Joseph J. DeMott, # 5 Exhibit Expert Report of J. William Leonard, # 6 Tex Proposed Order)(Clement, Paul) (Entered: 04/08/2025) |
| 09/2025 | 18 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Andrew G. Pappas, Filing fee $ 100, receipt number ADCDC−11603087. Fee Status: Fee Paid. by AUSTIN TYLER MARSHALL. (Attachments: # 1 Declaration Declarati Andrew G. Pappas)(Marshall, Austin) (Entered: 04/09/2025) |
| 09/2025 | 19 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− David B. Rosenbaum, Filing fee $ 100, receipt number ADCDC−11603095. Fee Status: Fee Paid. by AUSTIN TYLER MARSHALL. (Attachments: # 1 Declaration Declarati B. Rosenbaum)(Marshall, Austin) (Entered: 04/09/2025) |
| 09/2025 | 20 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Joshua J. Messer, Filing fee $ 100, receipt number ADCDC−11603097. Fee Status: Fee Paid. by AUSTIN TYLER MARSHALL. (Attachments: # 1 Declaration Declarati Joshua J. Messer)(Marshall, Austin) (Entered: 04/09/2025) |
| 09/2025 | 21 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Mary R. O'Grady, Filing fee $ 100, receipt number ADCDC−11603099. Fee Status: Fee Paid. by AUSTIN TYLER MARSHALL. (Attachments: # 1 Declaration Declarati R. O'Grady)(Marshall, Austin) (Entered: 04/09/2025) |
| 09/2025 | 22 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Eric M. Fraser, Filing fee $ 100, receipt number ADCDC−11603110. Fee Status: Fee Paid. by AUSTIN TYLER MARSHALL. (Attachments: # 1 Declaration Declarati M. Fraser)(Marshall, Austin) (Entered: 04/09/2025) |
| 09/2025 | 23 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Joseph N. Roth, Filing fee $ 100, receipt number ADCDC−11603137. Fee Status: Fee Paid. by AUSTIN TYLER MARSHALL. (Attachments: # 1 Declaration Declarati Joseph N. Roth)(Marshall, Austin) (Entered: 04/09/2025) |
| 10/2025 | 24 | Unopposed MOTION to Modify *Scheduling Order* by WILMER CUTLER PICKERING HALE AND DORR LLP. (Cl Paul) (Entered: 04/10/2025) |
| 10/2025 | 25 | NOTICE of Appearance by Justin A. Nelson on behalf of FORMER SENIOR GOVERNMENT OFFICIALS (Nelson, J (Entered: 04/10/2025) |
| 10/2025 | 26 | Unopposed MOTION for Leave to File Amicus Brief by FORMER SENIOR GOVERNMENT OFFICIALS. (Attachme Exhibit Amicus Brief, # 2 Text of Proposed Order, # 3 Appendix)(Nelson, Justin) (Entered: 04/10/2025) |
| 10/2025 | 27 | NOTICE of Appearance by Jim Davy on behalf of FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY (Attachments: # 1 Exhibit Full list of Amici represented by Jim Davy)(Davy, Jim) (Entered: 04/10/2025) |
| 10/2025 | 28 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Robert Chang, Filing fee $ 100, receipt number ADCDC−11606916. Fee Status: Fee Paid. by FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY. (Attac 1 Declaration Chang Declaration, # 2 Exhibit Certificate of Good Standing)(Davy, Jim) (Entered: 04/10/2025) |
| 10/2025 | | MINUTE ORDER granting 17 Unopposed Motion for Leave to File Amicus Brief. No parties opposing such motion, th hereby GRANTS the Motion for Leave to File the Amicus Curiae Brief of Pickering Legal LLC in Support of Plaintiff's for a Permanent Injunction. SO ORDERED. Signed by Judge Richard J. Leon on 4/10/2025. (lcrjl1) (Entered: 04/10/20 |
| 10/2025 | | MINUTE ORDER granting 18 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that the motion is Gl and that Andrew G. Pappas be, and hereby is, admitted pro hac vice in this case. **Counsel should register for e−filing v and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Judge Ri Leon on 4/10/2025. (lcrjl1) (Entered: 04/10/2025) |
| 10/2025 | | MINUTE ORDER granting 19 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that the motion is Gl and that David B. Rosenbaum be, and hereby is, admitted pro hac vice in this case. **Counsel should register for e−filin PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by |

| | | |
|---|---|---|
| | | Richard J. Leon on 4/10/2025. (lcrjl1) (Entered: 04/10/2025) |
| 10/2025 | | MINUTE ORDER granting 20 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that the motion is GI and that Joshua J. Messer be, and hereby is, admitted pro hac vice in this case. **Counsel should register for e−filing via and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Judge Ri Leon on 4/10/2025. (lcrjl1) (Entered: 04/10/2025) |
| 10/2025 | | MINUTE ORDER granting 21 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that the motion is GI and that Mary R. O'Grady be, and hereby is, admitted pro hac vice in this case. **Counsel should register for e−filing vi and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Judge Ri Leon on 4/10/2025. (lcrjl1) (Entered: 04/10/2025) |
| 10/2025 | | MINUTE ORDER granting 22 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that the motion is GI and that Eric M. Fraser be, and hereby is, admitted pro hac vice in this case. **Counsel should register for e−filing via P and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Judge Ri Leon on 4/10/2025. (lcrjl1) (Entered: 04/10/2025) |
| 10/2025 | | MINUTE ORDER granting 23 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that the motion is GI and that Joseph N. Roth be, and hereby is, admitted pro hac vice in this case. **Counsel should register for e−filing via and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Judge Ri Leon on 4/10/2025. (lcrjl1) (Entered: 04/10/2025) |
| 10/2025 | 29 | NOTICE of Appearance by David B. Rosenbaum on behalf of GENERAL COUNSEL AMICI (Rosenbaum, David) (En 04/10/2025) |
| 10/2025 | 30 | NOTICE of Appearance by Joseph N. Roth on behalf of GENERAL COUNSEL AMICI (Roth, Joseph) (Entered: 04/10 |
| 10/2025 | 31 | Unopposed MOTION for Leave to File Amicus Brief by PAST PRESIDENTS OF THE DC BAR. (Attachments: # 1 Ex amicus brief, # 2 Appendix list of amici, # 3 Text of Proposed Order)(Ferster, Andrea) (Entered: 04/10/2025) |
| 10/2025 | 32 | Unopposed MOTION for Leave to File Amicus Brief by AMICI CURIAE 676 LAW PROFESSORS. (Attachments: # 1 Amici Brief, # 2 Text of Proposed Order)(Malone, Phillip) (Entered: 04/10/2025) |
| 10/2025 | 74 | AMICUS BRIEF by KENNETH C. PICKERING. (znmw) (Entered: 04/14/2025) |
| 11/2025 | 33 | NOTICE of Appearance by Eric M. Fraser on behalf of GENERAL COUNSEL AMICI (Fraser, Eric) (Entered: 04/11/2 |
| 11/2025 | 34 | NOTICE of Appearance by Mary Ruth O'Grady on behalf of GENERAL COUNSEL AMICI (O'Grady, Mary) (Entered 04/11/2025) |
| 11/2025 | 35 | NOTICE of Appearance by Joshua James Messer on behalf of GENERAL COUNSEL AMICI (Messer, Joshua) (Entere 04/11/2025) |
| 11/2025 | 36 | NOTICE of Appearance by William E. Zapf on behalf of 24 NONGOVERNMENTAL ORGANIZATIONS (Zapf, Wil (Entered: 04/11/2025) |
| 11/2025 | 37 | Unopposed MOTION for Leave to File Amicus Brief by 24 NONGOVERNMENTAL ORGANIZATIONS. (Attachme Exhibit A − Proposed Brief, # 2 Text of Proposed Order)(Zapf, William) (Entered: 04/11/2025) |
| 11/2025 | 38 | Unopposed MOTION for Leave to File Amicus Brief by FRED T. KOREMATSU CENTER FOR LAW AND EQUAL (Attachments: # 1 Exhibit Proposed amicus brief)(Davy, Jim) (Entered: 04/11/2025) |
| 11/2025 | 39 | Unopposed MOTION for Leave to File Amicus Brief by 808 LAW FIRMS. (Attachments: # 1 Exhibit, # 2 Appendix, # Proposed Order)(Verrilli, Donald) (Entered: 04/11/2025) |
| 11/2025 | 40 | Unopposed MOTION for Leave to File Amicus Brief by LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LA LOCAL AFFILIATES. (Attachments: # 1 Exhibit Brief of Lawyers' Committee and affiliates, # 2 Exhibit Proposed Order)(Caspar, Edward) (Entered: 04/11/2025) |

| | | |
|---|---|---|
| 11/2025 | 41 | Consent MOTION for Leave to File Amicus Brief *in Support of Plaintiff* by INTERNATIONAL ACADEMY OF TRIA LAWYERS. (Attachments: # 1 Exhibit Brief of Amicus Curiae, # 2 Text of Proposed Order Proposed Order)(Regan, Pa (Entered: 04/11/2025) |
| 11/2025 | | MINUTE ORDER. Upon consideration of the 26 Unopposed Motion for Leave to File Amicus Brief of Former Senior Government Officials as Amici Curiae, it is hereby ORDERED that the motion is GRANTED and that the Amici Curia attached as Exhibit 1 to the 26 Motion is deemed filed with this Court upon entry of this Minute Order. SO ORDERED. Judge Richard J. Leon on 4/11/2025. (lcrjl1) (Entered: 04/11/2025) |
| 11/2025 | | MINUTE ORDER granting 28 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that the motion is G and that Robert Seungchul Chang be, and hereby is, admitted pro hac vice in this case. **Counsel should register for e−f PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Richard J. Leon on 4/11/2025. (lcrjl1) (Entered: 04/11/2025) |
| 11/2025 | | MINUTE ORDER. Upon consideration of the 31 Unopposed Motion of Former Presidents of the District of Columbia I Past Presidents of Voluntary Bar Associations for Leave to File Amici Curiae Brief, it is hereby ORDERED that the mo GRANTED and that the Amici Curiae brief attached as Exhibit 1 to the 31 Motion is deemed filed with this Court upon this Minute Order. SO ORDERED. Signed by Judge Richard J. Leon on 4/11/2025. (lcrjl1) (Entered: 04/11/2025) |
| 11/2025 | 42 | NOTICE of Appearance by Donald Beaton Verrilli, Jr on behalf of 808 LAW FIRMS (Verrilli, Donald) (Entered: 04/11 |
| 11/2025 | 43 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Nathan P. Eimer, Filing fee $ 100, receipt number ADCDC−11610134. Fee Status: Fee Paid. by 808 LAW FIRMS. (Attachments: # 1 Declaration of Nathan P. Eimer, # 2 Proposed Order)(Verrilli, Donald) (Entered: 04/11/2025) |
| 11/2025 | | MINUTE ORDER. Upon consideration of the 32 Unopposed Motion for Leave to File Brief of Amici Curiae 676 Law I it is hereby ORDERED that the motion is GRANTED and that the Amici Curiae brief attached as Exhibit 1 to the 32 M deemed filed with this Court upon entry of this Minute Order. SO ORDERED. Signed by Judge Richard J. Leon on 4/11 (lcrjl1) (Entered: 04/11/2025) |
| 11/2025 | | MINUTE ORDER. Upon consideration of the 37 Unopposed Motion by 24 Nongovernmental Organizations for Leave Amici Curiae Brief, it is hereby ORDERED that the motion is GRANTED and that the Amici Curiae brief attached as E the 37 Motion is deemed filed with this Court upon entry of this Minute Order. SO ORDERED. Signed by Judge Richar on 4/11/2025. (lcrjl1) (Entered: 04/11/2025) |
| 11/2025 | 44 | Unopposed MOTION for Leave to File Amicus Brief by MEDIA ORGANIZATIONS AND PRESS FREEDOM ADVO (Attachments: # 1 Exhibit Proposed Brief, # 2 Appendix A, # 3 Text of Proposed Order)(Kortz, Mason) (Entered: 04/11 |
| 11/2025 | | MINUTE ORDER. Upon consideration of the 38 Unopposed Motion for Leave to File Brief of Amici Curiae Fred T. K Center for Law and Equality, Service Employees International Union, American Federation of Teachers, American Ass University Professors, Center for Civil Rights and Critical Justice, Race and Law Centers, and Civil Rights and Advoca Organizations, it is hereby ORDERED that the motion is GRANTED and that the Amici Curiae brief attached as Exhibi 38 Motion is deemed filed with this Court upon entry of this Minute Order. SO ORDERED. Signed by Judge Richard J. 4/11/2025. (lcrjl1) (Entered: 04/11/2025) |
| 11/2025 | | MINUTE ORDER. Upon consideration of the 39 Unopposed Motion of 808 Law Firms for Leave to File a Brief Amicu is hereby ORDERED that the motion is GRANTED and that the Amici Curiae brief attached as Exhibit 1 to the 39 Mot deemed filed with this Court upon entry of this Minute Order. SO ORDERED. Signed by Judge Richard J. Leon on 4/11 (lcrjl1) (Entered: 04/11/2025) |
| 11/2025 | | MINUTE ORDER. Upon consideration of the 40 Unopposed Motion of the Lawyers' Committee for Civil Rights Under Public Counsel, Washington Lawyers' Committee for Civil Rights and Urban Affairs, Public Interest Law Center, Chica Lawyers' Committee for Civil Rights Under Law, Mississippi Center for Justice, and Lawyers' Committee for Civil Rig San Francisco Bay Area for Leave to File Brief of Amici Curiae, it is hereby ORDERED that the motion is GRANTED the Amici Curiae brief attached as Exhibit 1 to the 40 Motion is deemed filed with this Court upon entry of this Minute ORDERED. Signed by Judge Richard J. Leon on 4/11/2025. (lcrjl1) (Entered: 04/11/2025) |

| | | |
|---|---|---|
| 11/2025 | | MINUTE ORDER. Upon consideration of the 41 Consent Motion for Leave to File Brief of Amicus Curiae Internationa of Trial Lawyers, it is hereby ORDERED that the motion is GRANTED and that the Amicus Curiae brief attached as E the 41 Motion is deemed filed with this Court upon entry of this Minute Order. SO ORDERED. Signed by Judge Richa on 4/11/2025. (lcrjl1) (Entered: 04/11/2025) |
| 11/2025 | 45 | Unopposed MOTION for Leave to File Amicus Brief by NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC (Attachments: # 1 Exhibit Brief of Amicus Curiae, # 2 Text of Proposed Order)(Spital, Samuel) (Entered: 04/11/2025) |
| 11/2025 | | MINUTE ORDER granting 43 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that the motion is G and that Nathan P. Eimer be, and hereby is, admitted pro hac vice in this case. **Counsel should register for e−filing via and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Judge R Leon on 4/11/2025. (lcrjl1) (Entered: 04/11/2025) |
| 11/2025 | 46 | NOTICE of Appearance by Robert Seungchul Chang on behalf of FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY (Chang, Robert) (Entered: 04/11/2025) |
| 11/2025 | 47 | AMICUS BRIEF *in Support of Plaintiff's Summary Judgment Motion* by STATE OF NEW JERSEY. (Iyer, Sundeep) (I 04/11/2025) |
| 11/2025 | 48 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Adria Bonillas, Filing fee $ 100, receipt number ADCDC−11610707. Fee Status: Fee Paid. by LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW AND L AFFILIATES. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Proposed Order)(Caspar, Edward) ( 04/11/2025) |
| 11/2025 | 49 | MOTION for Leave to File Amicus Brief*of Amici Curiae Former and Current General Counsel Supporting Plaintiff W Cutler Pickering Hale and Dorr LLP* by GENERAL COUNSEL AMICI. (Attachments: # 1 Exhibit Brief of Amici Cur Text of Proposed Order)(Rosenbaum, David) (Entered: 04/11/2025) |
| 11/2025 | 50 | NOTICE of Appearance by Andrew George Pappas on behalf of GENERAL COUNSEL AMICI (Pappas, Andrew) (En 04/11/2025) |
| 11/2025 | | MINUTE ORDER. Upon consideration of the 44 Unopposed Motion for Leave to File Amicus Brief by Media Organiz Press Freedom Advocates, it is hereby ORDERED that the motion is GRANTED and that the Amici Curiae brief attach Exhibit 1 to the 44 Motion is deemed filed with this Court upon entry of this Minute Order. SO ORDERED. Signed by Richard J. Leon on 4/11/2025. (lcrjl1) (Entered: 04/11/2025) |
| 11/2025 | | MINUTE ORDER. Upon consideration of the 45 Unopposed Motion for Leave to File Amicus Brief by NAACP Legal and Education Fund, Inc., it is hereby ORDERED that the motion is GRANTED and that the Amicus Curiae brief attac Exhibit 1 to the 45 Motion is deemed filed with this Court upon entry of this Minute Order. SO ORDERED. Signed by Richard J. Leon on 4/11/2025. (lcrjl1) (Entered: 04/11/2025) |
| 11/2025 | 51 | Unopposed MOTION for Leave to File Amicus Brief *in Support of Plaintiff's Motion for Summary Judgment* by AMIC LITIGATION FIRMS. (Attachments: # 1 Exhibit − Brief of Amici Curiae Litigation Firms in Support of Plaintiff's Mo Summary Judgment, # 2 Text of Proposed Order)(Reilly, Kathryn) (Entered: 04/11/2025) |
| 11/2025 | 52 | NOTICE of Appearance by Kathryn A. Reilly on behalf of AMICI CURIAE LITIGATION FIRMS (Reilly, Kathryn) (I 04/11/2025) |
| 11/2025 | 53 | Unopposed MOTION for Leave to File Amicus Brief by AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIV LIBERTIES UNION OF THE DISTRICT OF COLUMBIA, CATO INSTITUTE, ELECTRONIC FRONTIER FOUND FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, INSTITUTE FOR JUSTICE, KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, NATIONAL COALITION AGAINST CENSORSHIP, REPORTERS COMMITTEE FOR THE FREEDOM OF THE PRESS, RUTHERFORD INSTITUTE, SOCIETY FOR RULE OF LAW INSTITUTE. (Attachments: # 1 Exhibit Amicus Brief, # 2 Text of Proposed Order)(Wang, Cecillia) (I 04/11/2025) |

| | | |
|---|---|---|
| 11/2025 | 54 | NOTICE of Appearance by Cecillia D. Wang on behalf of AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIV LIBERTIES UNION OF THE DISTRICT OF COLUMBIA, CATO INSTITUTE, ELECTRONIC FRONTIER FOUND FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, INSTITUTE FOR JUSTICE, KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, NATIONAL COALITION AGAINST CENSORSHIP, REPORTERS COMMITTEE FOR THE FREEDOM OF THE PRESS, RUTHERFORD INSTITUTE, SOCIETY FOR RULE OF LAW INSTITUTE (Wang, Cecillia) (Entered: 04/11/2025) |
| 11/2025 | 55 | Unopposed MOTION for Leave to File Amicus Brief by LEGAL ETHICS PROFESSORS. (Attachments: # 1 Exhibit, # Proposed Order)(Corkran, Kelsi) (Entered: 04/11/2025) |
| 11/2025 | 56 | NOTICE of Appearance by Kelsi B. Corkran on behalf of LEGAL ETHICS PROFESSORS (Corkran, Kelsi) (Entered: 04/11/2025) |
| 11/2025 | 57 | NOTICE of Appearance by Nathan P. Eimer on behalf of 808 LAW FIRMS (Eimer, Nathan) (Entered: 04/11/2025) |
| 11/2025 | 58 | NOTICE of Appearance by Hayden Johnson on behalf of BAR ASSOCIATIONS (Johnson, Hayden) (Main Document on 4/14/2025) (znmw). (Entered: 04/11/2025) |
| 11/2025 | 59 | NOTICE of Appearance by Eric John Galvez Paredes on behalf of BAR ASSOCIATIONS (Paredes, Eric John) (Entere 04/11/2025) |
| 11/2025 | 60 | Unopposed MOTION for Leave to File Amicus Brief by BAR ASSOCIATIONS. (Attachments: # 1 Exhibit − Amici Cu # 2 Text of Proposed Order)(Paredes, Eric John) (Entered: 04/11/2025) |
| 11/2025 | 61 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Samuel Davis, Filing fee $ 100, receipt number ADCDC−11611164. Fee Status: Fee Paid. by LEGAL ETHICS PROFESSORS. (Attachments: # 1 Exhibit, # 2 Text of Order)(Corkran, Kelsi) (Entered: 04/11/2025) |
| 11/2025 | 62 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Jeremiah Chin, Filing fee $ 100, receipt number ADCDC−11611188. Fee Status: Fee Paid. by FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY. (Attac 1 Declaration Chin Declaration, # 2 Exhibit Certificate of Good Standing)(Davy, Jim) (Entered: 04/11/2025) |
| 11/2025 | 63 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Melissa Lee, Filing fee $ 100, receipt number ADCDC− Fee Status: Fee Paid. by FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY. (Attachments: # 1 Declarat Declaration, # 2 Exhibit Certificate of Good Standing)(Davy, Jim) (Entered: 04/11/2025) |
| 11/2025 | 64 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Jessica Levin, Filing fee $ 100, receipt number ADCDC−11611210. Fee Status: Fee Paid. by FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY. (Attac 1 Declaration Levin Declaration, # 2 Exhibit Certificate of Good Standing)(Davy, Jim) (Entered: 04/11/2025) |
| 11/2025 | 65 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Susan McMahon, Filing fee $ 100, receipt number ADCDC−11611213. Fee Status: Fee Paid. by FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY. (Attac 1 Declaration McMahon Declaration, # 2 Exhibit Certificate of Good Standing)(Davy, Jim) (Entered: 04/11/2025) |
| 11/2025 | 66 | NOTICE of Appearance by Noam Biale on behalf of NEW YORK COUNCIL OF DEFENSE LAWYERS (Biale, Noan (Entered: 04/11/2025) |
| 11/2025 | 67 | NOTICE of Appearance by Kobie A. Flowers on behalf of NATIONAL ASSOCIATION OF CRIMINAL DEFENSE L (Flowers, Kobie) (Entered: 04/11/2025) |
| 11/2025 | 68 | NOTICE of Appearance by Sara E. Kropf on behalf of AMICI CURIAE 342 FORMER JUDGES (Kropf, Sara) (Entere 04/11/2025) |
| 11/2025 | 69 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Donald Falk, Filing fee $ 100, receipt number ADCDC− Fee Status: Fee Paid. by AMICI CURIAE 342 FORMER JUDGES. (Attachments: # 1 Declaration By Donald Falk)(Kr (Entered: 04/11/2025) |

| | | |
|---|---|---|
| 11/2025 | 70 | Consent MOTION for Leave to File Amicus Brief by AMICI CURIAE 342 FORMER JUDGES. (Attachments: # 1 Exh of amici), # 2 Exhibit B (brief), # 3 Text of Proposed Order)(Kropf, Sara) (Entered: 04/11/2025) |
| 11/2025 | 71 | Unopposed MOTION for Leave to File Amicus Brief by NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LA NEW YORK COUNCIL OF DEFENSE LAWYERS. (Attachments: # 1 Exhibit 1: Brief, # 2 Exhibit 2: Proposed Order Noam) (Entered: 04/11/2025) |
| 11/2025 | 75 | AMICUS BRIEF by FORMER SENIOR GOVERNMENT OFFICIALS. (Attachments: # 1 Appendix)(znmw) (Entered 04/14/2025) |
| 11/2025 | 76 | AMICUS BRIEF by PAST PRESIDENTS OF THE DC BAR. (Attachments: # 1 Appendix)(znmw) (Entered: 04/14/20 |
| 11/2025 | 77 | AMICUS BRIEF by 676 LAW PROFESSORS. (znmw) (Entered: 04/14/2025) |
| 11/2025 | 78 | AMICUS BRIEF by 24 NONGOVERNMENTAL ORGANIZATIONS. (znmw) (Entered: 04/14/2025) |
| 11/2025 | 79 | AMICUS BRIEF by FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY. (znmw) (Entered: 04/14/2025) |
| 11/2025 | 80 | AMICUS BRIEF by 808 LAW FIRMS. (Attachments: # 1 Appendix)(znmw) (Entered: 04/14/2025) |
| 11/2025 | 81 | AMICUS BRIEF by LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW AND LOCAL AFFILIATES. (z (Entered: 04/14/2025) |
| 11/2025 | 82 | AMICUS BRIEF by INTERNATIONAL ACADEMY OF TRIAL LAWYERS. (znmw) (Entered: 04/14/2025) |
| 11/2025 | 83 | AMICUS BRIEF by MEDIA ORGANIZATIONS AND PRESS FREEDOM ADVOCATES. (znmw) (Entered: 04/14/2 |
| 11/2025 | 84 | AMICUS BRIEF by NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.. (znmw) (Entered: 04/14/2025) |
| 11/2025 | 94 | AMICUS BRIEF by GENERAL COUNSEL AMICI. (mg) (Entered: 04/16/2025) |
| 11/2025 | 95 | AMICUS BRIEF by AMICI CURIAE LITIGATION FIRMS. (mg) (Entered: 04/16/2025) |
| 11/2025 | 96 | AMICUS BRIEF by AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION OF THE DI OF COLUMBIA, CATO INSTITUTE, ELECTRONIC FRONTIER FOUNDATION, FOUNDATION FOR INDIVIDU RIGHTS AND EXPRESSION, INSTITUTE FOR JUSTICE, KNIGHT FIRST AMENDMENT INSTITUTE AT COLU UNIVERSITY, NATIONAL COALITION AGAINST CENSORSHIP, REPORTERS COMMITTEE FOR THE FREE THE PRESS, RUTHERFORD INSTITUTE, SOCIETY FOR THE RULE OF LAW INSTITUTE. (mg) (Entered: 04/16 |
| 11/2025 | 97 | AMICUS BRIEF by LEGAL ETHICS PROFESSORS. (mg) (Entered: 04/16/2025) |
| 11/2025 | 98 | AMICUS BRIEF by BAR ASSOCIATIONS. (mg) (Entered: 04/16/2025) |
| 11/2025 | 99 | AMICUS BRIEF by 342 FORMER JUDGES. (mg) (Entered: 04/16/2025) |
| 11/2025 | 100 | AMICUS BRIEF by NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, NEW YORK COUNCIL DEFENSE LAWYERS. (mg) (Entered: 04/16/2025) |
| 11/2025 | 101 | AMICUS BRIEF by AARON H. CAPLAN. (mg) (Entered: 04/16/2025) |
| 14/2025 | 72 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Ruth Greenwood, Filing fee $ 100, receipt number ADCDC−11611705. Fee Status: Fee Paid. by LEGAL ETHICS PROFESSORS. (Attachments: # 1 Exhibit, # 2 Exhibit, Proposed Order)(Corkran, Kelsi) (Entered: 04/14/2025) |
| 14/2025 | 73 | ERRATA by LEGAL ETHICS PROFESSORS re 61 Motion for Leave to Appear Pro Hac Vice,. (Attachments: # 1 Exhibit)(Corkran, Kelsi) (Entered: 04/14/2025) |
| 14/2025 | | NOTICE OF ERROR regarding 69 MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Donald Falk, Filing receipt number ADCDC−11611291. Fee Status: Fee Paid.. The following error(s) need correction: Pro Hac Vice motion |

| | | |
|---|---|---|
| | | accompanied by a Certificate of Good Standing issued within the last 30 days (LCvR 83.2(c)(2)). Please file certificate (znmw) (Entered: 04/14/2025) |
| 14/2025 | 85 | NOTICE of Appearance by Sundeep Iyer on behalf of STATE OF NEW JERSEY (Iyer, Sundeep) (Entered: 04/14/2025 |
| 14/2025 | 86 | NOTICE of Appearance by Stephen Craig Leckar on behalf of AARON H. CAPLAN (Leckar, Stephen) (Entered: 04/1 |
| 14/2025 | 87 | Unopposed MOTION for Leave to File Amicus Brief*Nunc Pro Tunc* by AARON H. CAPLAN. (Attachments: # 1 Exhi Brief of Professor Aaron H. Caplan Regarding Attainder, # 2 Text of Proposed Order)(Leckar, Stephen) (Entered: 04/1 |
| 14/2025 | | MINUTE ORDER. It is hereby ORDERED that the 49 , 51 , 53 , 55 , 60 , 70 , 71 , and 87 Motions for Leave to File Am are GRANTED. The Amicus Briefs attached as Exhibit 1 to 49 , 51 , 53 , 55 , 60 , 71 , and 87 are deemed filed with the April 11, 2025. The Amicus Brief attached as Exhibit 2 to 70 is deemed filed with the Court as of April 11, 2025. SO O Signed by Judge Richard J. Leon on 4/14/2025. (lcrjl1) (Entered: 04/14/2025) |
| 14/2025 | | MINUTE ORDER granting 48 , 61 , 62 , 63 , 64 , 65 , and 72 Motions for Leave to Appear Pro Hac Vice. It is hereby O that Motions are GRANTED and that Adria Bonillas, Samuel Davis, Jeremiah Chin, Melissa Lee, Jessica Levin, Susan and Ruth Greenwood be, and hereby are, admitted pro hac vice in this case. **Counsel should register for e−filing via P file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Judge Richar on 4/14/2025. (lcrjl1) (Entered: 04/14/2025) |
| 14/2025 | | ENTERED IN ERROR.....MINUTE ORDER. Upon consideration of the parties' 6 Joint Status Report, it is hereby ORD a hearing on plaintiff's 2 Motion for a Temporary Restraining Order is scheduled for April 17, 2025 at 3:30 PM in Cour (In Person) before Judge Richard J. Leon. It is further ORDERED that, consistent with the Joint Status Report, the gove shall submit its opposition to the motion by April 15, 2025. SO ORDERED. Signed by Judge Richard J. Leon on 4/14/2 (lcrjl1) Modified on 4/14/2025 (zsmc). (Entered: 04/14/2025) |
| 15/2025 | | MINUTE ORDER. The Court has received inquiries about the Minute Order marked "ENTERED IN ERROR," dated A 2025. For clarity, the Minute Order was inadvertently entered on this docket and does not apply to this case. There is no scheduled for April 17, 2025 at 3:30 PM in this matter. SO ORDERED. Signed by Judge Richard J. Leon on 4/15/2025. (Entered: 04/15/2025) |
| 15/2025 | 88 | NOTICE of Appearance by Jessica Levin on behalf of FRED T. KOREMATSU CENTER FOR LAW AND EQUALIT Jessica) (Entered: 04/15/2025) |
| 15/2025 | 89 | ERRATA *Certificate of Good Standing (Donald Falk)* by 342 FORMER JUDGES re 69 Motion for Leave to Appear Pr Vice,. (Kropf, Sara) (Entered: 04/15/2025) |
| 15/2025 | | MINUTE ORDER. It is hereby ORDERED that plaintiff's 24 Unopposed Motion to Reschedule Oral Hearing is GRAN PART and DENIED IN PART. Plaintiff asks the Court to advance the time of the April 23, 2025 hearing by two hours, from 3:00 PM to 1:00 PM. The Court will advance the time of the hearing, but only by one hour. It is therefore ORDER hearing scheduled for April 23, 2025 at 3:00 PM is RESCHEDULED to April 23, 2025 at 2:00 PM (same day, just one earlier) in Courtroom 18 (In Person) before Judge Richard J. Leon. SO ORDERED. Signed by Judge Richard J. Leon on 4/15/2025. (lcrjl1) (Entered: 04/15/2025) |
| 15/2025 | 90 | NOTICE of Appearance by Melissa Lee on behalf of FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY Melissa) (Entered: 04/15/2025) |
| 15/2025 | 91 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Charlotte Garden, Filing fee $ 100, receipt number ADCDC−11618024. Fee Status: Fee Paid. by FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY. (Atta 1 Declaration Garden declaration, # 2 Exhibit Certificate of good standing)(Davy, Jim) (Entered: 04/15/2025) |
| 15/2025 | | MINUTE ORDER granting 69 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that the motion is G and that Donald Falk be, and hereby is, admitted pro hac vice in this case. **Counsel should register for e−filing via PA file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Judge Richar on 4/15/2025. (lcrjl1) (Entered: 04/15/2025) |

| | | |
|---|---|---|
| 15/2025 | 92 | NOTICE of Appearance by Susan A. McMahon on behalf of FRED T. KOREMATSU CENTER FOR LAW AND EQU (McMahon, Susan) (Entered: 04/15/2025) |
| 15/2025 | 93 | NOTICE of Appearance by Andrea C. Ferster on behalf of PAST PRESIDENTS OF THE DC BAR (Ferster, Andrea) (I Document 93 replaced on 4/16/2025) (mg). (Entered: 04/15/2025) |
| 16/2025 | | MINUTE ORDER granting 91 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that the motion is GI and that Charlotte Garden be, and hereby is, admitted pro hac vice in this matter. **Counsel should register for e−filing PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Richard J. Leon on 4/16/2025. (lcrjl1) (Entered: 04/16/2025) |
| 16/2025 | 102 | NOTICE of Appearance by Adria Jasmine Bonillas on behalf of LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNI AND LOCAL AFFILIATES (Bonillas, Adria) (Main Document 102 replaced on 4/17/2025) (mg). (Entered: 04/16/2025 |
| 17/2025 | 103 | Memorandum in opposition to re 16 Motion for Summary Judgment, filed by SCOTT BESSENT, PAMELA J. BONDI DOUGLAS J. BURGUM, CENTRAL INTELLIGENCE AGENCY, LORI CHAVEZ−DEREMER, DOUGLAS A. CO DEPARTMENT OF AGRICULTURE, DEPARTMENT OF COMMERCE, DEPARTMENT OF ENERGY, DEPARTI HOMELAND SECURITY, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, DEPARTMENT OF L. DEPARTMENT OF STATE, DEPARTMENT OF THE INTERIOR, DEPARTMENT OF THE TREASURY, DEPART OF TRANSPORTATION, SEAN DUFFY, ENVIRONMENTAL PROTECTION AGENCY, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL TRADE COMMISSION ANDREW N. FERGUSON, TULSI GABBARD, JAMIESON GREER, PETER B. HEGSETH, ROBERT F. KENNED KELLY LOEFFLER, ANDREA R. LUCAS, HOWARD W. LUTNICK, LINDA M. MCMAHON, KRISTI NOEM, OF MANAGEMENT AND BUDGET, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, OFFICE OF TH UNITED STATES TRADE REPRESENTATIVE, JOHN L. RATCLIFFE, BROOKE L. ROLLINS, MARCO A. RUBI SECURITIES AND EXCHANGE COMMISSION, SMALL BUSINESS ADMINISTRATION, COKE MORGAN STE SCOTT TURNER, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF EDUCATION, U.S. DEPARTMEN HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF JUSTICE, U.S. DEPARTMENT OF VETERANS AF UNITED STATES OF AMERICA, UNITED STATES PATENT AND TRADEMARK OFFICE, MARK T. UYEDA, I T. VOUGHT, CHRIS WRIGHT, LEE M. ZELDIN. (Attachments: # 1 Statement of Facts Response to Plaintiff's Staten Facts, # 2 Declaration of Richard Lawson)(Lawson, Richard) (Entered: 04/17/2025) |
| 17/2025 | 104 | Memorandum in opposition to re 15 Motion to Dismiss,,,,, filed by WILMER CUTLER PICKERING HALE AND DO (Clement, Paul) (Entered: 04/17/2025) |
| 22/2025 | 105 | NOTICE of Appearance by Jeremiah Chin on behalf of FRED T. KOREMATSU CENTER FOR LAW AND EQUALI Jeremiah) (Entered: 04/22/2025) |
| 23/2025 | | Minute Entry for Motion Hearing held on 4/23/2025 before Judge Richard J. Leon: re 16 MOTION for Summary Judgm arguments heard and TAKEN UNDER ADVISEMENT. Court Reporter: Lisa Edwards. (smc) Modified on 4/24/2025 ( (Entered: 04/24/2025) |
| 24/2025 | 106 | TRANSCRIPT OF PRELIMINARY INJUNCTION before Judge Richard J. Leon held on April 23, 2025; Page Numbe Date of Issuance: April 24, 2025. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354−3269. Transc be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchas court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (m condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the co any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made av the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifica covered, is located on our website at www.dcd.uscourts.gov. |

| | | |
|---|---|---|
| | | Redaction Request due 5/15/2025. Redacted Transcript Deadline set for 5/25/2025. Release of Transcript Restriction se 7/23/2025.(Edwards, Lisa) (Entered: 04/24/2025) |
| 24/2025 | 107 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Jeannie Suk Gersen, Filing fee $ 100, receipt number ADCDC−11642732. Fee Status: Fee Paid. by BAR ASSOCIATIONS. (Attachments: # 1 Declaration of Jeannie Suk Ge Exhibit − Certificate of Good Standing, # 3 Text of Proposed Order)(Paredes, Eric John) (Entered: 04/24/2025) |
| 28/2025 | | MINUTE ORDER granting 107 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that the motion is G and that Jeannie Suk Gersen be, and hereby is, admitted pro hac vice in this case. **Counsel should register for e−filing PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Richard J. Leon on 4/28/2025. (lcrjl1) (Entered: 04/28/2025) |
| 12/2025 | 108 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. All Defendants, RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upo States Attorney General 4/3/2025., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to t States Attorney. Date of Service Upon United States Attorney on 4/3/2025. ( Answer due for ALL FEDERAL DEFEN 6/2/2025.) (Attachments: # 1 Exhibit)(Clement, Paul) (Entered: 05/12/2025) |
| 13/2025 | 109 | NOTICE *of Recent Development* by WILMER CUTLER PICKERING HALE AND DORR LLP (Clement, Paul) (Ente 05/13/2025) |
| 27/2025 | 110 | MEMORANDUM OPINION. Signed by Judge Richard J. Leon on 5/27/2025. (lcrjl1) (Entered: 05/27/2025) |
| 27/2025 | 111 | ORDER. Consistent with the attached Order, defendants' 15 Motion to Dismiss is GRANTED IN PART and DENIED plaintiff's 16 Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART; and plaintiff's 3 Motion Preliminary Injunction is DENIED AS MOOT. See attached Order for details. Signed by Judge Richard J. Leon on 5/27 (lcrjl1) (Entered: 05/27/2025) |
| 27/2025 | 112 | NOTICE of Appearance by Donald Manwell Falk on behalf of 342 FORMER JUDGES (Falk, Donald) (Main Documen replaced on 5/28/2025) (mg). (Entered: 05/27/2025) |
| 03/2025 | 113 | STATUS REPORT by SCOTT BESSENT, PAMELA J. BONDI, DOUGLAS J. BURGUM, CENTRAL INTELLIGEN AGENCY, LORI CHAVEZ−DEREMER, DOUG COLLINS, DEPARTMENT OF AGRICULTURE, DEPARTMENT COMMERCE, DEPARTMENT OF ENERGY, DEPARTMENT OF HOMELAND SECURITY, DEPARTMENT OF AND URBAN DEVELOPMENT, DEPARTMENT OF LABOR, DEPARTMENT OF STATE, DEPARTMENT OF T INTERIOR, DEPARTMENT OF THE TREASURY, DEPARTMENT OF TRANSPORTATION, SEAN DUFFY, ENVIRONMENTAL PROTECTION AGENCY, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, EXECU OFFICE OF THE PRESIDENT, FEDERAL TRADE COMMISSION, ANDREW N. FERGUSON, TULSI GABBARD JAMIESON GREER, PETER B. HEGSETH, ROBERT F. KENNEDY, JR, KELLY LOEFFLER, ANDREA R. LUCA HOWARD W. LUTNICK, LINDA MCMAHON, KRISTI NOEM, OFFICE OF MANAGEMENT AND BUDGET, OF THE DIRECTOR OF NATIONAL INTELLIGENCE, OFFICE OF THE UNITED STATES TRADE REPRESENTAT L. RATCLIFFE, BROOKE L. ROLLINS, MARCO RUBIO, SECURITIES AND EXCHANGE COMMISSION, SMA BUSINESS ADMINISTRATION, COKE MORGAN STEWART, SCOTT TURNER, U.S. DEPARTMENT OF DEFE DEPARTMENT OF EDUCATION, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTM JUSTICE, U.S. DEPARTMENT OF VETERANS AFFAIRS, UNITED STATES OF AMERICA, UNITED STATES P AND TRADEMARK OFFICE, MARK T. UYEDA, RUSSELL VOUGHT, CHRIS WRIGHT, LEE M. ZELDIN. (Law Richard) (Entered: 06/03/2025) |
| 06/2025 | 114 | Unopposed MOTION to Clarify re 111 Order on Motion to Dismiss,, Order on Motion for Summary Judgment,, Order for Preliminary Injunction,, Set/Reset Deadlines, by SCOTT BESSENT, PAMELA J. BONDI, DOUGLAS J. BURGU CENTRAL INTELLIGENCE AGENCY, LORI CHAVEZ−DEREMER, DOUG COLLINS, DEPARTMENT OF AGRICULTURE, DEPARTMENT OF COMMERCE, DEPARTMENT OF ENERGY, DEPARTMENT OF HOMELA SECURITY, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, DEPARTMENT OF LABOR, DEPA OF STATE, DEPARTMENT OF THE INTERIOR, DEPARTMENT OF THE TREASURY, DEPARTMENT OF TRANSPORTATION, SEAN DUFFY, ENVIRONMENTAL PROTECTION AGENCY, EQUAL EMPLOYMENT |

| | | |
|---|---|---|
| | | OPPORTUNITY COMMISSION, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL TRADE COMMISSION ANDREW N. FERGUSON, TULSI GABBARD, JAMIESON GREER, PETER B. HEGSETH, ROBERT F. KENNED KELLY LOEFFLER, ANDREA R. LUCAS, HOWARD W. LUTNICK, LINDA MCMAHON, KRISTI NOEM, OFFIC MANAGEMENT AND BUDGET, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, OFFICE OF TH UNITED STATES TRADE REPRESENTATIVE, JOHN L. RATCLIFFE, BROOKE L. ROLLINS, MARCO RUBIO, SECURITIES AND EXCHANGE COMMISSION, SMALL BUSINESS ADMINISTRATION, COKE MORGAN STE SCOTT TURNER, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF EDUCATION, U.S. DEPARTMEN HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF JUSTICE, U.S. DEPARTMENT OF VETERANS AF UNITED STATES OF AMERICA, UNITED STATES PATENT AND TRADEMARK OFFICE, MARK T. UYEDA, VOUGHT, CHRIS WRIGHT, LEE M. ZELDIN. (Lawson, Richard) (Entered: 06/06/2025) |
| 06/2025 | 115 | MOTION to Amend/Correct 111 Order on Motion to Dismiss,, Order on Motion for Summary Judgment,, Order on Mo Preliminary Injunction,, Set/Reset Deadlines, by WILMER CUTLER PICKERING HALE AND DORR LLP. (Attachm Declaration of Joseph J. DeMott, # 2 Text of Proposed Order)(Murphy, Erin) (Entered: 06/06/2025) |
| 11/2025 | | MINUTE ORDER. The Court is aware of defendants' 114 Unopposed Motion to Clarify and WilmerHale's 115 Motion the Judgment. It is hereby ORDERED that no later than June 17, 2025, defendants shall respond to WilmerHale's 115 M Amend the Judgment. WilmerHale may file a reply in support of that motion no later than June 20, 2025. SO ORDERE by Judge Richard J. Leon on 6/11/2025. (lcrjl1) (Entered: 06/11/2025) |
| 17/2025 | 116 | RESPONSE re 115 MOTION to Amend/Correct 111 Order on Motion to Dismiss,, Order on Motion for Summary Judg Order on Motion for Preliminary Injunction,, Set/Reset Deadlines, filed by SCOTT BESSENT, PAMELA J. BONDI, D J. BURGUM, CENTRAL INTELLIGENCE AGENCY, LORI CHAVEZ−DEREMER, DOUG COLLINS, DEPARTM AGRICULTURE, DEPARTMENT OF COMMERCE, DEPARTMENT OF ENERGY, DEPARTMENT OF HOMELA SECURITY, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, DEPARTMENT OF LABOR, DEPA OF STATE, DEPARTMENT OF THE INTERIOR, DEPARTMENT OF THE TREASURY, DEPARTMENT OF TRANSPORTATION, SEAN DUFFY, ENVIRONMENTAL PROTECTION AGENCY, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL TRADE COMMISSION ANDREW N. FERGUSON, TULSI GABBARD, JAMIESON GREER, PETER B. HEGSETH, ROBERT F. KENNED KELLY LOEFFLER, ANDREA R. LUCAS, HOWARD W. LUTNICK, LINDA MCMAHON, KRISTI NOEM, OFFIC MANAGEMENT AND BUDGET, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, OFFICE OF TH UNITED STATES TRADE REPRESENTATIVE, JOHN L. RATCLIFFE, BROOKE L. ROLLINS, MARCO RUBIO, SECURITIES AND EXCHANGE COMMISSION, SMALL BUSINESS ADMINISTRATION, COKE MORGAN STE SCOTT TURNER, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF EDUCATION, U.S. DEPARTMEN HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF JUSTICE, U.S. DEPARTMENT OF VETERANS AF UNITED STATES OF AMERICA, UNITED STATES PATENT AND TRADEMARK OFFICE, MARK T. UYEDA, VOUGHT, CHRIS WRIGHT, LEE M. ZELDIN. (Lawson, Richard) (Entered: 06/17/2025) |
| 20/2025 | 117 | REPLY to opposition to motion re 115 Motion to Amend/Correct, filed by WILMER CUTLER PICKERING HALE A LLP. (Murphy, Erin) (Entered: 06/20/2025) |
| 20/2025 | 118 | **REQUEST FOR LEAVE TO FILE REVIEW.** The attached document requires leave to file: ANDREW DELANEY' to INTERVENE. Reason(s): Case is closed.Filer is not a party to the case. (mg) (Entered: 06/23/2025) |
| 20/2025 | 119 | **REQUEST FOR LEAVE TO FILE REVIEW.** The attached document requires leave to file: ANDREW DELANEY' to VACATE. Reason(s): Case is closed.Filer is not a party to the case. (mg) (Entered: 06/23/2025) |
| 23/2025 | 122 | **REQUEST FOR LEAVE TO FILE REVIEW.** The attached document requires leave to file: ANDREW DELANEY' for Leave to File. Reason(s): Case is closed.Filer is not a party to the case. (mg) (Entered: 06/26/2025) |
| 26/2025 | 120 | MEMORANDUM ORDER granting defendants' 114 Motion to Clarify and granting WilmerHale's 115 Motion to Ame Judgment. Signed by Judge Richard J. Leon on 6/26/2025. (lcrjl1) (Entered: 06/26/2025) |
| 26/2025 | 121 | AMENDED ORDER amending 111 Order. Consistent with the attached, defendants shall file a status report by July 3, Signed by Judge Richard J. Leon on 6/26/2025. (Attachments: # 1 Appendix A) (lcrjl1) (Entered: 06/26/2025) |

| | | |
|---|---|---|
| 27/2025 | | MINUTE ORDER **re 122 Request for Leave to File Review, 119 Request for Leave to File Review, 118 Request fo File Review.** Leave to file is denied. The filer is not a party to this case and this case is closed. SO ORDERED. Signed Richard J. Leon on 6/27/2025. (lcrjl1) (Entered: 06/27/2025) |
| 30/2025 | 124 | **REQUEST FOR LEAVE TO FILE REVIEW.** The attached document requires leave to file: ANDREW DELANEY' for Leave to File. Reason(s): Case is closed.Filer is not a party to the case. (mg) (Entered: 07/09/2025) |
| 03/2025 | 123 | STATUS REPORT by SCOTT BESSENT, PAMELA J. BONDI, DOUGLAS J. BURGUM, CENTRAL INTELLIGEN AGENCY, LORI CHAVEZ−DEREMER, DOUG COLLINS, DEPARTMENT OF AGRICULTURE, DEPARTMENT COMMERCE, DEPARTMENT OF ENERGY, DEPARTMENT OF HOMELAND SECURITY, DEPARTMENT OF I AND URBAN DEVELOPMENT, DEPARTMENT OF LABOR, DEPARTMENT OF STATE, DEPARTMENT OF TI INTERIOR, DEPARTMENT OF THE TREASURY, DEPARTMENT OF TRANSPORTATION, SEAN DUFFY, ENVIRONMENTAL PROTECTION AGENCY, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, EXECU OFFICE OF THE PRESIDENT, FEDERAL TRADE COMMISSION, ANDREW N. FERGUSON, TULSI GABBARD JAMIESON GREER, PETER B. HEGSETH, ROBERT F. KENNEDY, JR, KELLY LOEFFLER, ANDREA R. LUCA HOWARD W. LUTNICK, LINDA MCMAHON, KRISTI NOEM, OFFICE OF MANAGEMENT AND BUDGET, OF THE DIRECTOR OF NATIONAL INTELLIGENCE, OFFICE OF THE UNITED STATES TRADE REPRESENTAT L. RATCLIFFE, BROOKE L. ROLLINS, MARCO RUBIO, SECURITIES AND EXCHANGE COMMISSION, SMA BUSINESS ADMINISTRATION, COKE MORGAN STEWART, SCOTT TURNER, U.S. DEPARTMENT OF DEFE DEPARTMENT OF EDUCATION, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTM JUSTICE, U.S. DEPARTMENT OF VETERANS AFFAIRS, UNITED STATES OF AMERICA, UNITED STATES P AND TRADEMARK OFFICE, MARK T. UYEDA, RUSSELL VOUGHT, CHRIS WRIGHT, LEE M. ZELDIN. (Atta 1 Exhibit Notice)(Lawson, Richard) (Entered: 07/03/2025) |
| 15/2025 | | MINUTE ORDER **re 124 Request for Leave to File Review.** Leave to file is denied. The filer is not a party to this cas case is closed. SO ORDERED. Signed by Judge Richard J. Leon on 7/15/2025. (lcrjl1) (Entered: 07/15/2025) |
| 25/2025 | 125 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 121 Order, Set Deadlines, 120 Order on Motion to Clarify, Ord Motion to Amend/Correct, 111 Order on Motion to Dismiss,, Order on Motion for Summary Judgment,, Order on Motio Preliminary Injunction,, Set/Reset Deadlines, 110 Memorandum & Opinion by RUSSELL VOUGHT, DOUG COLLIN DEPARTMENT OF THE INTERIOR, OFFICE OF MANAGEMENT AND BUDGET, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, DEPARTMENT AGRICULTURE, SCOTT TURNER, UNITED STATES OF AMERICA, OFFICE OF THE UNITED STATES TRAD REPRESENTATIVE, ENVIRONMENTAL PROTECTION AGENCY, LINDA MCMAHON, JOHN L. RATCLIFFE, DEPARTMENT OF HOMELAND SECURITY, SEAN DUFFY, PETER B. HEGSETH, ANDREW N. FERGUSON, C WRIGHT, LORI CHAVEZ−DEREMER, DEPARTMENT OF STATE, DEPARTMENT OF LABOR, ANDREA R. LU KELLY LOEFFLER, SMALL BUSINESS ADMINISTRATION, DEPARTMENT OF COMMERCE, U.S. DEPARTM JUSTICE, EXECUTIVE OFFICE OF THE PRESIDENT, ROBERT F. KENNEDY, JR, UNITED STATES PATENT A TRADEMARK OFFICE, PAMELA J. BONDI, SCOTT BESSENT, DEPARTMENT OF THE TREASURY, MARK T FEDERAL TRADE COMMISSION, DEPARTMENT OF TRANSPORTATION, BROOKE L. ROLLINS, JAMIESON SECURITIES AND EXCHANGE COMMISSION, DEPARTMENT OF ENERGY, U.S. DEPARTMENT OF VETER AFFAIRS, LEE M. ZELDIN, U.S. DEPARTMENT OF DEFENSE, COKE MORGAN STEWART, CENTRAL INTEI AGENCY, DOUGLAS J. BURGUM, MARCO RUBIO, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGEI DEPARTMENT OF HEALTH AND HUMAN SERVICES, TULSI GABBARD, KRISTI NOEM, HOWARD W. LUT U.S. DEPARTMENT OF EDUCATION. Fee Status: No Fee Paid. Parties have been notified. (Lawson, Richard) (Ente 07/25/2025) |

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

333 Constitution Avenue, NW
Washington, DC 20001-2866
Phone: 202-216-7000 | Facsimile: 202-219-8530

Plaintiff: **WILMER CUTLER PICKERING HALE**

vs. Civil Action No. **1:25-cv-917**

Defendant: **EXECUTIVE OFFICE OF THE PRE**

## CIVIL NOTICE OF APPEAL

Notice is hereby given this 25 day of July 2025, that

Defendants

hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the judgment of this court entered on the 27 day of May, 2025, in favor of Plaintiff

against said Defendants

Attorney/Pro Se Party Signature: [signature]

Name: RICHARD LAWSON

Address: US DEPARTMENT OF JUSTICE

PO BOX 878

WASHINGTON DC 20044

Telephone: (202) 445-8042

(Pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure a notice of appeal in a civil action must be filed within 30 days after the date of entry of judgment or 60 days if the United States or officer or agency is a party)

USCA Form 13
Rev. June 2017

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILMER CUTLER PICKERING HALE AND DORR LLP,<br><br>Plaintiff,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>Defendants. | Civil Case No. 25-917 (RJL) |

**MEMORANDUM OPINION**
May 27, 2025 [Dkt. #15; Dkt. #16]

The cornerstone of the American system of justice is an independent judiciary and an independent bar willing to tackle unpopular cases, however daunting. The Founding Fathers knew this! Accordingly, they took pains to enshrine in the Constitution certain rights that would serve as the foundation for that independence. Little wonder that in the nearly 250 years since the Constitution was adopted no Executive Order has been issued challenging these fundamental rights. Now, however, several Executive Orders have been issued directly challenging these rights and that independence. One of these Orders is the subject of this case. For the reasons set forth below, I have concluded that this Order must be struck down in its entirety as unconstitutional. Indeed, to rule otherwise would be unfaithful to the judgment and vision of the Founding Fathers!

# BACKGROUND

## I. Factual Background

### A. *WilmerHale*

Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale" or "the firm") is a law firm with over 2,000 employees, approximately 1,200 of whom are lawyers. Compl. [Dkt. #1] ¶ 77. The firm has 12 offices around the world. *Id.* Its attorneys work in a variety of different sectors, including criminal defense, patent prosecution, securities law, and regulatory and government affairs, to name just a few. *See id.* ¶ 79.

The firm takes on "a wide array of clients, ranging from large corporations, colleges and universities, and Native American tribes to nimble start-ups and individuals accused of criminal and civil wrongs." *Id.* Its "litigation practice has long advocated for clients and causes across the ideological spectrum." *Id.* ¶ 81. Keeping with that practice, WilmerHale has represented clients in litigation against the federal Government during both Republican and Democratic administrations. *Id.* ¶ 82.[1]

Certain of WilmerHale's cases and clients have drawn the ire of President Trump. The Complaint highlights a few, including the firm's representation of: inspectors general alleging that President Trump improperly fired them, *id.* ¶ 83; the House of Representatives Committee on Ways and Means in litigation resulting in President Trump's disclosure of his personal tax returns, *id.* ¶ 84; the Joe Biden and Kamala Harris campaigns in election

[1] WilmerHale "sued the Clinton Administration at least 28 times, the Bush Administration at least 68 times, the Obama Administration at least 125 times, the first Trump Administration at least 45 times, and the Biden administration at least 97 times." *See* Pl.'s Statement of Undisputed Material Facts ("Pl.'s SUMF") [Dkt. #16-2] ¶ 42. Throughout this Memorandum Opinion, the cited paragraphs of WilmerHale's statement of material facts are undisputed unless otherwise noted.

litigation, *id.* ¶ 85; and the Democratic National Committee and state-level Democratic Party organizations in lawsuits brought by the Donald Trump campaign challenging the results of the 2020 presidential election, *id.* ¶ 86.

The firm's affiliation with Robert S. Mueller III ("Mueller") has also attracted the President's displeasure. After a long and distinguished career in the Government, Mueller joined WilmerHale as a partner in 1993, and he remained there until he re-joined the Department of Justice ("DOJ") in 1995, where he ultimately served as the Director of the Federal Bureau of Investigation from 2001 to 2013. *Id.* ¶ 89. Thereafter, Mueller again returned to the firm for a few years before then-Acting Attorney General Rod Rosenstein appointed him to serve as Special Counsel charged with investigating allegations of Russian interference in the 2016 presidential election. *Id.* The Complaint alleges that, because of his role as Special Counsel, "Mueller personally became a target of President's Trump ire." *Id.* ¶ 91. The Complaint is replete with President Trump's statements on the investigation and Mueller's involvement. *See id.* ¶¶ 90–91 (collecting quotes from President Trump: "thugs"; "hit squad"; "National Disgrace!"; "hoax"; "witch hunt"; "very sick and dangerous people"). After the Special Counsel's Office issued its Report on the Investigation into Russian Interference in the 2016 President Election, Mueller rejoined WilmerHale. *Id.* ¶¶ 92–93. He has since retired from the firm. *Id.* ¶ 93.

**B. *Executive Orders***

During the 2024 presidential campaign, then-former President Trump "threatened to 'go after' his political opponents and warned that 'WHEN I WIN, those people that CHEATED will be prosecuted to the fullest extent of the Law,'" adding "'[p]lease beware

that this legal exposure extends to Lawyers.'" *Id.* ¶ 94 (footnotes omitted). After he won the 2024 election, President Trump renewed these warnings, stating that "[w]e have a lot of law firms that we're going to be going after, because they were very dishonest people." *Id.* (footnote omitted).

President Trump followed through on these threats. On February 25, 2025, he issued a memorandum to the heads of intelligence agencies instructing them "to suspend any active security clearances held by Peter Koski and all members, partners, and employees of Covington & Burling LLP who assisted former Special Counsel Jack Smith during his time as Special Counsel[.]" *Id.* ¶ 95. Jack Smith, as Special Counsel, had brought criminal charges against then-former President Trump in two cases. *Id.*

Covington & Burling and Jack Smith were not President Trump's only targets. Next up: Perkins Coie LLP. On March 6, 2025, President Trump issued an Executive Order entitled "Addressing Risks from Perkins Coie LLP," which instructed agencies "to terminate contracts with Perkins Coie, to require all federal contractors to disclose any business with Perkins Coie and then review all contracts with Perkins Coie's clients, to limit official access of Perkins Coie to federal Government buildings, and to limit Government officials from engaging in their official capacity with Perkins Coie employees." *Id.* ¶ 96; *see also* Exec. Order No. 14230, 90 Fed. Reg. 11781 (Mar. 11, 2025) ("Perkins Coie Order") (cited in Compl. ¶ 2 n.2).

The "Purpose" section of the Perkins Coie Order outlines its motivation. *See* Perkins Coie Order § 1. It accuses Perkins Coie of "dishonest and dangerous activity," including its representation of "failed Presidential candidate Hillary Clinton" in 2016 and

its involvement in election law litigation. *See id.*; Compl. ¶¶ 96–98. Perkins Coie sued to block enforcement of the Perkins Coie Order. *See generally* Compl., *Perkins Coie LLP v. DOJ, et al.*, No. 1:25-cv-716 (D.D.C. filed Mar. 11, 2025), ECF No. 1.

Next came a March 14, 2025 Executive Order targeting Paul, Weiss, Rifkind, Wharton & Garrison LLP. Compl. ¶ 100; Exec. Order No. 14237, 90 Fed. Reg. 13039 (Mar. 20, 2025) ("Paul Weiss Order") (cited in Compl. ¶ 2 n.2). The Paul Weiss Order substantially mirrors the Perkins Coie Order. *Compare* Perkins Coie Order *with* Paul Weiss Order. The "Background" section of the Paul Weiss Order explains that it is, in part, a response to Paul Weiss partner Mark Pomerantz leaving the firm "to join the Manhattan District Attorney's office solely to manufacture a prosecution against [President Trump]." Paul Weiss Order § 1; Compl. ¶ 100.

A few days later, President Trump announced that he had agreed to withdraw the Paul Weiss Order following a meeting with Paul Weiss's Chairman, Brad Karp. Compl. ¶ 102. The President then rescinded the Paul Weiss Order in toto. *Id.* ¶ 103; Exec. Order No. 14244, 90 Fed. Reg. 13685 (Mar. 26, 2025) ("Paul Weiss Recission Order") (cited in Compl. ¶ 103 n.29). The Paul Weiss Recission Order states that the firm had, among other conditions, "acknowledged the wrongdoing of its former partner Mark Pomerantz" and agreed to "dedicate[] the equivalent of $40 million in pro bono legal services during [President Trump's] term in office to support causes including assisting our Nation's veterans, fairness in the justice system, and combating anti-Semitism; and other similar initiatives." Paul Weiss Recission Order § 1.

On March 25, 2025, President Trump issued another similar Executive Order, this time targeting Jenner & Block LLP. *See* Compl. ¶ 106; Exec. Order No. 14246, 90 Fed. Reg. 13997 (Mar. 28, 2025) ("Jenner & Block Order") (cited in Compl. ¶ 2 n.2). Like Perkins Coie, Jenner & Block sued to enjoin enforcement of the Executive Order. *See generally* Compl., *Jenner & Block LLP v. DOJ, et al.*, No. 1:25-cv-916 (D.D.C. Mar. 28, 2025), ECF No. 1.

**C. *The WilmerHale Order***

On March 27, 2025, only two days later after issuing the Jenner & Block Order, President Trump issued the Executive Order at issue in this case—the WilmerHale Order. Compl. ¶ 107; Exec. Order No. 14250, 90 Fed. Reg. 14549 (Apr. 3, 2025) ("WilmerHale Order" or "the Order"). The Order is entitled "Addressing Risks from WilmerHale" and largely tracks the Executive Orders issued against other large law firms. *See generally* WilmerHale Order. It contains six sections and is accompanied by a "Fact Sheet." Compl. Ex. B, Fact Sheet: President Donald J. Trump Addresses Risks from WilmerHale, The White House (Mar. 27, 2025) ("WilmerHale Fact Sheet" or "Fact Sheet") [Dkt. #1-2].

*Section 1 – Background.* The Background section of the Order outlines the risks supposedly posed by WilmerHale. It states, among other insinuations, that the firm has "abused its pro bono practice to engage in activities that undermine justice and the interests of the United States"; "supports efforts to discriminate on the basis of race"; "backs the obstruction of efforts to prevent illegal aliens from committing horrific crimes and trafficking deadly drugs"; and "furthers the degradation of the quality of American elections." WilmerHale Order § 1.

It further accuses WilmerHale of "employing lawyers who weaponize the prosecutorial power to upend the democratic process and distort justice." *Id.* Here, President Trump cites to WilmerHale "welcoming" Mueller and his colleagues to the firm despite their involvement in "one of the most partisan investigations in American history." *Id.* The Background section culminates in a declaration that this type of "weaponization of the justice system" must not be condoned. *Id.*

*Section 2 – Security Clearance Review*. This section contains two provisions. Section 2(a) instructs the heads of relevant agencies to "immediately take steps consistent with applicable law to suspend any active security clearances held by individuals at WilmerHale, pending a review of whether such clearances are consistent with the national interest." *Id.* § 2(a).[2] Section 2(b) orders the Office of Management and Budget ("OMB") to "identify all Government goods, property, material, and services, including Sensitive Compartmented Information Facilities, provided for the benefit of WilmerHale." *Id.* § 2(b). The heads of relevant agencies are then to cease providing such materials and services to the firm, "to the extent permitted by law." *Id.*

*Section 3 – Contracting*. Section 3 has multiple parts. First, "Government contracting agencies shall, to the extent permissible by law, require Government contractors to disclose any business they do with WilmerHale and whether that business is related to the subject of the Government contract." *Id.* § 3(a). Second, agency heads "shall review all contracts with WilmerHale or with entities that disclose doing business with

[2] Multiple WilmerHale attorneys hold security clearances. Compl. ¶ 139; Suppl. Decl. of Bruce M. Berman in Supp. of Pl.'s MSJ ("Suppl. Berman Decl.") [Dkt. #16-3] ¶ 28.

WilmerHale" and then: (1) "take appropriate steps to terminate any contract, to the maximum extent permitted by applicable law . . . for which WilmerHale has been hired to perform any service"; (2) "otherwise align their agency funding decisions with the interests of the citizens of the United States [and] with the goals and priorities of [President Trump's] Administration as expressed in executive actions"; and (3) within 30 days of the Order, submit to OMB "an assessment of contracts with WilmerHale or with entities that do business with WilmerHale effective as of the date of this order and any actions taken with respect to those contracts in accordance with this order." *Id.* § 3(b).

*Section 4 – Racial Discrimination*. Section 4 states that "[n]othing in this order shall be construed to limit the action authorized by section 4 of [the Perkins Coie Order]." *Id.* § 4. The relevant section of the Perkins Coie Order, in turn, instructs the Chair of the Equal Employment Opportunity Commission ("EEOC") to "review the practices of representative large, influential, or industry leading law firms for consistency with Title VII of the Civil Rights Act of 1964." Perkins Coie Order § 4(a). The provision also instructs the Attorney General to investigate large law firms "who do business with Federal entities for compliance with race-based and sex-based non-discrimination laws." *Id.* § 4(b).

*Section 5 – Personnel*. Section 5 contains two provisions. First, it instructs agency heads to provide guidance on "limiting official access from Federal Government buildings to employees of WilmerHale" and "limiting Government employees acting in their official capacity from engaging with WilmerHale employees," with the cited goal of "ensur[ing] consistency with the national security and other interests of the United States."

WilmerHale Order § 5(a). Second, it states that agency officials shall refrain from hiring WilmerHale employees, absent a waiver from the relevant agency head. *Id.* § 5(b).

*Section 6 – General Provisions*. This section contains limiting provisions. It states that nothing in the WilmerHale Order shall be construed to impair (1) "the authority granted by law to an executive department or agency, or the head thereof"; or (2) OMB's functions "relating to budgetary, administrative, or legislative proposals." *Id.* § 6(a). It also mandates that the Order be implemented consistent with applicable law. *Id.* § 6(b).

*Fact Sheet*. The Fact Sheet accompanies the Order. It largely reiterates the allegations in the Background section of the Order, but further characterizes WilmerHale as a "rogue law firm." *See* WilmerHale Fact Sheet.

## II. Procedural Background

One day after President Trump issued the Order, WilmerHale filed suit in this Court. *See generally* Compl. The Complaint's 11 counts allege that the Order violates the First, Fifth, and Sixth Amendments, the separation of powers, and the Spending Clause. *See id.* ¶¶ 129–226 (Counts I–XI). The Complaint seeks declaratory and injunctive relief.

Along with the Complaint, WilmerHale filed a motion for a temporary restraining order ("TRO") and a preliminary injunction ("PI"). *See* Pl.'s Mot. for TRO and PI [Dkt. #3]. This Court held a hearing on the TRO motion that same day, after which the Court granted a TRO enjoining enforcement of §§ 3 and 5 of the Order. *See* Min. Entry (Mar. 28, 2025); Mem. Order ("TRO Order") [Dkt. #10].

The parties subsequently submitted a proposed briefing schedule for dispositive motions and consented to the Court extending the TRO until final judgment. Joint Status

Report [Dkt. #13]. The Court adopted the briefing schedule, set oral argument for April 23, 2025, and extended the TRO pending resolution of the case. Min. Order (Apr. 1, 2025).

Defendants filed a motion to dismiss, and WilmerHale filed a motion for summary judgment. *See* Defs.' Mot. to Dismiss [Dkt. #15]; Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' MTD") [Dkt. #15-1]; Pl.'s Mot. for Summ. J. [Dkt. #16]; Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s MSJ") [Dkt. #16-1]. The issues therein evidently piqued the interests of many third parties, as the Court has received over 30 amicus briefs, which are filed on the docket. With the parties' briefs and amici's insights in hand, the Court held oral argument on April 23, 2025. The matter is now ripe for decision. *See* Pl.'s Opp'n to Defs.' MTD [Dkt. #104]; Defs.' Opp'n to Pl.'s MSJ [Dkt. #103].

## LEGAL STANDARDS

Defendants move to dismiss the Complaint under Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6).

Rule 8(a) requires that a claim for relief include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(1)(2). The Court may dismiss the Complaint under this Rule if it is "so excessively long as to be unmanageable, or so poorly conceived and drafted that it is difficult to decipher a coherent, viable cause of action." *T.M. v. District of Columbia*, 961 F. Supp. 2d 169, 175 (D.D.C. 2013).

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the Complaint. *See* Fed. R. Civ. P. 12(b)(6); *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Complaint must include "factual content" sufficient to allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A Rule 12(b)(1) motion, on the other hand, tests the Court's subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by the Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  WilmerHale bears the burden of demonstrating the Court's subject-matter jurisdiction over the claims at issue.  *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

In deciding a motion under Rule 12(b), the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  If "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (quoting Fed. R. Civ. P. 12(b)).

WilmerHale moves for summary judgment on each of its claims.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court "must assume the truth of all statements proffered by the non-movant

except for conclusory allegations lacking any factual basis in the record." *Dist. Intown Props. Ltd. P'ship v. District of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999). "'The mere existence of *some* alleged factual dispute between the parties' will not defeat summary judgment; 'the requirement is that there be no *genuine* issue of *material* fact.'" *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law . . . . An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 F.3d at 248).

## ANALYSIS

### I. Framing

Before addressing the parties' arguments, the Court must resolve a threshold dispute: whether to analyze the Order as a whole or on a section-by-section basis. WilmerHale urges the Court to take the former approach, while defendants press for the latter.

The Complaint asserts 11 claims, each of which attacks the entire Order as unconstitutional. *See generally* Compl. Defendants, in moving to dismiss and opposing summary judgment, organize their arguments by section of the Order. *See* Defs.' MTD at 4 ("To provide some structure regarding this overbroad shotgun Complaint, Defendants have organized this motion to dismiss by addressing what appear to be Plaintiff's challenges to each section of the Executive Order.").

It is beyond dispute, however, that "[t]he plaintiff is 'the master of the complaint' and therefore controls much about [the] suit." *Royal Canin USA, Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)). The plaintiff "gets to determine which substantive claims to bring against which defendants." *Id.* The defendant may then assert a "defense to a claim." Fed. R. Civ. P. 12(b).

Defendants here resist WilmerHale's framing of the Complaint because it "complicates Defendants' task in moving for dismissal." Defs.' MTD at 4. Defendants believe a section-by-section approach favors their defense because each section of the Order is an "act[] of executive discretion." Tr. of Apr. 23, 2025 Hearing ("Dispositive Mots. Hearing Tr.") [Dkt. #106] at 18:19–19:22. Unfortunately for defendants, the Court declines to follow their approach. WilmerHale, the master of its Complaint, chose to bring claims challenging the Order as a whole. Defendants attempt to infer which of WilmerHale's claims apply to which sections of the Order, *see* Defs.' MTD at 4, but this approach would require the Court to reconstrue—and likely misconstrue—the Complaint. Defendants themselves concede that in following this approach, their motion to dismiss can only address "what *appear* to be [WilmerHale]'s challenges to each section of the Executive Order." *See id.* (emphasis added).

The language of the Order and the record before the Court also support analyzing the Order as a whole. First, the Background section informs and is inextricably interwoven with each operative section of the Order. *See* WilmerHale Order § 1. It provides the President's justification for the Order and serves as a guide to federal agencies in

implementing the operative sections.[3] Defendants admit that "portions" of § 1 "lend support to each section," albeit not equally. Dispositive Mots. Hearing Tr. 29:23–30:3. The Order's operative provisions can thus only be understood in the context of § 1.[4]

The President's treatment of the Paul Weiss Order underscores the unified nature of the Order. The Paul Weiss Order largely tracks the WilmerHale Order, with a Background section and similar operative provisions. *See generally* Paul Weiss Order. When Paul Weiss struck a deal with the President, he rescinded the Paul Weiss Order *in full*, citing the firm's "remarkable change of course." Compl. ¶¶ 102–03; Paul Weiss Rescission Order. The President's treatment of the Paul Weiss Order shows that he "intended" these Executive Orders "to stand or fall as a whole." *See Minn. v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 173 (1999) (finding that an Executive Order was designed "to stand or fall as a whole" because it "embodied a single, coherent policy").

Given the structure of the Order and WilmerHale's decision to challenge it as a whole, I will analyze WilmerHale's claims as it has pleaded them in the Complaint.

---

[3] For example, § 1 explains that law firms like WilmerHale "should not have access to our Nation's secrets, nor should such conduct be subsidized by Federal taxpayer funds or contracts." WilmerHale Order § 1. Sections 2 and 3, in turn, instruct agencies and federal officials to suspend WilmerHale employees' security clearances and terminate any federal contracts for which WilmerHale provides services.

[4] The Order is akin to a gumbo. Sections 2 through 5 are the meaty ingredients—*e.g.*, the Andouille, the okra, the tomatoes, the crab, the oysters. But it is the roux—here, § 1—which holds everything together. A gumbo is served and eaten with all the ingredients together, and so too must the sections of the Order be addressed together. As explained in this Memorandum Opinion, this gumbo gives the Court heartburn.

## II. Justiciability

Throughout their motion to dismiss, defendants raise multiple justiciability issues, including standing, ripeness, and the political question doctrine. I find that none bar this Court's review of WilmerHale's claims. How so?

### A. *Standing*

Defendants argue that WilmerHale and its clients do not have standing to challenge the Order. *See* Defs.' MTD at 17–19, 23, 29. "The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance." *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004). "This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Id.* at 128–29 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). One such prudential limitation implicated in this case is WilmerHale's ability to bring claims on behalf of its third-party clients. *See LaRoque v. Holder*, 650 F.3d 777, 781–82 (D.C. Cir. 2011) (explaining the "prudential limitation" that a plaintiff "generally must assert his own legal rights and interest, and cannot rest his claim to relief on the legal rights or interests of third parties" (internal quotation marks omitted)); Compl. ¶¶ 158, 167, 207–08, 212, 220 (asserting third-party standing as to WilmerHale's freedom of association, right to petition, right to counsel, and spending power claims).

The Court may look to materials outside the Complaint in assessing standing, including sworn declarations. *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63, 70 (D.D.C. 2022); *Garnett v. Zeilinger*, 323 F. Supp. 3d 58, 65 (D.D.C. 2018). WilmerHale has the burden of establishing standing, and that burden "grows heavier at each stage of the litigation." *Osborn v. Visa Inc.*, 797 F.3d 1057, 1063

(D.C. Cir. 2015). Unfortunately for defendants, WilmerHale has met its burden to show standing on its own behalf and on behalf of its clients.

### 1. <u>Article III Standing</u>

To satisfy the "irreducible constitutional minimum of standing" under Article III, WilmerHale must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [defendants], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). As an organization, WilmerHale "can assert standing on its own behalf, on behalf of its members or both." *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011). WilmerHale asserts this organizational standing, which requires the firm, like an individual, to satisfy the standing elements. *Id.*

There can be no serious dispute over whether WilmerHale has standing to challenge the Order. "The Supreme Court has stated that 'there is ordinarily little question' that a regulated individual or entity has standing to challenge an allegedly illegal statute or rule under which it is regulated." *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015) (Kavanaugh, J.) (quoting *Lujan*, 504 U.S. at 561–62). While neither a statute nor a rule, the Order makes clear that WilmerHale is its target. It is entitled "Addressing Risks from WilmerHale" and includes multiple directives targeting the firm, its employees, and its clients. *See generally* WilmerHale Order.

As to the first standing factor, WilmerHale has an injury in fact. WilmerHale plausibly alleges violations of its First Amendment rights. *See infra* Analysis III.A. The Order points to WilmerHale's "pro bono practices," "partisan representations," and

involvement in election and immigration litigation as among its motivations. WilmerHale Order § 1; *see* Compl. ¶¶ 131–35. The Court assumes that this advocacy on behalf of its clients is protected speech and petitioning activity. *See Tanner-Brown v. Haaland*, 105 F.4th 437, 444 (D.C. Cir. 2024). In response to this protected conduct, the Order suspends WilmerHale employees' security clearances and seeks to restrict these employees' access to federal buildings, engagement with federal employees, and use of Government goods and services, all of which are necessary for the firm to represent its clients. *See* WilmerHale Order §§ 1–3, 5; Compl. ¶¶ 137–42. Thus, WilmerHale has alleged cognizable injuries to its First Amendment rights. *See* Compl. ¶ 120; *cf. Moody v. NetChoice, LLC*, 603 U.S. 707, 731 (2024); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (stating, in the context of injunctive relief, that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))).

WilmerHale has also alleged that the Order causes the firm economic injury. *See* Compl. ¶¶ 124–28; Decl. of Bruce M. Berman in Supp. of Pl.'s Mot. for TRO and PI ("Berman Decl.") [Dkt. #3-2] ¶¶ 76, 83; Suppl. Decl. of Bruce M. Berman in Supp. of Pl.'s MSJ ("Suppl. Berman Decl.") [Dkt. #16-3] ¶¶ 6–11. WilmerHale alleges that the Order places "serious constraints . . . on WilmerHale's employees' ability to do their jobs," thus creating "significant uncertainty for WilmerHale's existing clients." Compl. ¶¶ 124–25. When WilmerHale filed the Complaint, it alleged that it would "inevitably receive more inquiries from clients who are contemplating terminating their engagements with the Firm due to the Order." *Id.* ¶ 125. Indeed, that prediction has already materialized. At least one

new client has terminated its retention of the firm due to the Order, and "several existing clients have paused WilmerHale's engagements in government-facing matters—or declined to engage WilmerHale for new work—citing the Order." Suppl. Berman Decl. ¶¶ 6, 8–10.

Moreover, the Order creates uncertainty for the firm's existing federal contractor "clients about whether a continued representation will come at the cost of lucrative government contracts." Compl. ¶ 126; *see* WilmerHale Order § 3. As of 2024, at least 21 of the firm's 25 largest clients in 2024 had contracts with federal agencies, and those clients accounted for more than 30% of the firm's total revenue that year. Berman Decl. ¶ 30. The Order pressures these clients to abandon WilmerHale or face loss of their contracts. Compl. ¶¶ 126–27, 162. The nature of these injuries suffices to satisfy the first prong of Article III standing. *See Lepelletier v. FDIC*, 164 F.3d 37, 42 (D.C. Cir. 1999) ("[T]he denial of a business opportunity satisfies the injury requirement.").

Defendants argue that WilmerHale's alleged injuries are speculative. Defs.' MTD at 18–19. Focusing only on § 3 of the Order, they assert that since the firm has not alleged that it is a federal contractor or that it intends to bid for a contract, its injury is conjecture. *Id.* Please—that dog won't hunt! The firm alleges that § 3 "discourages clients from retaining or maintaining WilmerHale as their counsel" by threatening to cancel the contracts of any entity which associates with WilmerHale. Compl. ¶ 126–27. This, in turn, causes "extensive, lasting damage to WilmerHale's current and future business prospects." *Id.* ¶ 127. Thus, the economic injury that WilmerHale alleges does *not* depend on WilmerHale itself serving as a federal contractor.

This case is far afield from *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), which defendants invoke to argue that WilmerHale's risk of harm is too speculative because it relies upon the decisions of third parties not before the Court. *See* Defs.' MTD at 17–19. "*Clapper* does not require certainty; instead, it understandably holds a plaintiff's risk of harm cannot be based upon a 'highly attenuated chain of possibilities.'" *New York Republican State Comm. v. SEC*, 927 F.3d 499, 504 (D.C. Cir. 2019) (quoting *Clapper*, 568 U.S. at 410). "Unlike in *Clapper*, where the chain comprised several links," the four corners of the Order are causing damage to WilmerHale's business relationships. *See id.* at 504–05; Compl. ¶ 126. The causal chain contains at most two links, and it is certainly not highly attenuated!

As to the second and third factors, traceability and redressability pose no issue for WilmerHale. These two elements typically overlap in cases against Government actors because "if a government action causes an injury, enjoining the action usually will redress that injury." *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 n.1 (D.C. Cir. 2017). Such is the case here. WilmerHale has alleged the Order is the sole cause of the firm's constitutional and economic injuries. *See* Compl. ¶¶ 120–27. While defendants dispute the causal relationship between the Order and any client's decision to terminate its relationship with WilmerHale, this argument is absurd! Defs.' MTD at 18–19, 23. The Order imposes various restrictions on the firm's ability to serve its clients—"the lifeblood of any law firm"—and therefore "threatens the very viability of [its] business model." Compl. ¶¶ 124, 127. It also threatens to terminate federal contracts for any entity which does business with WilmerHale. *Id.* ¶ 126. Indeed, several of WilmerHale's clients have

explicitly cited the Order as the reason for either curtailing or terminating their relationships with the firm. Suppl. Berman Decl. ¶¶ 6–10.[5] WilmerHale has thus established Article III standing in its own right.

**2. Third-Party Standing**

WilmerHale also brings its right to petition, freedom of association, right to counsel, and Spending Clause claims on behalf of its clients. *See* Compl. ¶¶ 158, 167, 209, 212, 220–24. "[A] party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski*, 543 U.S. at 129 (quoting *Warth*, 422 U.S. at 499). This rule, however, is not "absolute." *Id.* at 129–30. There are "circumstances where it is necessary to grant a third party standing to assert the rights of another." *Id.*

In assessing third-party standing, the Court weighs three "prudential considerations": "(1) '[t]he litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute,' (2) 'the litigant must have a close relation to the third party,' and (3) 'there must exist some hindrance to the third party's ability to protect his or her own interests.'" *Lepelletier*, 164 F.3d at 43 (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). To satisfy the third prong—the hindrance requirement—a plaintiff must show that "there is some impediment to the

[5] Defendants also claim that WilmerHale lacks standing to pursue its due process claims because it cannot point to any injury traceable to § 5. *See* Defs.' MTD at 29. Section 5 directs heads of agencies to provide guidance limiting WilmerHale employees' access to federal building and prohibits agencies from hiring WilmerHale employees absent a waiver. WilmerHale Order § 5. WilmerHale has alleged and shown a protected liberty interest, *see infra* Analysis III.C.1, and, as discussed above, WilmerHale has proffered clear allegations of harm.

real party in interest's ability to assert his own legal rights." *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 31 (D.D.C. 2010) (citing *Singleton v. Wulff*, 428 U.S. 106, 118 (1976)).

WilmerHale satisfies all three requirements. As to the first requirement, and as discussed above, WilmerHale's constitutional and economic injuries are sufficient to show injury in fact. As to the second requirement, its attorney-client relationships are "sufficient to confer third-party standing" for "existing client[s]." *See Kowalski*, 543 U.S. at 130. Indeed, the firm has proffered that most of its largest clients in 2024 had contracts with federal agencies. Berman Decl. ¶ 30. WilmerHale has also proffered that it represents clients in "government-facing" matters. *Id.*[6]

The final hurdle is the third "hinderance" requirement. For its First Amendment and Spending Clause claims, WilmerHale has shown that its federal contractor clients are hindered from bringing claims themselves because doing so would require them to disclose their attorney-client relationships, which is the same First Amendment harm that WilmerHale is trying to enjoin. *See* Compl. ¶¶ 161–62. "[T]he First Amendment offers protection when an entity engag[es] in expressive activity, including compiling and curating others' speech." *Moody*, 603 U.S. at 731. That is why the hinderance requirement is relaxed for First Amendment claims. *See Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 957 (1984) (finding it non-dispositive "that there is no showing that [the third-party] charity cannot bring its own lawsuit" because "[a]though such an argument

---

[6] This case is unlike those in which the Supreme Court has rejected attorneys' standing to bring claims on behalf of hypothetical clients, as WilmerHale has alleged the violation of existing clients' rights. *Cf. Kowalski*, 543 U.S. at 130 ("The attorneys before us do not have a 'close relationship' with their alleged 'clients'; indeed, they have no relationship at all.").

might defeat a party's standing outside the First Amendment context, this Court has not found the argument dispositive in determining whether standing exists to challenge a statute that allegedly chills free speech"); *cf. Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) ("Litigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.").

WilmerHale may also bring its right to counsel claims on behalf of its clients. These claims "fall[] within that class of cases where" the Supreme Court has "'allowed standing to litigate the rights of third parties when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights.'" *See Kowalski*, 543 U.S. at 130 (quoting *Warth*, 422 U.S. at 510). As the Supreme Court explained in *U.S. Department of Labor v. Triplett*, when "enforcement of a restriction against the litigant prevents a third party from entering into a relationship with the litigant (typically a contractual relationship), to which relationship the third party has a legal entitlement (typically a constitutional entitlement), third-party standing has been held to exist." 494 U.S. 715, 720 (1990); *see Warth*, 422 U.S. at 510 (finding "standing to litigate the rights of third parties when enforc[ing] the challenged restriction against the litigant would result indirectly in the violation of third parties' rights"). Assuming the merits of WilmerHale's claims, the Order's restrictions against WilmerHale, the litigant, violate its third-party clients' constitutional right to counsel. *See* Compl. ¶¶ 206–17. These clients, according to

WilmerHale, are hindered from bringing claims themselves because the Order prevents the clients from retaining their counsel of choice, WilmerHale. Compl. ¶¶ 207–08, 213–16.

Having met all three prudential requirements, WilmerHale has comfortably established third-party standing to bring claims on behalf of its clients.

**3. Ripeness**

Defendants also challenge the ripeness of WilmerHale's claims.[7] The Court rejects these arguments and finds that WilmerHale's claims are indeed ripe for review.

"The ripeness doctrine requires that the federal courts 'reserve[] judicial power for resolution of concrete and fully crystallized disputes.'" *In re Al-Nashiri*, 47 F.4th 820, 826 (D.C. Cir. 2022) (quoting *Cobell v. Jewell*, 802 F.3d 12, 21 (D.C. Cir. 2015)). In determining ripeness, the Court considers "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* (quoting *Cobell*, 802 F.3d at 21).

*First*, the issues are clearly fit for judicial decision. WilmerHale's claims do not require further factual development for the Court to address the legal issues presented; indeed, the parties informed the Court that they "do not anticipate needing discovery in this case and that no party will request discovery in connection with . . . dispositive motions."

[7] Given that defendants advance their arguments section-by-section, it is not entirely clear how their ripeness arguments map onto WilmerHale's 11 claims for relief. Defendants appear to challenge the ripeness of the firm's attacks on § 2, *see* Defs.' MTD at 14–15, § 3, *see* Defs.' Opp'n to Pl.'s MSJ at 15–16, and § 5, *see* Defs.' MTD at 28–29. The Court will address ripeness as to all claims and as to the entire Order, as it is the Court's obligation to ensure the ripeness of all claims. *See Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (explaining that "the question of ripeness may be considered on a court's own motion").

*See* Joint Status Report [Dkt. #13] ¶ 3. Thus, the Court may adjudicate WilmerHale's claims based on the text of the Order and the factual record currently before the Court.

Defendants argue that the claims are not factually ripe because various sections of the Order instruct agency heads to take some action in the future. For example, § 2 suspends security clearances "pending further review of whether such clearances are consistent with the national interest," and § 5 instructs agency heads to "provide guidance" about limiting access to federal buildings and employees. *See* Defs.' MTD at 14–15, 28–29. Defendants thus urge the Court to wait and see how this guidance comes out before ruling on WilmerHale's claims. Please!

The Court need not wait. WilmerHale's claims turn on the constitutionality of the Order *as issued*—not on any guidance agency heads eventually release to implement the Order. The Complaint alleges, for example, that the Order has a chilling effect on speech and creates significant uncertainty for the firm's clients even before agency officials issue guidance or make factual findings. *See* Compl. ¶¶ 125–28, 142–43. Accordingly, the issues have already "crystallized into a concrete legal dispute" ready for this Court's decision. *See Al-Nashiri*, 47 F.4th at 826.

*Second*, "the hardship to the parties of withholding court consideration" is severe. *See id.* (quoting *Cobell*, 802 F.3d at 21). WilmerHale began feeling the effects of the Order when it was issued—one day before the firm filed its Complaint—and has since been losing clients despite this Court temporarily enjoining the Order. *See* Pl.'s Statement of

Undisputed Material Facts ("Pl.'s SUMF") [Dkt. #16-2] ¶¶ 135, 138,[8] 141; Suppl. Berman Decl. ¶ 6, 8–10; *see also* Compl. ¶¶ 121, 124–27. WilmerHale's clients have been left wondering if their attorneys will be able to, for example, enter federal courthouses for hearings, attend plea negotiations at U.S. Attorneys' offices, or engage with federal employees on regulatory matters. This uncertainty—and the attendant harm—escalates while the parties wait for the Court's decision.

As this Court stated during the TRO hearing, the Order is akin to a sword of Damocles hanging over WilmerHale's head. Tr. of Mar. 28, 2025 Hearing ("TRO Hearing Tr.") [Dkt. #11] at 27:2–28:1. The Court need not wait for the sword to fall before ruling on the case.

### 4. Political Question Doctrine

Defendants argue that WilmerHale's challenges to § 2 of the Order are not judicially reviewable under our Circuit's decision in *Lee v. Garland*, 120 F.4th 880 (D.C. Cir. 2024). Defs.' MTD at 13–14. According to defendants, *Lee* requires this Court to dismiss the firm's claims to the extent they apply to § 2 because "courts may not review a decision to deny or revoke a security clearance even when the denial or revocation is challenged on statutory or even constitutional grounds." *Id.* (citing *Lee*, 120 F.4th at 883, 891). I find that *Lee*'s holding is not so broad as to shield § 2 from judicial review.

*Lee* holds that courts may not hear statutory and constitutional challenges to the merits of the revocation of an individual's security clearance. *See* 120 F.4th at 883. Our

---

[8] Defendants dispute this fact but provide no basis for that dispute. *See* Defs.' Resp. to Pl.'s SUMF [Dkt. #103-1]. The Court finds that there is no genuine dispute of material fact here.

Circuit reasoned that, under the political question doctrine, "federal courts generally may not second-guess the political branches' discretionary judgments about matters of national security," and "an Executive Branch decision to deny or revoke a security clearance is just such a judgment." *See id.* at 891.

However, our Circuit recognized that, "[o]f course, not every case touching on national security lies beyond judicial cognizance." *Id.*; *see also Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286, 289 (D.C. Cir. 1993) ("It is simply not the case that all security-clearance decisions are immune from judicial review."). Instead, "[e]ach question must be considered 'in terms of the history of its management by the political branches, of its susceptibility to judicial handling in the light of its nature and posture in the specific case, and of the possible consequences of judicial action.'" *Lee*, 120 F.4th at 891.

Here, the Court finds that § 2 is not "beyond judicial cognizance" for multiple reasons. *First*, the "nature and posture in [this] specific case" differ from those in *Lee*. *See id.* *Lee* bars judicial review of the *merits* of an *individual's* security clearance revocation. The WilmerHale Order, in contrast, demands immediate, blanket suspension of security clearances with no individualized review. WilmerHale Order § 2(a) (instructing agency heads to "immediately take steps consistent with applicable law to suspend any active security clearances held by individuals at WilmerHale"). At issue here is not the merits of any individual's suspension, but the process involved in the blanket suspension. Pl.'s Expert Report of J. William Leonard ("Leonard Report") [Dkt. #16-5] at 17–18 ("The WilmerHale Executive Order violates the[] bedrock principles of the security-clearance review process because it provides no individualized assessment of personal conduct in the

suspension of clearances. The WilmerHale Executive Order contains no mention of, let alone any individualized assessment of the WilmerHale personnel who currently hold security clearances.").

Thus this case falls outside the ambit of *Lee*[9] and instead I look to our Circuit's reasoning in *Greenberg*. *See generally Greenberg*, 983 F.2d 286. That case, in relevant part, analyzed whether courts could hear constitutional challenges to certain questions asked during security clearance investigations.[10] Our Circuit found that it could hear these challenges, since the issue was "the constitutionality of the methods used to gather information on which such judgments presumably will be based," not the "discretionary judgments regarding a particular employee's security clearance." *Id.* at 290. In doing so, the *Greenberg* court carefully distinguished between the "ends" of security clearance decisions—which are entrusted to the President—and the "means"—which the judiciary may properly scrutinize. *Id.*[11]

---

[9] The Supreme Court precedent on which *Lee* relies—*Department of the Navy v. Egan*, 484 U.S. 518 (1988)—itself bars judicial review only of the substance of security clearance decisions. *See Egan*, 484 U.S. at 526 (examining whether "the [Merit Systems Protection] Board may examine *the merits* of [a] security-clearance denial" (emphasis added)); *id.* at 529 ("[It] is not reasonably possible for an outside nonexpert body to review *the substance* of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence." (emphasis added)).

[10] For example, one question "solicit[ed] a complete mental health and drug and alcohol use history." *Greenberg*, 983 F.2d at 287.

[11] *Greenberg* emphasizes our Circuit's concern with a wholesale ban on judicial review of security clearance-related decisions:

> Suppose the President has unlimited and judicially-unreviewable constitutional power to determine which Executive Branch employees will be given access to the nation's secrets. No one would suggest the government therefore could, despite the Fourth Amendment, conduct random searches without warrants in the hope of uncovering information about employees seeking security clearances. Still less would anyone consider such unconstitutional searches and seizures to be immune from judicial review.

983 F.2d at 290.

WilmerHale challenges the President's process—or lack thereof—in suspending the firm's employees' security clearances.  For example, the alleged constitutional injuries include the lack of individualized review (in violation of the Due Process Clause), and the targeting of WilmerHale employees for suspension as a form of retaliation for protected speech (in violation of the First Amendment).  WilmerHale's expert opined that, based on his 30 years of experience in the national security arena, "the granting, suspending, and revoking of security clearances is a highly individualized process that involves a close and detailed factual analysis of the individual in question and provides any individual subject to this analysis with significant due process protections."  Leonard Report ¶ 35.  WilmerHale claims that § 2 fails to meet these requirements, and it is this process failure which the firm asks the Court to review.  As such, the alleged harm exists regardless of whether the Government eventually determines there is merit to revoking an individual's security clearance.  *See Lee*, 120 F.4th at 893 (explaining that *Greenberg* permits review where the "alleged injuries . . . exist regardless of how the government might have resolved any particular application").  *Greenberg* thus allows the Court to hear WilmerHale's challenges.

*Second*, § 2 of the Order does not invoke the national security concerns which barred judicial review of the security clearance revocation in *Lee*.  *Cf. id.* at 891 ("[F]ederal courts generally may not second-guess the political branches' discretionary judgments about matters of *national security*." (emphasis added)); *id.* at 889 ("The political question doctrine applies perhaps most vigorously to issues bearing on *national security*." (emphasis added)).  Section 2 references the "national interest," but nowhere cites "national security."

*See* WilmerHale Order § 2(a). *Lee* does not require the Court to give unlimited deference to the broad concept of national interest.[12] *See* Leonard Report ¶ 49 ("Tellingly, Section 2 of the WilmerHale Executive Order never uses the term 'national security,' and instead only mentions the 'national interest,' a term that is markedly broader than the 'national security interest' that serves as the touchstone of a security-clearance review. . . .'"). *Lee* is grounded in the Executive Branch's discretion on issues related to national security, which apparently is not the basis for § 2 of the Order.

*Third*, the history of the issues at play here supports judicial review. *See Lee*, 120 F.4th at 891 ("Historical practice is important in determining the scope of executive power." ). Plaintiff's expert opined that, based on his decades of experience, § 2 is nearly unprecedented. *See* Leonard Report ¶ 46 ("Simply put, a blanket suspension of all security clearances at a law firm of over 2,000 employees, including approximately 1,200 attorneys, was—prior to March 2025—unprecedented in scope . . . ."); *id.* at ¶ 49. In fact, the closest analogy WilmerHale's expert could draw is "to the repudiated and discredited" revocation of security clearances from individuals with alleged Communist sympathies during the Red Scare. *Id.* ¶¶ 38, 46. As such, the extraordinary nature of this case easily distinguishes it from *Lee* and supports judicial review.

For all these reasons, I find that WilmerHale's challenges to § 2 are indeed judicially reviewable. The merits of those challenges are discussed *infra*.

[12] In fact, *Lee* references "national security" 27 times. It references "national interest" zero times.

## III. Merits

I will now proceed to the merits of WilmerHale's claims. At the outset, I reject defendants' argument that the Complaint is a "shotgun pleading" in violation of Federal Rule of Civil Procedure 8. *See* Defs.' MTD at 4. The Complaint is a far cry from a "handicap" to defendants and the Court. *See id.* To the contrary, its 56 pages and 11 counts are concise and well-organized, and it provides fair notice of the claims WilmerHale is pursing against defendants. *Cf. Jiggetts v. District of Columbia*, 319 F.R.D. 408, 414–15 (D.D.C. 2017).

Defendants' Rule 12(b)(6) motion and WilmerHale's motion for summary judgment require more discussion. As explained above, I will address the Order as a whole. *See supra* Analysis I.

### A. *First Amendment Claims*

The Complaint includes four counts alleging that the WilmerHale Order violates the First Amendment. *See* Compl. ¶¶ 129–44 (Count I), 145–52 (Count II), 153–59 (Count III), 160–71 (Count IV). All survive defendants' motion to dismiss. All warrant summary judgment for WilmerHale!

#### 1. **Count I – First Amendment – Retaliation for Protected Expression**

"[T]he First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech." *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018). WilmerHale alleges that "[t]he Order blatantly defies this bedrock principle of constitutional law." Compl. ¶ 130. I agree!

To establish First Amendment retaliation, WilmerHale must plausibly allege and then prove: "(1) [WilmerHale] engaged in conduct protected under the First Amendment; (2) [defendants] took some retaliatory action sufficient to deter a person of ordinary firmness in [WilmerHale's] position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against [WilmerHale]." *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (quoting *Banks v. York*, 515 F. Supp. 2d 89, 111 (D.D.C. 2007)).

WilmerHale represents a range of clients in litigation. *See* Compl. ¶¶ 79–87, 131; Pl.'s SUMF ¶¶ 37–40, 42–49. This advocacy is unquestionably protected conduct under the First Amendment. *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545 (2001) (treating "the analysis of certain legal issues" and their "presentation to the courts" as "speech and expression"); *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 528 (1991) ("We long have recognized the important political and expressive nature of litigation."); *McDonald v. Smith*, 472 U.S. 479, 484 (1985) ("[F]iling a complaint in court is a form of petitioning activity . . . ."); *see also Ukrainian-Am. Bar Ass'n v. Baker*, 893 F.2d 1374, 1380 (D.C. Cir. 1990) ("[T]he first amendment guarantees the[] right to be free of governmental restraints on 'political expression' and that right is violated if the Government affirmatively interferes with constitutionally protected litigation as a form of political expression."). This is true even to the extent WilmerHale's clients are unpopular, controversial, or disfavored. *See NAACP v. Button*, 371 U.S. 415, 444–45 (1963) ("[T]he Constitution protects expression and association without regard . . . to the truth, popularity, or social utility of the ideas and beliefs which are offered.").

The WilmerHale Order is, on its face, retaliation for the firm's protected speech. Indeed, § 1 outlines the motivations of the Order, including WilmerHale's pro bono practice, "obvious partisan representations to achieve political ends," and involvement in immigration and election litigation. *See* WilmerHale Order § 1; WilmerHale Fact Sheet; *see also* Compl. ¶¶ 133–34.

The Order goes on to impose a kitchen sink of *severe* sanctions on WilmerHale for this protected conduct! In addition to vilifying the firm in § 1, it suspends WilmerHale employees' security clearances, with a looming threat of full revocation of those clearances, WilmerHale Order § 2(a); coerces the firm's federal contractor clients to end their engagements with the firm or face cancellation of their contracts, *id.* § 3; targets the firm for investigation into supposed racial discrimination, *id.* § 4; threatens to bar its employees from entering federal buildings or engaging with federal employees, *id.* § 5(a); and prohibits agencies from hiring firm employees absent a waiver from the relevant agency heads, *id.* § 5(b).

Any one of those sanctions would cause clients to strongly reconsider their engagements with WilmerHale. Taken together, the provisions constitute a staggering punishment for the firm's protected speech! The Order is intended to, and does in fact, impede the firm's ability to effectively represent its clients! For example, WilmerHale attorneys may not be able to enter federal courthouses for trial, meet with federal regulators, or access classified materials necessary for working on national security matters. *See* Compl. ¶¶ 79, 137–39. The Order also pressures the firm's federal contractor clients to

either end their relationships with WilmerHale or face possible cancellation of their contracts. *Id.* ¶ 141.

This, in turn, has severe economic consequences for the firm. *Id.* ¶¶ 124–27. The ability to effectively serve clients is the heart of the firm's business model. *Id.* Clients have already begun ending or curtailing their relationships with WilmerHale. Pl.'s SUMF ¶¶ 138–41. The impact of losing federal contractor clients would be staggering, as "[a]t least 21 of WilmerHale's 25 largest clients in 2024 have contracts with federal agencies. These 21 clients accounted for more than 30% of the Firm's revenue in 2024—nearly $500 million." *Id.* ¶ 32.

This "retaliatory action" is more than "sufficient to deter a person of ordinary firmness in [WilmerHale's] position from speaking again." *See Aref*, 833 F.3d at 258 (internal quotation marks omitted). The Order shouts through a bullhorn: If you take on causes disfavored by President Trump, you will be punished! Other firms facing similar Executive Orders have capitulated to President Trump. *See, e.g.*, Pl.'s SUMF ¶¶ 87–91 (explaining that Paul Weiss reached an agreement with President Trump to revoke the Paul Weiss Order because it was "an unprecedented threat to the firm" (citing Pl.'s MSJ Ex. 26 [Dkt. #16-4] at 168–76));[13] *id.* ¶¶ 102–09 (explaining that Skadden, Arps, Slate, Meagher

---

[13] Defendants dispute these facts as "[c]haracterization that is immaterial as the cited material speaks for itself." Defs.' Resp. to Pl.'s SUMF. The relevant paragraphs of WilmerHale's statement of material facts are largely direct quotes from the cited sources, with no characterization. *See* Pl.'s SUMF ¶¶ 87–91. The Court thus finds that there is no genuine dispute as to these facts.

& Flom LLP, Willkie Farr & Gallagher LLP, and Milbank LLP reached agreements with President Trump to proactively avoid Executive Orders);[14] *see also* Compl. ¶¶ 102–03.

Finally, § 1 makes clear the causal link between the protected speech and the retaliatory conduct. This Background section characterizes WilmerHale's representation of certain causes as "harmful," "egregious," and "partisan," and states that the purpose of the Order is to "address the significant risks associated with law firms" like WilmerHale. WilmerHale Order § 1. The sanctions laid out in §§ 2 through 5 follow this Background section and are plainly the result of those findings.

Defendants argue that the Order is not retaliation or punishment, as each section is a valid exercise of Executive discretion. *See* Defs.' MTD at 19–21; Dispositive Mots. Hearing Tr. at 19:18–20:16 ("MR. LAWSON: . . . I'm disputing the point that this order and these sections, separately or together, really aren't an absolute threat, an absolute punishment. These are discretionary points."). The plain language of § 1—which defendants concede "lend[s] support to each section," Dispositive Mots. Hearing Tr. at 29:23–30:3—and the context of the Order prove otherwise. Each of the provisions is crafted to cripple the firm by, for example, threatening to restrict WilmerHale employees' access to federal courthouses—a sanction devastating to a law firm which appeared in federal court over 340 times in the last year. *See* Pl.'s SUMF ¶ 29. Together or individually, the Order's sections constitute "sufficiently adverse action to give rise to an actionable First Amendment claim." *See Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022).

[14] For the same reasons as those set out in note 13, *supra*, the Court finds that there is no genuine dispute as to the facts in these paragraphs.

In sum, WilmerHale has both alleged and shown that the Order is retaliation for protected speech in violation of the First Amendment. I will therefore **DENY** defendants' motion to dismiss to the extent it seeks to dismiss Count I of WilmerHale's Complaint and **GRANT** WilmerHale's motion for summary judgment as to Count I.

### 2. Count II – First Amendment – Viewpoint Discrimination

"At the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *NRA of Am. v. Vullo*, 602 U.S. 175, 187 (2024); *see also Rosenberger v. Rector of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."). As such, "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rational for the restriction." *Rosenberger*, 515 U.S. at 829. Such viewpoint discrimination is "an egregious" violation of the First Amendment. *Id.*

Here, WilmerHale claims that the Order targets the firm for its disfavored viewpoints and punishes it for expressing those viewpoints. Compl. ¶¶ 145–52. The Court finds that WilmerHale has both alleged and shown this First Amendment violation!

As explained in Analysis III.A.1, *supra*, WilmerHale's representation of clients in litigation is speech. The Order attacks the viewpoints WilmerHale expressed over the course of these representations, describing WilmerHale's work as "partisan" and "political," and maligning WilmerHale's advocacy on behalf of causes disfavored by President Trump. *See* WilmerHale Order § 1; WilmerHale Fact Sheet ("WilmerHale pursues partisan goals, supports efforts to discriminate on the basis of race, and backs the

obstruction of efforts to prevent illegal aliens from committing horrific crimes and trafficking deadly drugs within our borders."); Compl. ¶¶ 146–47; Pl.'s SUMF ¶¶ 116, 129–30.[15] The Order is also motivated by WilmerHale's decision to "welcom[e]" Mueller to the firm and its statements that Mueller "embodies the highest value of our firm and profession." WilmerHale Order § 1; Compl. ¶ 148; Pl.'s SUMF ¶ 117.[16]

President Trump can "share [his] views freely and criticize particular beliefs, and [he] can do so forcefully in the hopes of persuading others to follow [his] lead." *Vullo*, 602 U.S. at 188. He cannot, however, "use the power of the State to punish or suppress disfavored expression." *Id.* The First Amendment bars the Government "from relying on the 'threat of invoking legal sanctions and other means of coercion . . . to achieve the suppression' of disfavored speech." *Id.* at 189 (alteration in original) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)).

Yet that is exactly what the Order here does: It both threatens and imposes sanctions and uses other means of coercion to suppress WilmerHale's representation of disfavored causes and clients. For example, § 4 targets WilmerHale for investigation by the EEOC and the Attorney General. WilmerHale Order § 4 (incorporating Perkins Coie Order § 4). This is the President, in essence, wielding the investigative and prosecutorial powers of the State to punish and suppress WilmerHale's advocacy. *See Vullo*, 602 U.S. at 187 ("[Vullo] could not wield her power, however, to threaten enforcement actions . . . ."). Sections 2

[15] For the same reasons as those set out in note 13, *supra*, the Court finds that there is no genuine dispute as to the facts in these paragraphs.
[16] For the same reasons as those set out in note 13, *supra*, the Court finds that there is no genuine dispute as to the fact in this paragraph.

and 5 also directly punish the firm for its disfavored speech by suspending security clearances, threatening to revoke access to federal buildings and bar engagement with federal employees, and prohibiting federal agencies from hiring WilmerHale employees absent a waiver. *See* WilmerHale Order §§ 2, 5.

Additionally, § 3 attempts to suppress WilmerHale's speech indirectly by pressuring the firm's federal contractor clients to terminate their relationships with the firm or face cancellation of their contracts. As the Supreme Court stated in *Vullo*, "a government official cannot do indirectly what she is barred from doing directly: A government official cannot coerce a private party to punish or suppress disfavored speech on her behalf." 602 U.S. at 190 (citing *Bantam Books*, 372 U.S. at 67–69). Here, § 3 instructs federal contractors "to disclose any business they do with WilmerHale and whether that business is related to the subject of the Government contract." WilmerHale Order § 3(a). It then instructs agency heads to review their contracts with entities who do business with the firm and (1) "terminate any contract . . . for which WilmerHale has been hired to perform any service"; and, much more broadly, (2) "align their agency funding decisions with the interests of the citizens of the United States; with the goals and priorities of [the] Administration . . . ; and as heads of agencies deem appropriate." *Id.* § 3(b).

WilmerHale has shown that § 3 "could be reasonably understood to convey a threat of adverse government action in order to punish or suppress [the firm's] speech." *See Vullo*, 602 U.S. at 191; *see* Compl. ¶¶ 9, 141. It presents a federal contractor with a Hobson's choice: End its relationships with WilmerHale, or face review and possible termination of all of its federal contracts. As the Supreme Court noted in *Vullo*, the power of the

Government official taking action is relevant, and "the greater and more direct the government official's authority, the less likely a person will feel free to disregard a directive from the official." 602 U.S. at 191–92. There is no Executive official with "greater" or "more direct" authority than the President of the United States! It is thus hard to imagine federal contractors would feel free to disregard the implicit directive in § 3 to terminate their engagements with WilmerHale. *See id.* at 193 (explaining that the "threat need not be explicit"). Given that "[a]t least 21 of WilmerHale's 25 largest clients in 2024 have contracts with federal agencies" and that "[t]hese 21 clients accounted for more than 30% of [WilmerHale's] revenue in 2024," the impact of losing these clients on WilmerHale's business would be ruinous. *See* Pl.'s SUMF ¶ 32.

Defendants maintain that "the fact that a funding program supports one point of view does not establish viewpoint discrimination against disfavored alternatives." Defs.' MTD at 20–21. Defendants cite to the Supreme Court's decision in *Rust v. Sullivan* for the proposition that "'the Government has not discriminated on the basis of viewpoint' merely by 'fund[ing] one activity to the exclusion of the other.'" *Id.* (quoting 500 U.S. 173, 193 (1991)). *Rust* is inapposite, though. That case addressed the constitutionality of regulations implementing Title X of the Public Health Service Act, which provided federal funding for family-planning services but mandated that "none of the funds appropriated . . . shall be used in programs where abortion is a method of family planning." *Rust*, 500 U.S. at 178. The implementing regulations barred funding of projects which "encourage, promote, or advocate abortion as a method of family planning." *Id.* at 180.

The Supreme Court upheld the implementing regulations' restrictions, explaining that the Government does not "unconstitutionally discriminate[] on the basis of viewpoint when it chooses to fund a program dedicated to advancing certain permissible goals[] because the program in advancing those goals necessarily discourages alternative goals." *Id.* at 194. This is where the WilmerHale Order is critically different from the regulations in *Rust*. Section 3 of the Order does not create or address a federally-funded program designed to advance a certain Government viewpoint, as was at issue in *Rust*. Instead, § 3 applies to federal contracting writ large, and there can be no claim that all federal contracts together constitute a program designed to promote a specific Government message. *Cf. id.* at 194–95 (describing *Rust* as "a case of the Government refusing to fund activities, including speech, which are specifically excluded from the scope of the project funded").

*Rust* distinguished "situations in which the Government has placed a condition on the *recipient* of the subsidy rather than on a particular program or service, thus effectively prohibiting the recipient from engaging in the protected conduct outside the scope of the federally funded program." *Id.* at 197. The Supreme Court emphasized that the *Rust* regulations governed the scope of a Title X project's activities, but that a grantee could continue to perform abortions and provide related services through programs separate from Title X-funded programs. *Id.* at 196. The WilmerHale Order, on the other hand, requires federal contractors to disclose *any* affiliation with the firm, regardless of whether WilmerHale is involved in their federal contracts. *See* WilmerHale Order § 3(a). The Order is thus keyed to the *recipient* of federal funds, not to the particular contract funded.

*Cf. Rust*, 500 U.S. at 197.[17] The WilmerHale Order does not seek to preserve a program designed to promote a specific Government message, and instead effectively bars federal contractors' association with WilmerHale even outside the scope of their federal contracts.

In sum, the Order and Fact Sheet make clear that President Trump disfavors WilmerHale's representation of certain causes and the firm's statements regarding Mueller. The Order suppresses that disfavored speech by imposing severe sanctions on WilmerHale both directly and indirectly. This viewpoint discrimination is "an egregious" violation of the First Amendment! *See Rosenberger*, 515 U.S. at 829. As such, I will **DENY** defendants' motion to dismiss to the extent it seeks dismissal of Count II and **GRANT** summary judgment for WilmerHale as to Count II.

### 3. <u>Count III – First Amendment – Right to Petition the Government</u>

The First Amendment protects the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. Filing and pursuing lawsuits are forms of protected petitioning. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011) ("This Court's precedents confirm that the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes.");

[17] *Rust* itself distinguishes a Supreme Court case which more closely aligns with the facts currently before the Court. *See Rust*, 500 U.S. at 197. In *FCC v. League of Women Voters of California*, the Supreme Court invalidated a law which barred noncommercial television and radio stations that received federal grants from "engag[ing] in editorializing," even in programs unrelated to federal grants. *See generally* 468 U.S. 364 (1984). The Supreme Court found that, under the law, "a noncommercial educational station that receives only 1% of its overall income from [federal] grants is barred absolutely from all editorializing." *Id.* at 400. The WilmerHale Order is similar: If an entity "receives only 1% of its overall income from" federal contracts, it is effectively "barred absolutely from" association with WilmerHale. *See id.* *Rust* explained that these types of prohibitions, unlike the restrictions upheld in *Rust*, are invalid because they "effectively prohibit[] the recipient from engaging in the protected conduct outside the scope of the federally funded program." *Rust*, 500 U.S. at 197.

*Am. Bus Ass'n v. Rogoff*, 649 F.3d 734, 738 (D.C. Cir. 2011) ("The right 'extends to [petitioning] all departments of the Government,' including administrative agencies and courts." (alteration in original) (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972))); *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 696 (D.C. Cir. 2009) ("[T]he Supreme Court has treated lawsuits as petitions."). This right to petition is "integral to the democratic process." *Borough of Duryea*, 564 U.S. at 388; *see also BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524–25 (2002) ("We have recognized this right to petition as one of 'the most precious of the liberties safeguarded by the Bill of Rights,' and have explained that the right is implied by 'the very idea of a government, republican in form[.]'" (citations omitted)).

WilmerHale has both alleged and shown that the Order violates the Petition Clause by (1) punishing the firm for its past representation of clients in litigation and (2) undermining the firm's ability to pursue litigation in the future. Compl. ¶¶ 153–71. The Order explicitly targets WilmerHale at least in part for the litigation it has pursued, including election and immigration lawsuits. *See* WilmerHale Order § 1;[18] Compl. ¶¶ 82–87 (identifying specific lawsuits); Pl.'s SUMF ¶¶ 43, 47–49. After identifying these

[18] Section 1 alleges that WilmerHale "is yet another law firm that has abandoned the profession's highest ideals and abused its pro bono practice to engage in activities that undermine justice and the interests of the United States." WilmerHale Order § 1. It contends that the firm "engages in obvious partisan representations to achieve political ends, supports efforts to discriminate on the basis of race, backs the obstruction of efforts to prevent illegal aliens from committing horrific crimes and trafficking deadly drugs within our borders, and furthers the degradation of the quality of American elections, including by supporting efforts designed to enable noncitizens to vote." *Id.*

purportedly harmful lawsuits,[19] the Order then sanctions the firm for pursuing these cases. *See* WilmerHale Order §§ 2–5; Compl. ¶¶ 113–16, 155.

The Order, however, goes further than punishing WilmerHale for past petitioning. It also creates hurdles to prevent the firm from pursuing future lawsuits. For example, § 5 directs agencies to limit the firm's employees' access to federal buildings and ability to engage with federal employees. WilmerHale Order § 5(a). The Order also suspends their security clearances, which restricts their access to the classified information they need to pursue cases involving national security. *Id.* § 2; Compl. ¶ 157. These limitations would severely hinder WilmerHale's ability to effectively bring cases.[20] *See* Compl. ¶¶ 79, 138–39; Pl.'s SUMF ¶ 28 ("At any given moment, WilmerHale attorneys may be working on over 1,000 matters before or involving dozens of federal agencies.").

Since the Order significantly impairs WilmerHale's First Amendment right to petition, it is subject to "exacting scrutiny." *See Elrod*, 427 U.S. at 362 ("It is firmly established that a significant impairment of First Amendment rights must survive exacting scrutiny."). Under this standard, defendants must show "a substantial relation between the [impairment] and a sufficiently important government interest." *See Ams. for Prosperity*

[19] The Petition Clause protects only lawsuits brought "in good faith." *See Nader*, 567 F.3d at 696 ("[W]hen a person petitions the government for redress, the First Amendment prohibits any sanction on that action . . . so long as the petition was in good faith."). There can be no serious claim that WilmerHale's lawsuits were not brought in good faith; in fact, many of the lawsuits were successful. *See* Compl. ¶ 155.

[20] Defendants counter that WilmerHale will still be able to petition "by written communication with government officials." Defs.' MTD at 29. To the extent the firm would be able to engage with federal employees in writing—which is not clear on the face of the Order—this would still significantly hamper the firm's ability to advocate on behalf of its clients. Defendants conveniently ignore that investigations or litigation might require in-person attendance in federal buildings and face-to-face engagement with federal employees for depositions, in-court hearings, advocacy presentations, and more.

*Found. v. Bonta*, 594 U.S. 595, 607 (2021) (quoting *Doe v. Reed*, 561 U.S. 186, 196 (2010)). The impairment must also "be narrowly tailored to the government's asserted interest." *Id.* at 608.

Defendants have shown neither a substantial relation to a sufficiently important government interest nor that the Order is narrowly tailored to that interest. Defendants invoke national security as the Government interest supporting the restrictions on WilmerHale's ability to petition outlined in § 5. Defs.' MTD at 29–30; *see* WilmerHale Order § 5 (stating that the guidance implementing the restrictions should be written to "ensure consistency with the national security and other interests of the United States"). WilmerHale concedes that "national security is of course an important government interest[.]" Pl.'s Opp'n to Defs.' MTD at 34. Yet the firm maintains—and the Court agrees—that the Order is not substantially related to that interest.

Other than a passing reference to WilmerHale's involvement in election and immigration litigation, the Order does not explain how WilmerHale's conduct has threatened national security or how restricting its access to federal buildings or federal employees would remedy those threats. *See* Leonard Report ¶ 51 ("[T]he behavior that the WilmerHale Executive Order deems problematic—attorneys representing clients in court—is not of the type that has ever in my experience been deemed conduct relating to a 'national security' interest."). Instead, and as I have already found, the Order is plainly motivated by the President's desire to retaliate against WilmerHale for its protected activity, *see supra* Analysis III.A.1. This is not a legitimate Government interest, and the Order's unsupported assertion of national security will not save it!

Finally, even if I agreed that the Order's restrictions on WilmerHale's right to petition are substantially related to national security, those restrictions are not narrowly tailored. The provisions sweep broadly to implicate all WilmerHale employees and clients, regardless of their involvement in certain cases or their affiliation with Mueller. As such, the Order fails exacting scrutiny and is unconstitutional under the Petition Clause. I will therefore **DENY** defendants' motion to dismiss to the extent it seeks to dismiss Count III and **GRANT** WilmerHale's motion for summary judgment as to Count III.

### 4. Count IV – First Amendment – Free Association

The Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others." *Bonta*, 594 U.S. at 605–06 (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)). Compelled disclosure of affiliation with groups engaged in advocacy can violate this First Amendment right. *See id.* at 607. WilmerHale alleges that the Order compels the firm's federal contractor clients to disclose their affiliation with WilmerHale, which engages in advocacy on their behalf and on behalf of other clients. Compl. ¶¶ 161–63. I find that this disclosure violates the First Amendment freedom of association.

The Order compels "Government contractors to disclose any business they do with WilmerHale." WilmerHale Order § 3(a). It then instructs agencies to terminate any contracts for which WilmerHale has been hired to perform services and to "otherwise align their agency funding decisions with the interests of the citizens of the United States; with the goals and priorities of [President Trump's] Administration . . . ; and as heads of agencies deem appropriate." *Id.* § 3(b). This is plainly a compelled disclosure of federal contractors'

association with WilmerHale and an accompanying threat of reprisal—cancellation of federal contracts—for that association. *See* Compl. ¶¶ 162–63.[21]

The Order's compelled disclosure is subject to—and fails—exacting scrutiny. *See Bonta*, 594 U.S. at 607.[22] Defendants assert that the Government has an interest in (1) "managing its contracts, with an eye towards an undisputed federal interest" of preventing racial discrimination, *see* Defs.' Opp'n to Pl.'s MSJ at 9–15; and (2) monitoring WilmerHale as a subcontractor, *see* Defs.' MTD at 21. Even if these interests are important, defendants cannot show a substantial relation between the Order and these goals, or that the Order is narrowly tailored to achieve those goals. *See Bonta*, 594 U.S. at 607–08.

The Order "require[s] Government contractors to disclose *any* business they do with WilmerHale," regardless of whether that business is related to a federal contract. *See* WilmerHale Order § 3(a) (emphasis added). Defendants have not explained how a federal contractor's affiliation with WilmerHale on "any business"—even business unrelated to the contract[23]—is substantially related to defendants' proffered interests in "ensur[ing] that there is no transfer of taxpayer dollars to entities that engage in racial discrimination" or

[21] At least one federal contractor received an email from a federal agency on March 28, 2025 requesting that the contractor disclose whether it has any business relationship with WilmerHale. Pl.'s SUMF ¶ 134.

[22] Defendants assert that the disclosure at issue here should be subject to relaxed scrutiny, as it involves only "factual" disclosure. *See* Defs.' MTD at 21–22. Defendants' cited case, *American Meat Institute v. U.S. Department of Agriculture*, 760 F.3d 18 (D.C. Cir. 2014), is inapposite. *American Meat Institute* involved commercial speech and disclosure of "'purely factual and uncontroversial information' about attributes of the product or service being offered." *See id.* at 26. The WilmerHale Order has made association with the firm controversial by branding it as a "rogue" law firm, *see* WilmerHale Fact Sheet, and publicly accusing it of "weaponization of the justice system," *see* WilmerHale Order § 1. Thus, the relaxed standard applied in *American Meat Institute* is inapplicable here.

[23] WilmerHale has federal contractor clients who have engaged the firm to work on matters unrelated to those federal contracts. Berman Decl. ¶ 31.

managing contracts on which WilmerHale is a subcontractor. *See* Defs.' MTD at 2, 21. It is certainly not clear to this Court!

The Order is also not narrowly tailored. *See Bonta*, 594 U.S. at 607–08. "The 'government may regulate in the [First Amendment] area only with narrow specificity[.]'" *Id.* at 610 (first alteration in original) (quoting *Button*, 371 U.S. at 433). The Supreme Court has warned that "[w]hen it comes to 'a person's beliefs and associations,' '[b]road and sweeping state inquiries into these protected areas . . . discourage citizens from exercising rights protected by the Constitution." *Id.* (alterations in original) (quoting *Baird v. State Bar of Ariz.*, 401 U.S. 1, 6 (1971) (plurality opinion)). That is exactly what § 3 does here. The sweeping inquiry into "any business" federal contractors do with WilmerHale—and the threatened reprisals for that affiliation—discourages those contractors from exercising their protected right to associate with WilmerHale. The Order thus does not operate with the required narrow specificity.

Accordingly, the Order is an unconstitutional impairment on the firm's and federal contractors' freedom of association. As such, I will **DENY** defendants' motion to dismiss to the extent that it seeks to dismiss Count IV and **GRANT** WilmerHale's motion for summary judgment as to Count IV.

### B. *Separation of Powers and Spending Clause Claims*

WilmerHale asserts two claims related to the separation of powers and the Spending Clause. Compl. ¶¶ 172–82 (Count V), 218–26 (Count XI). Analyzing each in turn, the Court finds for WilmerHale on the separation of powers claim, but for defendants on the Spending Clause claim.

### 1. Count V – *Ultra Vires* Presidential Action – Separation of Powers

"[T]he President's power, if any, to issue [an Executive Order] must stem either from an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952); *accord Mille Lacs Band*, 526 U.S. at 188–89. President Trump purportedly issued the WilmerHale Order pursuant to "the authority vested in [him] as President by the Constitution and the laws of the United States of America." WilmerHale Order. WilmerHale argues that neither the Constitution nor any statutory authority empowers the President to issue the Order, and in fact the Order violates the separation of powers by usurping judicial authority to identify and sanction abuses of the judicial process.[24] Pl.'s MSJ at 26–27. At the very least, the latter is certainly true!

This claim epitomizes a key dispute between the parties. WilmerHale urges the Court to view the Order as a single, retaliatory action and conclude that no authority "empowers the President to sanction a law firm for representing his political opponents or handling lawsuits that he perceives to be contrary to his interests or those of the United

[24] WilmerHale frames this count as a challenge to the Order as *ultra vires*. Compl. ¶ 75. Defendants, citing to *Federal Express Corp. v. U.S. Department of Commerce* ("*FedEx*"), argue that *ultra vires* claims must meet a very high bar and are unavailable when there is an alternative procedure for review of the alleged violation. Defs.' MTD at 6 (citing 39 F.4th 756, 765 (D.C. Cir. 2022)). *FedEx*'s limitations on *ultra vires* review are inapplicable to this case. FedEx was challenging the Department of Commerce's interpretation of the 2018 Export Controls Act, but it was unable to bring an Administrative Procedure Act ("APA") claim because Congress had barred APA review of Commerce's functioning under the Act. *Id.* at 762–63. Our Circuit found that a "demanding standard [was] necessary" in reviewing FedEx's *ultra vires* claim because FedEx sought "the intervention of an equity court where Congress ha[d] not authorized statutory judicial review." *Id.* at 765. Here, WilmerHale is not advancing an *ultra vires* claim to avoid an explicit determination by Congress that statutory judicial review should not be available. Instead, the firm's arguments are grounded in the separation of powers, an area which is firmly within the Court's province. *See generally Youngstown*, 343 U.S. 579; *see also Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988) ("When an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority.").

States." *See* Pl.'s MSJ at 26; *see also* Compl. ¶ 175. Defendants, on the other hand, insist that viewing the Order section-by-section reveals that each section is a proper exercise of Executive discretion. *See, e.g.*, Defs.' MTD at 29 ("Start with Plaintiff's *ultra vires* claim, which remarkably suggests that Federal agencies lack any authority to control over [sic] who can enter their buildings or interact with their employees on official business.").

Even if the Court found that each section *could* be grounded in Executive power, the directives set out in each section clearly *exceed* that power! The President, by issuing the Order, is wielding his authority to punish a law firm for engaging in litigation conduct the President personally disfavors. Thus, to the extent the President does have the power to limit access to federal buildings, suspend and revoke security clearances, dictate federal hiring, and manage federal contracts, the Order surpasses that authority and in fact usurps the Judiciary's authority to resolve cases and sanction parties that come before the courts!

The Constitution vests "[t]he judicial Power of the United States" in the Supreme Court and such inferior courts established by Congress. U.S. Const. art. III, § 1. "Article III is 'an inseparable element of the constitutional system of checks and balances' that 'both defines the power and protects the independence of the Judicial Branch.'" *Stern v. Marshall*, 564 U.S. 462, 482–83 (2011) (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58 (1982) (plurality opinion)). "Under 'the basic concept of separation of powers . . . the "judicial Power of the United States" . . . can no more be shared' with another branch than 'the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto.'" *Id.* at 483 (quoting *United States v. Nixon*, 418 U.S. 683, 704 (1974)).

This judicial power includes the inherent authority to sanction attorneys for their conduct in Article III courts. "Federal courts possess certain 'inherent powers,' . . . 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). The Supreme Court has "outlined the scope of the inherent power of the federal courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). A federal court's inherent powers include, but are not limited to, the authority to "discipline attorneys who appear before it," "punish for contempt," "vacate its own judgment upon proof that a fraud has been perpetrated upon the court," and "conduct an independent investigation in order to determine whether [the court] has been the victim of fraud." *Id.* at 43–44. Accordingly, judicial "authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Goodyear*, 581 U.S. at 107 (quoting *Chambers*, 501 U.S. at 44–45).

It necessarily follows that this judicial power is exclusive of the other two branches. *See Stern*, 564 U.S. at 483 ("In establishing the system of divided power in the Constitution, the Framers considered it essential that 'the judiciary remain[] truly distinct from both the legislature and the executive.'" (quoting The Federalist No. 78, at 466 (C. Rossiter ed. 1961) (A. Hamilton))); *N. Pipeline Constr. Co.*, 458 U.S. at 59 ("[O]ur Constitution unambiguously enunciates a fundamental principle – that the 'judicial Power of the United States' must be reposed in an independent Judiciary. It commands that the independence of the Judiciary be jealously guarded . . . ."); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995) ("Congress cannot vest review of the decisions of Article III courts in officials

of the Executive Branch."); The Federalist No. 78, at 466 (C. Rossiter ed. 1961) (A. Hamilton) ("The complete independence of the courts of justice is peculiarly essential . . . .").

The Order sanctions WilmerHale and its attorneys for their conduct before Article III courts. *See* WilmerHale Order § 1; *supra* Analysis III.A.1 (finding that the Order constitutes punishment). This encroaches on the Judiciary's exclusive power to sanction attorneys. *See Goodyear*, 581 U.S. at 107. If the President believed that the firm "engaged in improper legal advocacy," he should have "appeal[ed] to the judiciary to make appropriate findings and fashion an appropriate sanction." Compl. ¶¶ 94, 108–11, 180; Pl.'s MSJ at 28.[25] The Executive was not empowered to take it upon itself to sanction this purportedly improper conduct!

This attempted usurpation "threatens severe impairment of the judicial function" by "sift[ing] out" certain challenges and cases. *See Velazquez*, 531 U.S. at 546. "An informed, independent judiciary presumes an informed, independent bar." *See id.* at 545. The Order leaves attorneys wary of making certain arguments and representing certain clients for fear of retribution from the Executive Branch. *See* Amicus Br. of 342 Former Judges in Supp. of Pl.'s MSJ ("Former Judges Amicus Br.") [Dkt. #99] at 5 ("A court cannot be confident that the facts and law relevant to a matter have been fully presented if a firm must look over its shoulder in fear of becoming the target of punitive action such as the Order."). This

[25] The Order's attempts to punish WilmerHale's litigation conduct is particularly concerning because the President and the Executive Branch were among the parties in the relevant litigation. *See, e.g.*, Compl. ¶ 83 ("WilmerHale filed a lawsuit in February on behalf of the inspector general of eight federal agencies . . . alleging that President Trump improperly fired them . . . ."); *id.* ¶ 84 ("WilmerHale has represented clients in matters directly adverse to President Trump's personal and political interests.").

contravenes the long-standing adversarial nature of our legal system, and "[t]he Constitution does not permit the Government to confine litigants and their attorneys in this manner." *See Velazquez*, 531 U.S. at 548; *see also* Former Judges Amicus Br. at 6 ("Efforts to use governmental power to bend lawyers to the political interests or views of an administration may impair the candor on which judges rely and usurp judges' role in regulating the conduct of lawyers who appear before them. The adversarial system cannot function properly with such an incursion into the judicial role.").

In short, the WilmerHale Order violates the separation of powers by attempting to usurp the Judiciary's authority to resolve cases and sanction abuses of the judicial process. "A scheme so inconsistent with accepted separation-of-powers principles" must fall. *See Velazquez*, 531 U.S. at 546. I will therefore **DENY** defendants' motion to dismiss to the extent it seeks to dismiss Count V and **GRANT** WilmerHale's motion for summary judgment as to Count V.[26]

**2. Count XI – Spending Power (U.S. Const. Art. I, § 8) – Unconstitutional Conditions on Government Contracts**

The Constitution's Spending Clause grants Congress the federal spending power. *See* U.S. Const., art. I, § 8, cl. 1. "Incident to this power, Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power 'to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *S.D. v. Dole*, 483 U.S. 203,

[26] WilmerHale also alleges that the Order "effectively functions" as an unlawful bill of attainder. Compl. ¶ 181. While it is not clear to what extent, if any, the Constitution's prohibition on bills of attainder applies to the Executive Branch, the Court need not reach this issue.

206 (1987) (quoting *Fullilove v. Klutznick*, 448 U.S. 448, 474 (1980)); *see Rust*, 500 U.S. at 195 n.4 ("Congress' power to allocate funds for public purposes includes an ancillary power to ensure that those funds are properly applied to the prescribed use.").

WilmerHale alleges that the Order violates the Spending Clause by imposing unconstitutional conditions on federal contracts. Compl. ¶¶ 219, 222–25. The firm claims that § 3 of the Order "make[s] it a *de facto* condition of all federal government contracts that the contractor is prohibited from retaining any WilmerHale lawyer to represent it for any purpose," which violates the First, Fifth, and Sixth Amendments. *Id.* ¶ 224. The Court finds that the firm has failed to state a Spending Clause claim.

The Spending Clause is implicated when Congress imposes a spending or funding condition. *See, e.g.*, *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 208, 213–21 (2013) (holding that the spending conditions Congress placed on funding in the United States Leadership Against HIV/AIDS, Tuberculosis, and Malaria Act of 2003 violated the Spending Clause); *Dole*, 483 U.S. at 206 (holding that Congress did not violate the Spending Clause by requiring states to raise the minimum drinking age to receive federal funds); *N.Y. v. United States*, 505 U.S. 144, 167, 174–75 (1992) (holding that "the conditions attached to [] funds by Congress" violated the Spending Clause).

WilmerHale has not, however, alleged a connection between § 3 and a mandate from Congress, which is fatal to its Spending Clause claim.[27] The President issued the Order,

[27] WilmerHale's reliance on *Board of County Commissioners v. Umbehr*, 518 U.S. 668 (1996) to state a claim under the Spending Clause is misplaced. *Umbehr* analyzes the unconstitutional conditions doctrine under the First Amendment—not the Spending Clause. *See* 518 U.S. at 673–74. In *Umbehr*, the Supreme Court held that that First Amendment protects independent contractors from termination in retaliation for

which directs executive agency heads to take various actions to impose allegedly unconstitutional conditions on federal contracts. Compl. ¶¶ 114, 223–26. Tellingly, the Complaint points to "*[d]efendants'* attempts to impose unconstitutional conditions on federal contracts." *See id.* ¶ 226 (emphasis added). The defendants are largely agencies and agency heads; none belong to the Legislative Branch. WilmerHale nowhere alleges Congressional action and in fact concedes that "Congress has not even purported to authorize the President to impose such sanctions on law firms that take on disfavored representations." Pl.'s MSJ at 29.

WilmerHale has not and cannot state a claim under the Spending Clause.[28] As such, I will **GRANT** defendants' motion to dismiss to the extent it seeks to dismiss Count XI and **DENY AS MOOT** WilmerHale's motion for summary judgment as to Count XI. Count XI will be **DISMISSED WITH PREJUDICE**.

### C.    *Due Process and Equal Protection*

WilmerHale alleges that the Order violates the Due Process Clause and the Equal Protection Clause of the Fifth Amendment. Compl. ¶¶ 183–205. WilmerHale brings two Due Process claims alleging that: (1) the Order deprives WilmerHale and its employees of protected liberty and property interests without due process of law, *id.* ¶¶ 183–91 (Count

---

their exercise of freedom of speech. *Id.* at 686. While WilmerHale's Spending Clause claim does allege that § 3 "violates the First Amendment right to freedom of association," *see* Compl. ¶ 223, the firm chose to bring this as a Spending Clause claim and was thus required to plead some action by Congress.

[28] WilmerHale's summary judgment briefing attempts to reframe the Spending Clause claim as a separation of powers claim. *See* Pl.'s MSJ at 28–29 ("To be sure, Congress can authorize the President to impose conditions on the receipt of federal funds. . . . Congress has not even purported to authorize the President to impose such sanctions on law firms that take on disfavored representations, and they are every bit as forbidden to the Executive Branch as they are to the Legislature."). The Court need not evaluate this alternative ground for its Spending Clause claim, as WilmerHale did not allege it in the Complaint.

VI); and (2) the Order is unconstitutionally vague, *id.* ¶¶ 192–97 (Count VII). WilmerHale's Equal Protection claim asserts that the Order singles the firm out for punishment because of President Trump's "deep-seated animus" against the firm. *Id.* ¶¶ 198–205 (Count VIII). The Court finds for WilmerHale on the Due Process claims, but for defendants on the Equal Protection claim.

**1. <u>Count VI – Fifth Amendment – Due Process Clause (Procedural Due Process)</u>**

The Due Process Clause of the Fifth Amendment guarantees that the Government will provide due process of law before depriving an individual "of life, liberty, or property." U.S. Const. amend. V. WilmerHale alleges that "[t]he Order deprives the firm and its employees of protected liberty and property interests" "without *any* meaningful process." Compl. ¶¶ 184. To establish a due process violation, WilmerHale must prove: "(i) deprivation of a protected liberty or property interest; (ii) by the government; (iii) without the process that is 'due' under the Fifth Amendment." *N.B. ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015) (citations omitted); *see Reed v. Goertz*, 598 U.S. 230, 236 (2023). I find that WilmerHale's claim meets this standard.

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.' Only after finding the deprivation of a protected interest do[es the Court] look to see if the [Government's] procedures comport with due process." *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)). The Supreme Court recently reiterated that "'the Due Process Clause specially protects' only 'those

fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Munoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)).

WilmerHale pleads a protected liberty interest in its right to petition the Government under the First Amendment. Compl. ¶ 188 ("[T]he Order deprives WilmerHale of its protected liberty interest in its First Amendment right to petition the government because it restricts access to government buildings and government personnel."). The Supreme Court has recognized that the right to petition is "integral to the democratic process," *Borough of Duryea*, 564 U.S. at 388, and "one of 'the most precious of the liberties safeguarded by the Bill of Rights," *BE&K Constr. Co.*, 536 U.S. at 524 (quoting *United Mine Workers*, 389 U.S. at 222). This is because "[t]he very idea of government, republican in form, implies a right on the part of its citizens to . . . petition for a redress of grievances." *De Jonge v. Or.*, 299 U.S. 353, 364 (1937) (quoting *United States v. Cruikshank*, 92 U.S. 542, 552 (1875)). Accordingly, the Court finds that the right to petition is "deeply rooted in this Nation's history and tradition." *See Munoz*, 602 U.S. at 910; *see also Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1236–37 (10th Cir. 2007) (finding that the plaintiff "has a liberty interest in his First Amendment right to petition the government").

WilmerHale has shown that the Government deprived the firm of this protected liberty interest. "[T]he right to petition extends to all departments of the Government[.]" *BE&K Constr. Co.*, 536 U.S. at 525 (quoting *Cal. Motor Transp. Co.*, 404 U.S. at 510). As discussed in Analysis III.A.3, the Order violates WilmerHale's First Amendment right to petition by obstructing the firm's ability to bring and pursue lawsuits. For example, the

Order seeks to restrict WilmerHale attorneys' access to federal buildings and ability to engage with Government counsel in civil and criminal cases. *See* Compl. ¶¶ 153–59. These restrictions infringe on WilmerHale's protected liberty interest in its right to petition the Government for redress.

Finally, President Trump issued the Order without any due process. At its core, due process requires "notice of the proposed official action and 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Ralls Corp. v. CFIUS*, 758 F.3d 296, 318 (D.C. Cir. 2014) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Defendants concede that "WilmerHale was given no notice that the Order or Fact Sheet was forthcoming" and that "WilmerHale was not given the opportunity to respond to the allegations in the Order or Fact Sheet." Pl.'s SUMF ¶ 131; Defs.' Resp. to Pl.'s SUMF [Dkt. #103-1] at 4 (stating that paragraph 131 is "[u]ndisputed"). That does not comport with due process. *See Ralls Corp.*, 758 F.3d at 318 ("Both the Supreme Court and this Court have recognized that the right to know the factual basis for the action and the opportunity to rebut the evidence supporting that action are essential components of due process.").[29]

The Order deprives the firm of its protected liberty interest in petitioning the Government without notice or an opportunity to respond. Accordingly, it violates procedural due process. I will therefore **DENY** defendants' motion to dismiss to the extent

[29] Even assuming *arguendo* that national security concerns justify certain provisions of the Order, such as §§ 2 and 5, WilmerHale was still owed due process. *See Ralls Corp.*, 758 F.3d at 318–20 (finding that the "lack of process constitute[d] a clear constitutional violation, notwithstanding the Appellees' substantial interest in national security").

it seeks to dismiss Count VI and **GRANT** WilmerHale's motion for summary judgment as to Count VI.

### 2. Count VII – Fifth Amendment – Due Process Clause (Void for Vagueness)

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). The Due Process Clause thus "requires the invalidation of laws that are impermissibly vague"—specifically, a law is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). This void for vagueness doctrine "addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Id.*

WilmerHale alleges that "[t]he Order is unconstitutionally vague because it does not give WilmerHale fair notice of what is prohibited and how the Firm can avoid sanctions in the future." Compl. ¶ 194. I agree!

As a threshold matter, the doctrine of void for vagueness applies to the Order. Courts have applied the doctrine to civil actions, as well as criminal actions. *See Fox*, 567 U.S. at 258 (setting aside Federal Communications Commission regulations under the void for vagueness doctrine); *Boutilier v. INS*, 387 U.S. 118, 123 (1967) ("It is true that this

Court has held the 'void for vagueness' doctrine applicable to civil as well as criminal actions."). Defendants nonetheless argue that the doctrine is inapplicable because the Order "is not proscriptive in nature." Defs.' MTD at 11. Not so. The Order directs the suspension of WilmerHale employees' security clearances; orders federal contractors to disclose their relationships with WilmerHale; and seeks to restrict firm employees' ability to access federal buildings, engage with federal employees, and obtain federal employment. WilmerHale Order §§ 2, 3, 5. These directives instruct federal agencies to take punitive, adverse action against WilmerHale and its employees.

The Order does not provide WilmerHale with notice of how it should act in the future to avoid these sanctions. *See Fox*, 567 U.S. at 253. President Trump allegedly issued the Order because WilmerHale has "abandoned the profession's highest ideals" and "abused its pro bono practice to engage in activities that undermine justice and the interests of the United States." WilmerHale Order § 1. He points to WilmerHale's "obvious partisan representations," "efforts to discriminate on the basis of race," "obstruction of efforts to prevent illegal aliens from committing horrific crimes," and "efforts . . . to enable noncitizens to vote." *Id.* The Court agrees that the Order "leaves no doubt that WilmerHale is being punished because it has represented some of the President's political opponents and advanced positions with which he disagrees," but it "does not specify what aspect of WilmerHale's conduct triggered its massive sanctions." Compl. ¶ 195. Moreover, the Order's invocation of concepts such as "bedrock American principles" and "the interests of the United States" leave WilmerHale and its employees guessing about how to modify their conduct to avoid the Order's sanctions.

Under the most generous reading of the Order, it condemns WilmerHale's involvement in immigration and election litigation. It does not, however, otherwise explain what conduct the President considers to be undermining the interests of the United States. The Order essentially leaves it to WilmerHale to predict which causes and which attorneys the President personally dislikes and then steer clear of those causes and attorneys. This chilling effect triggers serious vagueness concerns. *See Fox*, 567 U.S. at 253–54 ("When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech."); *Reno v. ACLU*, 521 U.S. 844, 871–72 (1997) ("The vagueness of such a regulation raises special First Amendment concerns because of its obvious chilling effect on free speech.").

The Order also fails to provide the "precision and guidance [] necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *See Fox*, 567 U.S. at 253. The Order directs agency officials to take action against WilmerHale to ensure "consistency" with the "national interest," "the goals and priorities of [the] Administration," and "the interests of the United States." WilmerHale Order §§ 2, 3, 5. Read in the context of the Order, these phrases are most narrowly construed to mean those interests which the President condones or, in their broadest construction, whatever an agency head thinks is in the interest of the American people. To say the least, the Order is fraught with the risk of arbitrary or discriminatory enforcement! *See Fox*, 567 U.S. at 253.

As such, I find that the Order fails to provide "fair notice of conduct that is forbidden or required," *see id.*, and is therefore void for vagueness. I therefore will **DENY**

defendants' motion to dismiss to the extent it seeks to dismiss Count VII and **GRANT** WilmerHale's motion for summary judgment as to Count VII.

### 3.    Count VIII – Fifth Amendment – Equal Protection

The Fifth Amendment's guarantee of equal protection commands that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see Bolling v. Sharpe*, 347 U.S. 497, 498–99 (1954).  WilmerHale advances a "class of one" equal protection claim, which requires the firm to show that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).  These two elements are "essential." *3883 Conn. LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003).

WilmerHale alleges that the "very purpose" of the Order "is to discriminate against WilmerHale and WilmerHale alone," imposing punitive measures on the firm which do "not apply to many similarly situated firms or lawyers, even when the Order itself complains that certain practices are widespread among large law firms." Compl. ¶ 202. The Order, according to WilmerHale, singles the firm out "for engaging in constitutionally protected speech and legal advocacy that President Trump does not like." *Id.* ¶ 204.

At the outset, the Court rejects defendants' argument for dismissing WilmerHale's equal protection claim.  These arguments are grounded in assessing the treatment of WilmerHale as a federal contractor.  *See* Defs.' MTD at 22 ("To begin, the class-of-one theory of equal protection is inapplicable in the government employment context."); *id.* at 23 ("[WilmerHale] is not 'similarly situated' to other potential government contractors who

do not engage in unlawful DEI practices."). Defendants ignore the plain text of the Complaint and the Order. WilmerHale posits that it has been treated differently from "similarly situated firms," Compl. ¶ 202, and the Order was purportedly issued to address the risks associated with "'Big Law' firms," WilmerHale Order § 1. The appropriate class for WilmerHale is not federal contractors, but instead some set of large law firms. The Court therefore rejects defendants' argument.

Nevertheless, WilmerHale has failed to plausibly allege a group of "similarly situated" firms. The Complaint references "large law firms," and implies that some of those law firms may engage in the same practices of which WilmerHale is accused. *See* Compl. ¶ 202. Nowhere in the Complaint does WilmerHale concretely identify the similarly situated firms, and instead leaves the Court to guess who they are. In fact, when the Court asked WilmerHale's counsel who are WilmerHale's "peer firms," counsel conceded that "there's so many different ways to come at that" and otherwise did not provide guidance on how to draw the circle around similarly situated firms. Dispositive Mots. Hearing Tr. 34:14–20 ("THE COURT: What would you consider a peer firm? Firms of over a thousand lawyers? How would you describe it? MR CLEMENT: Well, there's so many different ways to come at that. But maybe I'll talk about for a second the nine firms that have made a deal with the government rather than suffer these kinds of executive orders.").

WilmerHale also does not address how the firm could have been "singled out" when it acknowledges that multiple other firms either received or were threatened with Executive Orders. *See* Compl. ¶¶ 96–98 (Perkins Coie), ¶¶ 100–03 (Paul Weiss), ¶ 106 (Jenner &

Block); Pl.'s SUMF ¶¶ 102–03 (Skadden), ¶¶ 104–06 (Wilkie Farr & Gallagher), ¶¶ 107–09 (Milbank);[30] Dispositive Mots. Hearing Tr. 34:17-20 (stating that "nine firms [] have made a deal with the government rather than suffer these kinds of executive orders"); *see also* Compl. ¶ 12 ("The President's sweeping attack on WilmerHale (*and other firms*) is unprecedented and unconstitutional" (emphasis added)); *id.* ¶¶ 104–05 (alleging that President Trump issued a directive aimed generally "at law firms and lawyers he disfavors" and directing the Attorney General "to consider whether allegedly improper attorney conduct warrants 'reassessment of security clearances held by the attorney or termination of any Federal contract for which the relevant attorney or law firm has been hired to perform services'"). The WilmerHale Order itself states that the President "is committed to addressing the significant risks associated with law firms, particularly so-called 'Big Law' firms," not just WilmerHale. WilmerHale Order § 1.

The Complaint fails to identify the similarly situated firms while simultaneously admitting that there are multiple large law firms which have received the same treatment as WilmerHale. Thus, the firm cannot establish a "class of one" equal protection claim. I will **GRANT** defendants' motion to dismiss to the extent it seeks to dismiss Count VIII and **DENY AS MOOT** WilmerHale's motion for summary judgment as to Count VIII. Count VIII will be **DISMISSED WITH PREJUDICE**.

[30] For the same reasons as those set out in note 13, *supra*, the Court finds that there is no genuine dispute as to the facts in these paragraphs.

### D. *Right to Counsel Claims*

WilmerHale alleges that the Order violates its clients' right to counsel of their choice under both the Fifth Amendment and Sixth Amendment. Compl. ¶¶ 206–09 (Count IX), 210–17 (Count X). The Sixth Amendment guarantees the right to counsel in criminal matters, *see* U.S. Const. amend. VI, while the Fifth Amendment's Due Process Clause provides for the right to counsel in civil matters, *see American Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 (D.C. Cir. 1984) (citing *Powell v. Alabama*, 287 U.S. 45, 68–69 (1932)). The Court finds that WilmerHale succeeds as to its Sixth Amendment claim, but not as to its Fifth Amendment claim.

#### 1. **Count IX – Fifth Amendment – Right to Counsel**

WilmerHale asserts that "[t]he Fifth Amendment protects both lawyers' and clients' due-process rights in establishing and maintaining attorney-client relationships, including the client's right to choose counsel and the lawyer's corresponding right to maintain that representation free from arbitrary or unjustified government interference." Compl. ¶ 207. The Court finds that WilmerHale has not sufficiently alleged a violation of the Fifth Amendment right to counsel.

Under *Triplett*, the primary case on which WilmerHale relies, the firm is required to show that the alleged violation of the Fifth Amendment right to counsel "made attorneys unavailable to [the] clients." *See* 494 U.S. at 722. *Triplett* "call[ed] into question the constitutionality of the Department of Labor's administration of [a] provision of the Black Lung Benefits Act of 1972 which prohibits the acceptance of attorney's fees for the representation of claimants, except such fees as are approved by the Department." *Id.* at

717. An attorney argued that this restriction on fees "violate[d] the Due Process Clause of the Fifth Amendment because it render[ed] qualified attorneys unavailable and thereby deprive[d] claimants of legal assistance in the prosecution of their claims." *Id.*

The Supreme Court rejected the attorney's claim, as he failed to show "that the regime made attorneys unavailable to his prospective clients." *Id.* at 722. It was not enough to provide "anecdotal evidence" from three lawyers that the regime produced too few lawyers. *Id.* at 723–24. In fact, the Supreme Court found this evidence "blatantly insufficient to meet [the attorney's] burden of proof." *Id.*

WilmerHale's allegations are even more deficient. WilmerHale nowhere alleges that its clients are unable to obtain alternative qualified counsel. In fact, the Complaint acknowledges that there are "many similarly situated firms" who have not been targeted by Executive Orders. Compl. ¶ 202; *see also* Suppl. Berman Decl. ¶ 9 ("Other existing clients have indicated to WilmerHale partners that they are considering whether to replace WilmerHale—or engage an additional firm on ongoing matters . . . ."); *id.* ¶ 10 ("Clients who need attorneys who can interact with federal government personnel, access federal buildings, and access classified information may well take existing or new business to other firms."). Thus, WilmerHale has not met and cannot meet its burden to show that the alleged violation of the Fifth Amendment right to counsel deprived its clients of qualified attorneys. *See Triplett*, 494 U.S. at 722.

The Court will **GRANT** defendants' motion to dismiss to the extent it seeks to dismiss Count IX and **DENY AS MOOT** WilmerHale's motion for summary judgment on Count IX. Count IX will be **DISMISSED WITH PREJUDICE**.

**2. Count X – Sixth Amendment – Right to Counsel**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This guarantee requires providing a criminal defendant with "a fair opportunity to secure counsel of his own choice." *Luis v. United States*, 578 U.S. 5, 11 (2016) (quoting *Powell*, 287 U.S. at 53). "The right to select counsel of one's choice" is "the root meaning of the constitutional guarantee" to counsel protected by the Sixth Amendment. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–48 (2006).

The Supreme Court and our Circuit Court have recognized the right to counsel of one's choice as "fundamental," *see Luis*, 578 U.S. at 12, but "not absolute," *United States v. Friedman*, 849 F.2d 1488, 1490 (D.C. Cir. 1988); *see also Wheat v. United States*, 486 U.S. 153, 166 (1988). For example, "a defendant may not insist on representation by an attorney he cannot afford or . . . insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party." *Wheat*, 486 U.S. at 159.

Absent an exception, a defendant is entitled to "the counsel he believes to be best." *Gonzalez-Lopez*, 548 U.S. at 146. The "[d]eprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the [alternative] representation he received." *Id.* at 148. A defendant alleging a violation of this Sixth Amendment right need not show that alternative counsel was ineffective or prejudiced his case. *See id.* "To argue otherwise is to confuse the right to counsel of choice—which is the right to a particular lawyer regardless of comparative effectiveness—with the right to effective counsel—which imposes a baseline

requirement of competence on whatever lawyer is chosen or appointed." *Id.*;[31] *see also id.* at 150 ("A choice-of-counsel violation occurs *whenever* the defendant's choice is wrongfully denied.").

Here, WilmerHale has alleged and shown that the Order "infringes the Sixth Amendment right to counsel of [its] clients" by "eviscerat[ing] the Firm's ability to provide effective representation and advocacy for its clients." Compl. ¶¶ 213–16. The firm represents "individuals accused of criminal . . . wrongs." *Id.* ¶ 79; *see* Berman Decl. ¶¶ 8, 15, 17, 20. This work requires entering federal buildings and engaging with federal employees. For example, "WilmerHale attorneys representing criminal defendants often meet with prosecutors in U.S. Attorneys' offices in-person to advocate for their clients." Compl. ¶ 79; *see also* Berman Decl. ¶¶ 20–21 ("WilmerHale Litigation and Controversy Department lawyers must interact with federal employees . . . to make presentations to prosecutors."). It can also require active security clearances, depending on the matter. Pl.'s SUMF ¶ 24 ("The Firm has multiple attorneys with active security clearances, which are necessary to represent clients in cases involving sensitive government information, including in . . . criminal investigations."); Berman Decl. ¶ 78.

---

[31] In reaching this conclusion, the Supreme Court took care to distinguish the Sixth Amendment right to counsel from the Fifth Amendment Due Process right to counsel. *See Gonzalez-Lopez*, 548 U.S. at 146–48. The Due Process protections are grounded in the right to a fair trial, while the Sixth Amendment protection is a distinct right to counsel of choice. *See id.* at 147 ("The earliest case generally cited for the proposition that 'the right to counsel is the right to the effective assistance of counsel,' was based on the Due Process Clause rather than on the Sixth Amendment." (citation omitted)). Accordingly, while WilmerHale was required to show its clients could not obtain effective assistance of counsel for its Fifth Amendment right to counsel claim, it need not make such a showing with respect to its Sixth Amendment claim.

By barring WilmerHale attorneys from federal buildings, prohibiting their engagement with federal employees, and suspending their security clearances, the Order effectively prevents the firm's attorneys from representing their clients in criminal matters. *See* WilmerHale Order §§ 2, 5; Compl. ¶¶ 79, 125, 213–14; Pl.'s SUMF ¶ 24; Berman Decl. ¶¶ 20–21, 78, 81. The Order also coerces WilmerHale's federal contractor clients to choose between their contracts and their engagements—including engagements on criminal matters—with WilmerHale. *See* WilmerHale Order § 3; Compl. ¶¶ 126, 215. These directives may thus cause the firm's criminal defendant clients to abandon the firm and seek alternate counsel;[32] some clients have already begun to do so. *See* Pl.'s SUMF ¶¶ 135, 138,[33] 141; Suppl. Berman Decl. ¶¶ 5–10.

Though the Order does not *directly* prohibit criminal defendants from hiring WilmerHale as their counsel, it certainly has that effect! The Supreme Court has indicated that indirect infringements on the right to counsel of choice can violate the Sixth Amendment. *See Luis*, 578 U.S. at 10 ("[T]he pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment."). This is a logical conclusion, as the Government "cannot do indirectly what [it] is barred from doing directly." *See Vullo*, 602 U.S. at 190 (citing *Bantam Books*, 372 U.S. at 67–69); *see also Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 230 (2023) ("[W]hat cannot be done directly cannot be done indirectly. The Constitution deals

[32] As explained above, the existence of alternative qualified counsel for these clients is irrelevant. The violation of WilmerHale's clients' Sixth Amendment right was "complete" when President Trump issued the Order. *See Gonzalez-Lopez*, 548 U.S. at 148.

[33] Defendants dispute paragraph 138 but provide no basis for that dispute. *See* Defs.' Resp. to Pl.'s SUMF. The Court thus finds that there is no genuine dispute here.

with substance, not shadows[.]" (quoting *Cummings v. Missouri*, 71 U.S. 277, 4 Wall. 277, 325 (1867))).

The indirect infringement on the right to counsel here is severe, as explained above. I see no reason to ignore this violation simply because it is not a direct, explicit prohibition on representation of criminal clients. The intended and actual effect of the Order's sanctions is to drive clients away from WilmerHale! Taking into consideration the source of these directives—the President of the United States—along with the breadth of the sanctions, the Court finds that the Order materially "undermine[s] the value of" the firm's clients' right to counsel of choice. *See Luis*, 578 U.S. at 12. Accordingly, I will **DENY** defendants' motion to dismiss to the extent it seeks to dismiss Count X and **GRANT** WilmerHale's motion for summary judgment as to Count X.

## REMEDIES

WilmerHale has shown that it is entitled to summary judgment on Counts I–VII and X, which allege that the Order violates the First, Fifth, and Sixth Amendments and the separation of powers. The Court next considers the appropriate remedies. WilmerHale asks for a declaratory judgment and permanent injunction relief. Compl. at 56 (Prayer for Relief); Pl.'s MSJ at 36–45. The Court has found that the Order is unconstitutional and will issue a declaratory judgment to that effect.[34] The Court will also issue injunctive relief, but only as to some of the defendants. *See infra* note 35.

---

[34] While the Order includes a provision that "[t]his order shall be implemented consistent with applicable law," *see* WilmerHale Order § 6(b), the Court has found that the Order *as issued* is unconstitutional.

The Court can properly enjoin enforcement of the Order. "[I]t is now well established that '[r]eview of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive.'" *Chamber of Com. of the United States v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (quoting *Franklin v. Mass.*, 505 U.S. 788, 828 (1992) (Scalia, J., concurring in part and concurring in the judgment)). Accordingly, "courts have power to compel subordinate executive officials to disobey illegal Presidential commands." *Id.* (quoting *Soucie v. David*, 448 F.2d 1067, 1072 n.12 (D.C. Cir. 1971)). Thus, when the President issues an unlawful Executive Order, "the proper course is to seek to enjoin a member of the executive branch from carrying out the executive order at issue." *McCray v. Biden*, 574 F. Supp. 3d 1, 11 (D.D.C. 2021). That is what WilmerHale has done here.[35]

[35] Defendants move to dismiss two defendants, the Executive Office of the President ("EOP") and the United States. Defs.' MTD at 31–35. Addressing each in turn, the Court finds both are proper defendants. *First*, "EOP is an entity comprising a number of other entities, offices and establishments" with a variety of responsibilities. *Id.* at 31. Defendants complain that naming EOP without specifying whether the Complaint seeks relief as to any particular EOP entity is "puzzling and improper." *Id.* at 31–32. Defendants fail to provide any legal authority for dismissing EOP on that basis. *Second*, defendants seek dismissal of the United States because WilmerHale "cannot sue for injunctive relief against the entire Government *qua* Government." *Id.* at 32. Here the Court looks to the waiver of sovereign immunity in 5 U.S.C. § 702. *See Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006) (holding that "§ 702's waiver of sovereign immunity permits not only [plaintiff's] APA cause of action, but his nonstatutory and First Amendment actions as well," because the "APA's waiver of sovereign immunity applies to any suit whether under the APA or not" (quoting *Reich*, 74 F.3d at 1328)). Section 702 states that "[t]he United States may be named as a defendant in any [] action, and a judgment or decree may be entered against the United States," if the action (1) is in a court of the United States; (2) seeks relief other than money damages; and (3) "stat[es] a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." WilmerHale has met these requirements, and thus the United States is a proper defendant. Defendants argue that the Court may not issue injunctive relief against the United States because § 702 requires "[t]hat any mandatory or injunctive decree shall specify the Federal officer or officers (by name or title), and their successors in office, personally responsible for compliance." This is true, but it speaks only to the scope of the injunctive relief the Court issues. WilmerHale also seeks declaratory relief, and § 702 does not bar declaratory relief against the United States. As such, I need not and will not dismiss the United States from the case!

To obtain permanent injunctive relief, WilmerHale must establish "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between [WilmerHale] and [defendants], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Anatol Zukerman & Charles Krause Reporting, LLC v. USPS*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) (quoting *eBay Inc. v. MercExchange*, 547 U.S. 388, 391 (2006)). The last two factors merge when the Government is the opposing party. *Id.*

WilmerHale has shown that it will suffer irreparable injury absent an injunction. "It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting *Elrod*, 427 U.S. at 373) (discussing a motion for a preliminary injunction); *see also Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[S]uits for declaratory and injunctive relief against the threatened invasion of a constitutional right do not ordinarily require proof of any injury other than the threatened constitutional deprivation itself." (quoting *Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998))). Here, WilmerHale has shown that the Order violates the firm's First, Fifth, and Sixth Amendment rights, as well as its clients' First and Sixth Amendment rights.

WilmerHale has also shown that the Order will cause economic injury sufficient to warrant injunctive relief. While "economic loss does not, in and of itself, constitute irreparable harm," there is an exception when "the loss threatens the very existence of the

movant's business." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Such is the case here. "A large proportion" of WilmerHale's litigation matters are in federal court, and its litigation group frequently represents clients in investigations involving federal agencies. Pl.'s SUMF ¶¶ 18–19. Even outside of federal litigation and investigations, WilmerHale's matters involve significant engagement with federal agencies and employees. *See, e.g.*, *id.* ¶¶ 21–23, 26–28. Moreover, federal contractors constitute 21 of WilmerHale's 25 largest clients and account for more than 30% of the firm's revenue. *Id.* ¶ 32. WilmerHale has thus shown that the Order "threaten[s] the very viability of the Firm's business model." Compl. ¶ 124.

Despite the issuance of a TRO one day after President Trump announced the Order, existing clients have been curtailing their relationships with WilmerHale and new clients are taking their business elsewhere. Pl.'s SUMF ¶¶ 138–41. The monetary value of these current and future client relationships is difficult to calculate. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) ("We have found, for example, that injunctive relief is appropriate where it would be 'very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come.'" (quoting *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999))).

Absent an injunction, WilmerHale's injuries will likely continue. *See* Suppl. Berman Decl. ¶¶ 10–15. WilmerHale attorneys are currently scheduled to appear in hearings, trials, and appellate proceedings in the upcoming months; the Order, unless enjoined, creates significant uncertainty about whether the firm's attorneys would be able

to appear for these proceedings. *See id.* ¶ 13(d). Additionally, "a number of existing clients have expressed concerns about continuing to work with WilmerHale if . . . the Order fully takes effect, even though they would otherwise wish to continue working with the Firm." *Id.* ¶ 10.

The Court also finds that the balance of the equities and public interest support issuing a permanent injunction. The Order is unconstitutional, and thus defendants do not have a legitimate interest in enforcing the Order. In fact, it is "obvious" that the "enforcement of an unconstitutional law is always contrary to the public interest." *Gordon*, 721 F.3d at 653. Enjoining the Order serves the public interest by, for example, eliminating an obstacle to free speech and preserving the independent and adversarial nature of our judicial system. The balance of the equities and public interest thus strongly favor injunctive relief.

The final question is whether the Court could or should sever any sections of the Order.[36] The Order does not contain a severability clause. *See generally* WilmerHale Order; *cf. League of United Latin Am. Citizens v. EOP*, 2025 WL 1187730, at *58 (D.D.C. Apr. 24, 2025) (finding an Executive Order severable where "[t]he Executive Order itself contains a severability clause"). Additionally, as explained in Analysis I, the operative provisions of the Order are intertwined with § 1, and the President's treatment of the Paul Weiss Order underscores the unified nature of the WilmerHale Order too. The language of

---

[36] While the Supreme Court has "never addressed whether *Executive Orders* can be severed into valid and invalid parts, and if so, what standard should govern the inquiry," it has "assume[d], arguendo, that the severability standard for statutes also applies to Executive Orders." *Mille Lacs Band*, 526 U.S. at 191.

the WilmerHale Order and the record before the Court thus indicate that the President intended for the Order to "embod[y] a single, coherent policy," designed "to stand or fall as a whole." *See Mille Lacs Band*, 526 U.S. at 173. The Court will therefore enjoin the *entire* WilmerHale Order.

## CONCLUSION

For the reasons set forth above, I find the Order is unconstitutional. The Court will **GRANT IN PART** and **DENY IN PART** each parties' dispositive motion. Defendants' motion to dismiss will be **DENIED** except to the extent it seeks to dismiss Counts VIII, IX, and XI, which will be **DISMISSED WITH PREJUDICE**. WilmerHale's motion for summary judgment will be **GRANTED** as to Counts I–VII and X, and **DENIED AS MOOT** as to Counts VIII, IX, and XI. The Court will issue both declaratory and permanent injunctive relief.[37] An Order consistent with the above accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

[37] Given that the Court will issue a permanent injunction barring enforcement of the Order, the Court will also **DENY AS MOOT** WilmerHale's Motion for a Preliminary Injunction [Dkt. #3].

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILMER CUTLER PICKERING HALE AND DORR LLP,<br>Plaintiff,<br>v.<br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br>Defendants. | Civil Case No. 25-917 (RJL) |

**ORDER**
May 27th, 2025 [Dkt. #15; Dkt. #16]

For the reasons set forth in the accompanying Memorandum Opinion, defendants' Motion to Dismiss [Dkt. #15] and Wilmer Cutler Pickering Hale and Dorr LLP's ("WilmerHale") Motion for Summary Judgment [Dkt. #16] are each **GRANTED IN PART** and **DENIED IN PART**. Accordingly, it is hereby

**ORDERED** that defendants' Motion to Dismiss [Dkt. #15] is **GRANTED** to the extent it seeks to dismiss Counts VIII, IX, and XI and **DENIED** to the extent it seeks to dismiss Counts I–VII and X; it is further

**ORDERED** that Counts VIII, IX, and XI are **DISMISSED WITH PREJUDICE**; it is further

**ORDERED** that WilmerHale's Motion for Summary Judgment is **GRANTED** as to Counts I–VII and X and **DENIED AS MOOT** as to Counts VIII, IX, and XI; it is further

**DECLARED** that Executive Order 14250, 90 Fed. Reg. 14549 (Apr. 3, 2025), issued by the President on March 27, 2025 and entitled "Addressing Risks from WilmerHale," is unconstitutional because it violates the First, Fifth, and Sixth Amendments to the U.S. Constitution and is *ultra vires*, and is therefore null and void; it is further

**ORDERED** that all defendants other than defendant United States (together, the "agency defendants") are **PERMANENTLY ENJOINED** from implementing or giving effect to Executive Order 14250, including by relying on or considering any of the statements in § 1 of Executive Order 14250; it is further

**ORDERED** that the agency defendants shall immediately take any and all steps necessary to nullify and reverse any implementation or enforcement of Executive Order 14250 that has occurred or is occurring; it is further

**ORDERED** that the agency defendants shall immediately issue guidance to their officers, staff, employees, and contractors, instructing them to disregard Executive Order 14250; it is further

**ORDERED** that counsel for defendants shall provide counsel for WilmerHale with copies of such guidance within seven (7) days of issuance; it is further

**ORDERED** that counsel for defendants shall, within seven (7) days of this Order, file with the Court a status report describing the steps taken to ensure compliance with this Order and certifying compliance with its requirements; it is further

**ORDERED** that WilmerHale's Motion for a Preliminary Injunction [Dkt. #3] is **DENIED AS MOOT**; and it is further

**ORDERED** that this Court shall retain jurisdiction to enforce or modify this Order.

This Order shall serve as the judgment of the Court.

**SO ORDERED**.

RICHARD J. LEON
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILMER CUTLER PICKERING HALE AND DORR LLP,<br><br>Plaintiff,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>Defendants. | Civil Case No. 25-917 (RJL) |

th

**MEMORANDUM ORDER**

June 26, 2025 [Dkt. #114; Dkt. #115]

On May 27, 2025, this Court issued an Order striking down Executive Order 14250, entitled "Addressing Risks from WilmerHale" (the "WilmerHale Order"), as unconstitutional. *See* Mem. Op. [Dkt. #110]; Order [Dkt. #111]. The parties now ask the Court to clarify or amend that judgment in two ways. First, defendants filed an unopposed motion to clarify the scope of the Court's injunction barring enforcement of Section 4 of the WilmerHale Order. Defs.' Mot. to Clarify [Dkt. #114] at 2. Second, WilmerHale "move[d] the Court to amend its Order so that the relief applies to all agencies and officials subject to Executive Order 14250." Pl.'s Mot. to Amend the J. ("Pl.'s Mot. to Amend") [Dkt. #115]. Defendants oppose WilmerHale's motion. Defs.' Opp'n to Pl.'s Mot. to Amend the J. ("Defs.' Opp'n to Pl.'s Mot.") [Dkt. #116]; Pl.'s Reply in Supp. of Mot. to

Amend the J. ("Pl.'s Reply ISO Mot. to Amend") [Dkt. #117]. For the reasons set forth below, I will **GRANT** both motions.

*Defendants' Motion to Clarify*. Defendants ask the Court to clarify "the scope of the Court's declaratory and injunctive relief as applied to Section 4 of [the WilmerHale Order]." Defs.' Mot. to Clarify at 1. Section 4 is labeled "Racial Discrimination" and states that "[n]othing in this order shall be construed to limit the action authorized by section 4 of Executive Order 14230 of March 6, 2025 (Addressing Risks from Perkins Coie LLP) [the 'Perkins Coie Order']." WilmerHale Order § 4. Section 4 of the Perkins Coie Order, which is also labeled "Racial Discrimination," instructs the Equal Employment Opportunity Commission ("EEOC") to "review the practices of representative large, influential, or industry leading law firms for consistency with Title VII of the Civil Rights Act of 1964 . . . ." Perkins Coie Order § 4(a). It also directs the Attorney General to investigate large law firms "who do business with Federal entities for compliance with race-based and sex-based non-discrimination laws and take any additional actions the Attorney General deems appropriate in light of the evidence uncovered." *Id.* § 4(b).

Defendants, "in an abundance of caution," moved the Court for a clarification that this Court's Order enjoins enforcement of Section 4 of the Perkins Coie Order only as applied to WilmerHale, not as to any other large law firms or other entities. Defs.' Mot. to Clarify at 2. WilmerHale does not oppose the motion. *Id.* at 3. Defendants are correct that

this Court's injunction barring enforcement of Section 4 of the WilmerHale Order runs only as to WilmerHale; therefore, the Court will grant defendants' motion to clarify.[1]

*WilmerHale's Motion to Amend*. WilmerHale filed a motion to amend the Court's Order pursuant to Rule 59(e). Pl.'s Mot. to Amend. I will grant this motion as well.

WilmerHale's Complaint named 52 defendants: 26 federal agencies, 25 federal officers in their official capacities, and the United States. Compl. [Dkt. #1]. In striking down the WilmerHale Order as unconstitutional, the Court issued declaratory relief as to all of the defendants but issued injunctive relief only as to the federal agency and officer defendants. *See* Order at 2; Mem. Op. at 69 n.35. The Court found that the United States is a proper defendant which could be subject to the Court's declaratory relief. Mem. Op. at 69 n.35. However, the Court did not issue injunctive relief against the United States as a whole "because [5 U.S.C.] § 702 requires '[t]hat any mandatory or injunctive decree shall specify the Federal officer or officers (by name or title) and their successors in office, personally responsible for compliance.'" *Id.* (quoting 5 U.S.C. § 702). WilmerHale named only 51 federal agencies and officers in its Complaint, and the Court thus issued injunctive relief only as to those agencies and officers.

WilmerHale now "asks the Court to amend its judgment so that the permanent injunction applies to every agency and officer subject to Executive Order 14250, not just the 51 named in the complaint." Pl.'s Mot. to Amend at 3. To that end, WilmerHale

---

[1] Defendants propose the Court issue the clarification via minute order. Defs.' Mot. to Clarify at 2. However, as explained below, the Court will grant WilmerHale's motion to amend and will issue an amended order. For the sake of efficiency, the Court will include defendants' requested clarification in the forthcoming amended order.

attached to its motion a list of additional federal agencies and officers it seeks to enjoin (hereinafter, the "additional agencies and officers").

WilmerHale brought this motion under Federal Rule of Civil Procedure 59(e), which provides that the Court may amend its judgment because of an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam) (quoting *Nat'l Trust v. Dep't of State*, 834 F. Supp. 453, 455 (D.D.C. 1993)). Courts have "considerable discretion" in deciding these motions. *Piper v. Dep't of Justice*, 312 F. Supp. 3d 17, 20 (D.D.C. 2004)

The Court finds that amending its Order is necessary to prevent manifest injustice. WilmerHale is concerned that even though the Court declared the WilmerHale Order unconstitutional, it "will nevertheless be enforced against it by agencies and officers who may not be aware (or could potentially claim unawareness) of either this Court's declaratory judgment or their obligation to comply with that declaration." Pl.'s Mot. to Amend at 3. The Court struck down the WilmerHale Order in its entirety and declared it null and void. This declaratory relief runs as to the United States as a whole, yet according to WilmerHale, defense counsel has refused to notify all United States agencies and officers of this judgment. *Id.* at 2–3; Decl. of Joseph J. DeMott [Dkt. #115-1] ¶¶ 4–6. Thus the Court must amend its Order to ensure that no federal agencies or officers are misguidedly enforcing the null and void WilmerHale Order.

Furthermore, this amendment is necessary to fully effectuate WilmerHale's inclusion of the United States as a defendant. WilmerHale included the United States "to

ensure that the relief ordered by the Court will apply government-wide." Compl. ¶. 71. The Court can issue injunctive relief against the United States so long as the injunction names the federal officers responsible for compliance instead of simply enjoining the "United States." *See* 5 U.S.C. § 702. While the Court initially included in the injunction only the agencies and officers named as defendants, nothing in § 702 requires WilmerHale to list every agency and officer it seeks to enjoin in the Complaint. *See Jenner & Block LLP v. Dep't of Justice*, 2025 U.S. Dist. LEXIS 99015, at *72–73 (D.D.C. May 23, 2025) (Bates, J.) ("Section 702 does require Jenner eventually to list the individual federal officers it seeks to enjoin; it just need not do so in the caption of the complaint."). WilmerHale named the United States as a defendant and has now provided the required list of agencies and officers it would like the Court to enjoin.[2] If I decline to enjoin these

[2] While defendants complain that WilmerHale could have raised this issue before judgment was issued, *see* Defs.' Opp'n to Pl.'s Mot. at 2–3, this argument is unavailing for two reasons. First, WilmerHale's Complaint states that the United States "is included as a defendant to ensure that the relief ordered by the Court will apply government-wide." Compl. ¶ 71. WilmerHale's proposed summary judgment order urged the Court to order "[d]efendant United States Department of Justice . . . to immediately issue guidance to all other agencies subject to the Order, instructing them to disregard the Order and carry on with their ordinary course of business as if the Order had never issued." Pl.'s Proposed Order [Dkt. #16-6] Thus defendants cannot claim any unfair surprise that WilmerHale has moved to make sure that the relief applies Government-wide. Second, WilmerHale asserts that it reasonably believed defense counsel would notify the additional agencies and officers of the Court's Order because defense counsel indicated it would do so:

> WilmerHale's counsel has remained in frequent communication with the government's counsel about compliance with this Court's orders, including by other covered agencies. From those communications, WilmerHale understood that the government was willing to notify all covered agencies of any final judgment declaring the [WilmerHale Order] unconstitutional, regardless of whether they were specifically named in the action or instead captured by "the United States of America," thus obviating the need to burden this Court with an amended complaint adding scores of additional parties. . . . It is only the government's unexpected (and unjustified) refusal to even *notify* all covered agencies about the Court's order that has necessitated this request to amend the judgment . . . .

Pl.'s Reply ISO Mot. to Amend at 3–4. This is not a situation in which a party should have raised issues or arguments earlier. Instead, WilmerHale is asking the Court to amend its judgment in response to what it believes to be warning signs of defendants' potential non-compliance with said judgment.

additional agencies and officers, my Order will not reflect the relief sought—and granted—in this case.[3]

None of the defendants can claim prejudice from this amendment and defendants point to no such prejudice. The Court has already declared the WilmerHale Order unconstitutional, and "thus defendants do not have a legitimate interest in enforcing [it]." Mem. Op. at 72. In fact, since the Court issued declaratory relief as to the United States as a whole, none of the federal agencies and officers should be enforcing the WilmerHale Order anyway.

Accordingly, it is hereby

**ORDERED** that defendants' Motion to Clarify [Dkt. #114] is **GRANTED**; it is further

**ORDERED** that WilmerHale's Motion to Amend [Dkt. #115] is **GRANTED**; and it is further

**ORDERED** that the Court will issue an amended version of its May 27, 2025 Order [Dkt. #111] consistent with the above.

**SO ORDERED**.

RICHARD J. LEON
United States District Judge

[3] The Court has already concluded that WilmerHale has standing to sue the United States and the named agency and officer defendants. *See* Mem. Op. at 16–19, 69 n.35. WilmerHale has standing as to the additional agencies and officers for the same reasons and to the same extent.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILMER CUTLER PICKERING HALE AND DORR LLP,<br><br>Plaintiff,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>Defendants. | Civil Case No. 25-917 (RJL) |

**AMENDED ORDER**

June 26, 2025 [Dkt. #15; Dkt. #16]

This Court's May 27, 2025 Order [Dkt. #111] is **VACATED**.

For the reasons set forth in the Court's May 27, 2025 Memorandum Opinion [Dkt. #110], defendants' Motion to Dismiss [Dkt. #15] and Wilmer Cutler Pickering Hale and Dorr LLP's ("WilmerHale") Motion for Summary Judgment [Dkt. #16] are each **GRANTED IN PART** and **DENIED IN PART**. Accordingly, it is hereby

**ORDERED** that defendants' Motion to Dismiss [Dkt. #15] is **GRANTED** to the extent it seeks to dismiss Counts VIII, IX, and XI and **DENIED** to the extent it seeks to dismiss Counts I–VII and X; it is further

**ORDERED** that Counts VIII, IX, and XI are **DISMISSED WITH PREJUDICE**; it is further

**ORDERED** that WilmerHale's Motion for Summary Judgment is **GRANTED** as to Counts I–VII and X and **DENIED AS MOOT** as to Counts VIII, IX, and XI; it is further

**DECLARED** that Executive Order 14250, 90 Fed. Reg. 14549 (Apr. 3, 2025), issued by the President on March 27, 2025 and entitled "Addressing Risks from WilmerHale," is unconstitutional because it violates the First, Fifth, and Sixth Amendments to the U.S. Constitution and is *ultra vires*, and is therefore null and void; it is further

**ORDERED** that (i) all defendants; (ii) the departments, agencies, and other entities listed in Appendix A hereto, including the responsible officials and their successors at each entity, also listed in Appendix A; and (iii) any officers, staff, employees, and contractors of any of the foregoing who were provided with Executive Order 14250 or guidance related to Executive Order 14250, are **PERMANENTLY ENJOINED** from implementing or giving effect to Executive Order 14250, including by relying on or considering any of the statements in § 1 of Executive Order 14250; it is further

**ORDERED** that (i) all defendants; (ii) the departments, agencies, and other entities listed in Appendix A hereto, including the responsible officials and their successors at each entity, also listed in Appendix A; and (iii) any officers, staff, employees, and contractors of any of the foregoing who were provided with Executive Order 14250 or guidance related to Executive Order 14250, shall immediately take any and all steps necessary to nullify and reverse any implementation or enforcement of Executive Order 14250 that has occurred or is occurring; it is further

**ORDERED** that this Order's injunctive relief as to Section 4 of Executive Order 14250 runs only in favor of WilmerHale (including its affiliates, predecessors, successors, assigns, directors, officers, partners, employees, and agents); it is further

**ORDERED** that defendants other than the United States shall immediately issue notice to their officers, staff, employees, and contractors, instructing them to disregard Executive Order 14250; it is further

**ORDERED** that defendant United States Department of Justice shall immediately issue guidance, which shall include a copy of this Order, to (i) all defendants; (ii) the departments, agencies, and other entities listed in Appendix A hereto, including the responsible officials and their successors at each entity, also listed in Appendix A; and (iii) any officers, staff, employees, and contractors of any of the foregoing who were provided with Executive Order 14250 or guidance related to Executive Order 14250, notifying each recipient that:

a) Executive Order 14250 has been declared unconstitutional and *ultra vires* and is therefore null and void;

b) The recipient is permanently enjoined from implementing or giving effect to Executive Order 14250, including by relying on or considering any of the statements in § 1 of Executive Order 14250; and

c) The recipient shall immediately take any and all steps necessary to nullify and reverse any implementation or enforcement of Executive Order 14250 that has occurred or is occurring; it is further

**ORDERED** that counsel for defendants shall provide counsel for WilmerHale with copies of such guidance within seven (7) days of issuance; it is further

**ORDERED** that counsel for defendants shall, within seven (7) days of this Order, file with the Court a status report describing the steps taken to ensure compliance with this Order and certifying compliance with its requirements; it is further

**ORDERED** that WilmerHale's Motion for a Preliminary Injunction [Dkt. #3] is **DENIED AS MOOT**; and it is further

**ORDERED** that this Court shall retain jurisdiction to enforce or modify this Order.

This Order shall serve as the judgment of the Court.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge

## APPENDIX A

- Administration for Children and Families
  - Assistant Secretary of Health and Human Services for Children and Families
  - Deputy Assistant Secretaries of Health and Human Services for Children and Families
- Administration for Strategic Preparedness and Response
  - Assistant Secretary for Preparedness and Response
  - Principal Deputy Assistant Secretary for Preparedness and Response
- Administrative Conference of the United States
  - Chairman of the Administrative Conference of the United States
  - Council Members of the Administrative Conference of the United States
- Advisory Council on Historic Preservation
  - Chairman of the Advisory Council on Historic Preservation
  - Members of the Advisory Council on Historic Preservation
- American National Red Cross
  - Chairman of the Board of the American National Red Cross
  - President and Chief Executive Officer of the American National Red Cross
- AmeriCorps
  - Agency Head of AmeriCorps
  - Chair of the Board of Directors of AmeriCorps
- Appalachian Regional Commission
  - Federal Co-Chair of the Appalachian Regional Commission
  - Executive Director of the Appalachian Regional Commission
- Bonneville Power Administration
  - Administrator and Chief Executive Officer of the Bonneville Power Administration
  - Chief Operating Officer of the Bonneville Power Administration
- Bureau of Alcohol, Tobacco, Firearms and Explosives
  - Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives
  - Deputy Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives
- Bureau of the Census
  - Director of the Bureau of the Census
  - Deputy Director of the Bureau of the Census
- Bureau of Consumer Financial Protection
  - Director of the Bureau of Consumer Financial Protection
  - Deputy Director of the Bureau of Consumer Financial Protection
- Bureau of Economic Analysis
  - Director of the Bureau of Economic Analysis
  - Deputy Director of the Bureau of Economic Analysis
- Bureau of Indian Affairs
  - Assistant Secretary for Indian Affairs
  - Director of the Bureau of Indian Affairs
- Bureau of Industry and Security
  - Under Secretary of Commerce for Industry and Security
  - Deputy Under Secretary of Commerce for Industry and Security

- Bureau of International Labor Affairs
  - Deputy Undersecretary of Labor for International Affairs
  - Associate Deputy Undersecretaries of Labor for International Affairs
- Bureau of Land Management
  - Director of the Bureau of Land Management
  - Deputy Director of the Bureau of Land Management
- Bureau of Ocean Energy Management
  - Director of the Bureau of Ocean Energy Management
  - Deputy Director of the Bureau of Ocean Energy Management
- Bureau of Reclamation
  - Commissioner of the Bureau of Reclamation
  - Deputy Commissioners of the Bureau of Reclamation
- Bureau of Safety and Environmental Enforcement
  - Director of the Bureau of Safety and Environmental Enforcement
  - Deputy Director of the Bureau of Safety and Environmental Enforcement
- Centers for Disease Control and Prevention
  - Director of the Centers for Disease Control and Prevention
  - Principal Deputy Director of the Centers for Disease Control and Prevention
- Centers for Medicare & Medicaid Services
  - Administrator of the Centers for Medicare & Medicaid Services
  - Deputy Administrator of the Centers for Medicare & Medicaid Services
- Central Intelligence Agency
  - Director of the Central Intelligence Agency
  - Deputy Director of the Central Intelligence Agency
- CHIPS Research and Development Office
  - Director of the CHIPS Research and Development Office
  - Deputy Director of the CHIPS Research and Development Office
- Commission of Fine Arts
  - Chair of the Commission of Fine Arts
  - Members of the Commission of Fine Arts
- Committee on Foreign Investment in the United States
  - Chairperson of the Committee on Foreign Investment in the United States
  - Members of the Committee on Foreign Investment in the United States
- Commodity Futures Trading Commission
  - Chairman of the Commodity Futures Trading Commission
  - Commissioners of the Commodity Futures Trading Commission
- Consumer Product Safety Commission
  - Chairman of the Consumer Product Safety Commission
  - Commissioners of the Consumer Product Safety Commission
- Corporation for National and Community Service
  - Chair of the Corporation for National and Community Service
  - Vice Chair of the Corporation for National and Community Service
- Council of the Inspectors General on Integrity and Efficiency
  - Executive Chair of the Council of the Inspectors General on Integrity and Efficiency
  - Chair of the Council of the Inspectors General on Integrity and Efficiency

- Council on Environmental Quality
    - Chair of the Council on Environmental Quality
    - Members of the Council on Environmental Quality
- Court Services and Offender Supervision Agency for the District of Columbia
    - Director of the Court Services and Offender Supervision Agency for the District of Columbia
    - Associate Director of the Court Services and Offender Supervision Agency for the District of Columbia
- Defense Contract Audit Agency
    - Director of the Defense Contract Audit Agency
    - Deputy Director of the Defense Contract Audit Agency
- Defense Contract Management Agency
    - Director of the Defense Contract Management Agency
    - Deputy Director of the Defense Contract Management Agency
- Defense Intelligence Agency
    - Director of the Defense Intelligence Agency
    - Deputy Director of the Defense Intelligence Agency
- Defense Logistics Agency
    - Director of the Defense Logistics Agency
    - Vice Director of the Defense Logistics Agency
- Denali Commission
    - Federal Co-Chair of the Denali Commission
    - Commissioners of the Denali Commission
- Department of the Air Force
    - Secretary of the Air Force
    - Under Secretary of the Air Force
- Department of the Army
    - Secretary of the Army
    - Under Secretary of the Army
- Department of Commerce
    - Secretary of Commerce
    - Deputy Secretary of Commerce
- Department of Defense
    - Secretary of Defense
    - Deputy Secretary of Defense
- Department of Education
    - Secretary of Education
    - Deputy Secretary of Education
- Department of Energy
    - Secretary of Energy
    - Deputy Secretary of Energy
- Department of Health and Human Services
    - Secretary of Health and Human Services
    - Deputy Secretary of Health and Human Services

- Department of Homeland Security
    - Secretary of Homeland Security
    - Deputy Secretary of Homeland Security
- Department of Housing and Urban Development
    - Secretary of Housing and Urban Development
    - Deputy Secretary of Housing and Urban Development
- Department of the Interior
    - Secretary of the Interior
    - Deputy Secretary of the Interior
- Department of Justice
    - Attorney General
    - Deputy Attorney General
- Department of Labor
    - Secretary of Labor
    - Deputy Secretary of Labor
- Department of the Navy
    - Secretary of the Navy
    - Under Secretary of the Navy
- Department of State
    - Secretary of State
    - Deputy Secretary of State
- Department of Toxic Substance Controls
    - Director of the Department of Toxic Substance Controls
    - Chief Deputy Director of the Department of Toxic Substance Controls
- Department of Transportation
    - Secretary of Transportation
    - Deputy Secretary of Transportation
- Department of the Treasury
    - Secretary of the Treasury
    - Deputy Secretary of the Treasury
- Department of Veterans Affairs
    - Secretary of Veterans Affairs
    - Deputy Secretary of Veterans Affairs
- Directorate of Defense Trade Controls
    - Deputy Assistant Secretary of the Directorate of Defense Trade Controls
    - Director of Compliance of the Office of Defense Trade Controls Compliance
    - Director of Licensing of the Office of Defense Trade Controls Licensing
    - Director of Management of the Office of Defense Trade Controls Management
    - Director of the Office of Defense Trade Controls Policy
- Drug Enforcement Administration
    - Administrator of the Drug Enforcement Administration
    - Deputy Administrator of the Drug Enforcement Administration
- Environmental Protection Agency
    - Administrator of the Environmental Protection Agency
    - Deputy Administrator of the Environmental Protection Agency

- Equal Employment Opportunity Commission
  - Chair of the Equal Employment Opportunity Commission
  - Commissioners of the Equal Employment Opportunity Commission
- Executive Office of the President
  - White House Chief of Staff
  - White House Deputy Chief of Staff
- Executive Office for U.S. Trustees
  - Director of the U.S. Trustee Program
  - Principal Deputy Director of the U.S. Trustee Program
- Export-Import Bank of the United States
  - President and Chairman of the Export-Import Bank of the United States
  - First Vice President and Vice Chairman of the Export-Import Bank of the United States
- Farm Credit System Insurance Corporation
  - Chairman of the Board of the Farm Credit System Insurance Corporation
  - Members of the Board of the Farm Credit System Insurance Corporation
- Federal Aviation Administration
  - Administrator of the Federal Aviation Administration
  - Deputy Administrator of the Federal Aviation Administration
- Federal Bureau of Investigation
  - Director of the Federal Bureau of Investigation
  - Deputy Director of the Federal Bureau of Investigation
- Federal Bureau of Prisons
  - Director of the Federal Bureau of Prisons
  - Deputy Director of the Federal Bureau of Prisons
- Federal Communications Commission
  - Chairman of the Federal Communications Commission
  - Commissioners of the Federal Communications Commission
- Federal Deposit Insurance Corporation
  - Chairman of the Federal Deposit Insurance Corporation
  - Board Members of the Federal Deposit Insurance Corporation
- Federal Election Commission
  - Chair of the Federal Election Commission
  - Commissioners of the Federal Election Commission
- Federal Emergency Management Agency
  - Administrator of the Federal Emergency Management Agency
  - Deputy Administrator of the Federal Emergency Management Agency
- Federal Energy Regulatory Commission
  - Chairman of the Federal Energy Regulatory Commission
  - Commissioners of the Federal Energy Regulatory Commission
- Federal Highway Administration
  - Administrator of the Federal Highway Administration
  - Deputy Administrator of the Federal Highway Administration

- Federal Home Loan Mortgage Corporation (Freddie Mac)
  - Chairman of the Federal Home Loan Mortgage Corporation
  - President and Chief Executive Officer of the Federal Home Loan Mortgage Corporation
- Federal Housing Finance Agency
  - Director of the Federal Housing Finance Agency
  - Deputy Directors of the Federal Housing Finance Agency
- Federal Labor Relations Authority
  - Chair of the Federal Labor Relations Authority
  - Board Members of the Federal Labor Relations Authority
- Federal Maritime Commission
  - Chairman of the Federal Maritime Commission
  - Commissioners of the Federal Maritime Commission
- Federal Mediation and Conciliation Service
  - Director of the Federal Mediation and Conciliation Service
  - Chief Operating Officer of the Federal Mediation and Conciliation Service
- Federal Mine Safety and Health Review Commission
  - Chair of the Federal Mine Safety and Health Review Commission
  - Commissioners of the Federal Mine Safety and Health Review Commission
- Federal National Mortgage Association (Fannie Mae)
  - Chairman of the Federal National Mortgage Association
  - President and Chief Executive Officer of the Federal National Mortgage Association
- Federal Permitting Improvement Steering Council
  - Executive Director of the Federal Permitting Improvement Steering Council
  - Deputy Executive Director of the Federal Permitting Improvement Steering Council
- Federal Railroad Administration
  - Administrator of the Federal Railroad Administration
  - Deputy Administrator of the Federal Railroad Administration
- Federal Reserve System
  - Chair of the Board of Governors of the Federal Reserve System
  - Governors of the Federal Reserve System
- Federal Retirement Thrift Investment Board
  - Chair of the Federal Retirement Thrift Investment Board
  - Executive Director of the Federal Retirement Thrift Investment Board
- Federal Trade Commission
  - Chairman of the Federal Trade Commission
  - Commissioners of the Federal Trade Commission
- Federal Transit Administration
  - Administrator of the Federal Transit Administration
  - Deputy Administrator of the Federal Transit Administration
- Financial Crimes Enforcement Network
  - Director of the Financial Crimes Enforcement Network
  - Deputy Director of the Financial Crimes Enforcement Network

- Food and Drug Administration
  - Commissioner of Food and Drugs
  - Principal Deputy Commissioner of Food and Drugs
- General Services Administration
  - Administrator of the General Services Administration
  - Deputy Administrator of the General Services Administration
- Government Accountability Office
  - Comptroller General of the United States
  - Deputy Comptroller General of the United States
- Grid Deployment Office
  - Under Secretary of Energy for Infrastructure
  - Director of the Grid Deployment Office
  - Deputy Director for Grid Modernization of the Grid Deployment Office
  - Deputy Director for Resource Adequacy of the Grid Deployment Office
- Gulf Coast Ecosystem Restoration (RESTORE) Council
  - Chair of the Gulf Coast Ecosystem Restoration (RESTORE) Council
  - Members of the Gulf Coast Ecosystem Restoration (RESTORE) Council
- Health Resources and Services Administration
  - Administrator of the Health Resources and Services Administration
  - Deputy Administrator of the Health Resources and Services Administration
- Institute of Museums and Library Services
  - Director of the Institute of Museums and Library Services
  - Deputy Directors of the Institute of Museums and Library Services
- Inter-American Foundation
  - President and Chief Executive Officer of the Inter-American Foundation
  - Managing Director of the Inter-American Foundation
- Interior Business Center
  - Director of the Interior Business Center
  - Deputy Director of the Interior Business Center
- Internal Revenue Service
  - Commissioner of Internal Revenue
  - Deputy Commissioner of Internal Revenue
- International Trade Administration
  - Under Secretary of Commerce for International Trade
  - Deputy Under Secretary of Commerce for International Trade
- John F. Kennedy Memorial Center for the Performing Arts
  - Chairman of the Board of the John F. Kennedy Memorial Center for the Performing Arts
  - Executive Director of the John F. Kennedy Memorial Center for the Performing Arts
- Joint Chiefs of Staff
  - Chairman of the Joint Chiefs of Staff
  - Vice Chairman of the Joint Chiefs of Staff
- Loan Programs Office
  - Director of the Loan Programs Office
  - Deputy Director of the Loan Programs Office

- Marine Mammal Commission
  - Chair of the Marine Mammal Commission
  - Commissioners of the Marine Mammal Commission
- Millennium Challenge Corporation
  - Chair of the Board of Directors of the Millennium Challenge Corporation
  - Chief Executive Officer of the Millennium Challenge Corporation
- National Aeronautics and Space Administration
  - Administrator of the National Aeronautics and Space Administration
  - Associate Administrator of the National Aeronautics and Space Administration
- National Archives and Records Administration
  - Archivist of the United States
  - Deputy Archivist of the United States
- National Board for Respiratory Care
  - President of the National Board for Respiratory Care
  - Vice President of the National Board for Respiratory Care
- National Capital Planning Commission
  - Chair of the National Capital Planning Commission
  - Executive Director of the National Capital Planning Commission
- National Council on Disability
  - Chair of the National Council on Disability
  - Vice Chair of the National Council on Disability
- National Counterterrorism Center
  - Director of the National Counterterrorism Center
  - Deputy Director of the National Counterterrorism Center
- National Endowment for the Arts
  - Chair of the National Endowment for the Arts
  - Senior Deputy Chair of the National Endowment for the Arts
- National Endowment for the Humanities
  - Council Chair of the National Endowment for the Humanities
  - Council Members of the National Endowment for the Humanities
- National Geospatial-Intelligence Agency
  - Director of the National Geospatial-Intelligence Agency
  - Deputy Director of the National Geospatial-Intelligence Agency
- National Indian Gaming Commission
  - Chairwoman of the National Indian Gaming Commission
  - Vice-Chair of the National Indian Gaming Commission
- National Institutes of Health
  - Director of the National Institutes of Health
  - Principal Deputy Director of the National Institutes of Health
- National Highway Traffic Safety Administration
  - Administrator of the National Highway Traffic Safety Administration
  - Deputy Administrator of the National Highway Traffic Safety Administration
- National Labor Relations Board
  - Chairman of the National Labor Relations Board
  - Members of the National Labor Relations Board

- National Marine Fisheries Service
  - Assistant Administrator for Fisheries
  - Deputy Assistant Administrator for Fisheries
- National Mediation Board
  - Chair of the National Mediation Board
  - Members of the National Mediation Board
- National Nuclear Security Administration
  - Under Secretary of Energy for Nuclear Security and Administrator of the National Nuclear Security Administration
  - Principal Deputy Administrator of the National Nuclear Security Administration
- National Oceanic and Atmospheric Administration
  - Under Secretary of Commerce for Oceans and Atmosphere
  - Administrator of the National Oceanic and Atmospheric Administration
- National Park Service
  - Director of the National Park Service
  - Deputy Director of the National Park Service
- National Renewable Energy Laboratory
  - Director of the National Renewable Energy Laboratory
  - Deputy Director of the National Renewable Energy Laboratory
- National Science Foundation
  - Director of the National Science Foundation
  - Deputy Director of the National Science Foundation
- National Security Agency
  - Director of the National Security Agency
  - Deputy Director of the National Security Agency
- National Security Council
  - Vice President of the United States
  - Members of the National Security Council
- National Transportation Safety Board
  - Chair of the National Transportation Safety Board
  - Members of the National Transportation Safety Board
- Nuclear Regulatory Commission
  - Chair of the Nuclear Regulatory Commission
  - Commissioners of the Nuclear Regulatory Commission
- Occupational Safety and Health Administration
  - Assistant Secretary of Labor for Occupational Safety and Health
  - Deputy Assistant Secretaries of Labor for Occupational Safety and Health
- Occupational Safety and Health Review Commission
  - Chair of the Occupational Safety and Health Review Commission
  - Commissioners of the Occupational Safety and Health Review Commission
- Office of Clean Energy Demonstrations
  - Director of the Office of Clean Energy Demonstrations
  - Deputy Director of the Office of Clean Energy Demonstrations
- Office of the Comptroller of the Currency
  - Comptroller of the Currency
  - Senior Deputy Comptrollers of the Currency

- Office of the Director of National Intelligence
  - Director of National Intelligence
  - Principal Deputy Director of National Intelligence
- Office of Federal Contract Compliance Programs
  - Director of the Office of Federal Contract Compliance Programs
  - Deputy Director of the Office of Federal Contract Compliance Programs
- Office of Foreign Assets Control
  - Director of the Office of Foreign Assets Control
  - Deputy Director of the Office of Foreign Assets Control
- Office of Government Ethics
  - Director of the Office of Government Ethics
  - Deputy Director for Compliance of the Office of Government Ethics
- Office of Homeland Security Situational Awareness
  - Director of the Office of Homeland Security Situational Awareness
  - Deputy Director of the Office of Homeland Security Situational Awareness
- Office of Management and Budget
  - Director of the Office of Management and Budget
  - Deputy Director of the Office of Management and Budget
- Office of National Drug Control Policy
  - Director of the Office of National Drug Control Policy
  - Deputy Director of the Office of National Drug Control Policy
- Office of Personnel Management
  - Director of the Office of Personnel Management
  - Deputy Director of the Office of Personnel Management
- Office of Science and Technology Policy
  - Director of the Office of Science and Technology Policy
  - Deputy Director of the Office of Science and Technology Policy
- Office of the Secretary of Defense
  - Secretary of Defense
  - Deputy Secretary of Defense
- Office of Special Counsel
  - Special Counsel
  - Principal Deputy Special Counsel
- Offices of the United States Attorneys
  - Director of the Executive Office for U.S. Attorneys
  - Deputy Director of the Executive Office for U.S. Attorneys
- Office of the United States Trade Representative
  - United States Trade Representative
  - Deputy United States Trade Representative
- Overseas Private Investment Corporation
  - President and Chief Executive Officer of the Overseas Private Investment Corporation
  - Executive Vice President of the Overseas Private Investment Corporation
- Patent Trial and Appeal Board
  - Director of the Patent Trial and Appeal Board
  - Deputy Director of the Patent Trial and Appeal Board

- Peace Corps
  - Chief Executive Officer of the Peace Corps
  - Deputy Chief Executive Officer of the Peace Corps
- Pension Benefit Guaranty Corporation
  - Director of the Pension Benefit Guaranty Corporation
  - Deputy Director of the Pension Benefit Guaranty Corporation
- Permitting Council
  - Executive Director of the Permitting Council
  - Deputy Executive Director of the Permitting Council
- Presidio Trust
  - Chair of the Board of the Presidio Trust
  - Vice-Chair of the Board of the Presidio Trust
- Pretrial Services Agency for the District of Columbia
  - Director of the Pretrial Services Agency for the District of Columbia
  - Deputy Director of the Pretrial Services Agency for the District of Columbia
- Public Defender Service for the District of Columbia
  - Director of the Public Defender Service for the District of Columbia
  - Deputy Director of the Public Defender Service for the District of Columbia
- Rural Utilities Service
  - Administrator of the Rural Utilities Service
  - Assistant Administrator of the Rural Utilities Service
- Science and Technology Directorate
  - Under Secretary of Homeland Security for Science and Technology
  - Deputy Under Secretary of Homeland Security for Science and Technology
- Securities and Exchange Commission
  - Chairman of the Securities and Exchange Commission
  - Commissioners of the Securities and Exchange Commission
- Selective Service System
  - Director of the Selective Service System
  - Deputy Director of the Selective Service System
- Small Business Administration
  - Administrator of the Small Business Administration
  - Deputy Administrator of the Small Business Administration
- Smithsonian Institution
  - Secretary of the Smithsonian
  - Deputy Secretary and Chief Operation Officer of the Smithsonian
- Social Security Administration
  - Commissioner of the Social Security Administration
  - Deputy Commissioner of the Social Security Administration
- Surface Transportation Board
  - Chairman of the Surface Transportation Board
  - Members of the Surface Transportation Board
- Tennessee Valley Authority
  - Chair of the Board of the Tennessee Valley Authority
  - Members of the Board of the Tennessee Valley Authority

- Trademark Trial and Appeal Board
  - Director of the Trademark Trial and Appeal Board
  - Deputy Director of the Trademark Trial and Appeal Board
- Transportation Security Administration
  - Administrator of the Transportation Security Administration
  - Deputy Administrator of the Transportation Security Administration
- U.S. Access Board
  - Chair of the U.S. Access Board
  - Members of the U.S. Access Board
- U.S. Agency for International Development
  - Administrator of the U.S. Agency for International Development
  - Deputy Administrators of the U.S. Agency for International Development
- U.S. Agency for Global Media
  - Chief Executive Officer of the U.S. Agency for Global Media
  - Chairman of the Board of the U.S. Agency for Global Media
- U.S. Army Corps of Engineers
  - Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers
  - Deputy Commanding General of the U.S. Army Corps of Engineers
- U.S. Capitol Police
  - Chief of the U.S. Capitol Police
  - Assistant Chiefs of the U.S. Capitol Police
- U.S. Chemical Safety Board
  - Chairperson of the U.S. Chemical Safety Board
  - Members of the U.S. Chemical Safety Board
- U.S. Citizenship and Immigration Services
  - Director of U.S. Citizenship and Immigration Services
  - Deputy Director of U.S. Citizenship and Immigration Services
- U.S. Coast Guard
  - Commandant of the U.S. Coast Guard
  - Vice Commandant of the U.S. Coast Guard
- U.S. Commission on Civil Rights
  - Chairperson of the U.S. Commission on Civil Rights
  - Commissioners of the U.S. Commission on Civil Rights
- U.S. Commission for the Preservation of America's Heritage Abroad
  - Chair of the U.S. Commission for the Preservation of America's Heritage Abroad
  - Members of the U.S. Commission for the Preservation of America's Heritage Abroad
- U.S. Copyright Office
  - Register of Copyrights and Director of the U.S. Copyright Office
  - Associate Register of Copyrights
- U.S. Court of Appeals for Veterans Claims
  - Chief Judge of the U.S. Court of Appeals for Veterans Claims
  - Judges of the U.S. Court of Appeals for Veterans Claims

- U.S. Customs and Border Protection
  - Commissioner of U.S. Customs and Border Protection
  - Deputy Commissioner of U.S. Customs and Border Protection
- U.S. Department of Agriculture
  - Secretary of Agriculture
  - Deputy Secretary of Agriculture
- U.S. Department of Agriculture Rural Development
  - Under Secretary of Agriculture for Rural Development
  - Deputy Under Secretary of Agriculture for Rural Development
- U.S. Election Assistance Commission
  - Chairman of the U.S. Election Assistance Commission
  - Executive Director of the U.S. Election Assistance Commission
- U.S. Fish & Wildlife Service
  - Director of the U.S. Fish & Wildlife Service
  - Principal Deputy Director of the U.S. Fish & Wildlife Service
- U.S. Forest Service
  - Forest Service Chief
  - Associate Forest Service Chief
- U.S. Holocaust Memorial Museum
  - Director of the U.S. Holocaust Memorial Museum
  - Deputy Director of the U.S. Holocaust Memorial Museum
- U.S. Immigration and Customs Enforcement
  - Director of U.S. Immigration and Customs Enforcement
  - Deputy Director of U.S. Immigration and Customs Enforcement
- U.S. International Trade Commission
  - Chair of the U.S. International Trade Commission
  - Commissioners of the U.S. International Trade Commission
- U.S. Marshals Service
  - Director of the U.S. Marshals Service
  - Deputy Director of the U.S. Marshals Service
- U.S. Marine Corps
  - Commandant of the U.S. Marine Corps
  - Assistant Commandant of the U.S. Marine Corps
- U.S. Merit Systems Protection Board
  - Chairman of the U.S. Merit Systems Protection Board
  - Members of the U.S. Merit Systems Protection Board
- U.S. Nuclear Waste Technical Review Board
  - Chair of the U.S. Nuclear Waste Technical Review Board
  - Members of the U.S. Nuclear Waste Technical Review Board
- U.S. Patent & Trademark Office
  - Director of the U.S. Patent & Trademark Office
  - Deputy Director of the U.S. Patent & Trademark Office
- U.S. Postal Inspection Service
  - Chief Postal Inspector
  - Deputy Chief Postal Inspector

- U.S. Postal Service
  - Postmaster General
  - Deputy Postmaster General
- U.S. Privacy and Civil Liberties Oversight Board
  - Chair of the U.S. Privacy and Civil Liberties Oversight Board
  - Members of the U.S. Privacy and Civil Liberties Oversight Board
- U.S. Railroad Retirement Board
  - Chairman of the U.S. Railroad Retirement Board
  - Members of the U.S. Railroad Retirement Board
- U.S. Secret Service
  - Director of the U.S. Secret Service
  - Deputy Director of the U.S. Secret Service
- U.S. Space Force
  - Secretary of the Air Force
  - Under Secretary of the Air Force
- U.S. Trade and Development Agency
  - Director of the U.S. Trade and Development Agency
  - Director of Policy and Program Management of the U.S. Trade and Development Agency
- Woodrow Wilson International Center for Scholars
  - Chairman of the Board of Trustees of the Woodrow Wilson International Center for Scholars
  - Members of the Board of Trustees of the Woodrow Wilson International Center for Scholars